# EXHIBIT B

(Rev. 8/23/18)

Agenda E-3 (Summary)
Bankruptcy Administration
September 2018

### SUMMARY OF THE

### REPORT OF THE JUDICIAL CONFERENCE

### COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

The Committee on the Administration of the Bankruptcy System recommends that the Judicial Conference:

1.  a.  Recommend to Congress that no existing bankruptcy judgeship be statutorily eliminated, and

    b.  Advise the appropriate circuit judicial councils to consider not filling vacancies that currently exist or may occur because of resignation, retirement, removal, or death, until there is a demonstrated need to do so in the following districts: Alaska, South Dakota, Iowa-Northern, California-Northern, Maine, Oklahoma-Northern, Oregon, California-Central, New York-Western, Iowa-Southern, Ohio-Southern, Illinois-Central, California-Eastern, Oklahoma-Western, Ohio-Northern, California-Southern, Virginia-Western, Michigan-Western, Washington-Western, Pennsylvania-Eastern, and Texas-Western ................ pp. 3-6

2.  a.  Approve a request from the Third Circuit Judicial Council to designate Wilmington as the official bankruptcy judge duty station for the two new temporary judgeships in the District of Delaware, and

    b.  Approve a request from the Sixth Circuit Judicial Council to designate Flint as the official bankruptcy judge duty station for the new bankruptcy judgeship in the Eastern District of Michigan ......................................................................... pp. 7-9

3.  Approve a request from the Seventh Circuit Judicial Council to redesignate the official bankruptcy judge duty station in the Central District of Illinois from Urbana to Rock Island, in accordance with 28 U.S.C. § 152(b)(1), and designate Urbana as a place of holding court ........................................................................................................ pp. 9-10

4.  Approve the proposed revisions to the ad hoc and extended service bankruptcy judge recall regulations regarding authorization of chambers staff for recalled judges, as set forth in the Appendix ............................................................................................. pp. 10-12

5.  Approve expanding the bankruptcy judgeship vacancy pilot project to allow up to five long-standing vacancies to be filled and the judge lent to a district that has an emergency need for an additional judgeship through the use of an intercircuit assignment designation and an agreement between participating circuit councils ...................................... pp. 20-22

NOTICE
NO RECOMMENDATIONS PRESENTED HEREIN REPRESENT THE POLICY OF THE JUDICIAL CONFERENCE
UNLESS APPROVED BY THE CONFERENCE ITSELF.

(Rev. 8/23/18)

The remainder of the Report is submitted for the record and includes the following items for the information of the Judicial Conference:

- Funding for Fiscal Year 2020 ..................................................................................p. 2
- Bankruptcy Judgeships .............................................................................. pp. 3, 6-7
- Cost-Containment .................................................................................... pp. 12-14
- Bankruptcy Administrator Matters ............................................................ pp. 14-16
- Judiciary Strategic Planning ...................................................................... p. 16
- Bankruptcy Judge Quarterly Reporting of Matters Under Advisement ............... pp. 16-17
- Revised Preliminary Application and Disclosure Statement for Bankruptcy Judge Nominees ............................................................................................ pp. 17-18
- Quarterly Fees in Large Chapter 11 Cases in Bankruptcy Administrator Districts ................................................................................................ pp. 18-20
- Other Matters ....................................................................................... pp. 22-23

Agenda E–3
Bankruptcy Administration
September 2018

# REPORT OF THE JUDICIAL CONFERENCE

## COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

## TO THE CHIEF JUSTICE OF THE UNITED STATES AND MEMBERS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES:

The Committee on the Administration of the Bankruptcy System met on June 14-15, 2018. All members participated except Judge John E. Waites (Bankr. D.S.C.). Judge Leslie Joyce Abrams (M.D. Ga.) participated by telephone. At the invitation of the Chair, the following individuals also attended the meeting: Judge Stuart M. Bernstein (Bankr. S.D.N.Y.), representing the Advisory Committee on Bankruptcy Rules; Chief Judge Michael E. Romero (Bankr. D. Colo.), President of the National Conference of Bankruptcy Judges (NCBJ); Judge Thomas J. Catliota (Bankr. D. Md.), Chair of the Administrative Office's (AO) Bankruptcy Judges Advisory Group (BJAG); Judge Catherine Peek McEwen (Bankr. M.D. Fla.), Bankruptcy Judge Observer to the Judicial Conference; Bill Miller (Bankr. M.D.N.C.), Bankruptcy Administrator Committee Liaison; and JC Guerrero (Bankr. M.D. Ala.), Bankruptcy Clerk of Court Committee Liaison.

Administrative Office support for the meeting was provided by Michele Reed, Chief of the Judicial Services Office (JSO); Daniel J. Isaacs-Smith and Dana Y. Elliott, JSO Senior Attorneys; and William T. Rule, JSO Senior Economist. Also attending the meeting from the AO were Gary E. McCaffrey, Chief of the Court Operations Division of the Court Services Office; and Kevin A. Lee, Deputy Budget Officer. Other AO staff participated in certain

**NOTICE**
NO RECOMMENDATIONS PRESENTED HEREIN REPRESENT THE POLICY OF THE JUDICIAL CONFERENCE
UNLESS APPROVED BY THE CONFERENCE ITSELF.

portions of the meeting.  Elizabeth C. Wiggins, Senior Research Associate, represented the Federal Judicial Center (FJC).

## FUNDING FOR FISCAL YEAR 2020

The Committee considered and agreed to recommend to the Committee on the Budget the following fiscal year (FY) 2020 budget request for bankruptcy judgeship resources and the Bankruptcy Administrator (BA) program:  (a) $1.7 million for up to 30 recalled bankruptcy judges and their staffs; (b) $3.5 million for temporary bankruptcy law clerks; (c) $6.3 million for 48.2 authorized work units for the BA program, based on application of the Conference-approved staffing formula (JCUS-SEP 14, pp. 21-22); (d) $80.6 million for salaries and benefits for 351 authorized bankruptcy judgeships; and (e) $89.7 million for salaries and benefits for chambers staff for bankruptcy judges.  These recommendations reflect the following changes from the FY 2019 assumed level:  an increase of $1.0 million for recalled bankruptcy judges and their staffs, a reduction of $0.2 million for the BA program, a reduction of $4.1 million for bankruptcy judges salaries and benefits, and a reduction of $6.3 million for chambers staff for bankruptcy judges salaries and benefits.[1]  The temporary bankruptcy law clerk request is the same as the FY 2019 request.

The total budget request by the Bankruptcy Committee (mandatory and discretionary) for FY 2020 is $181,825,000, which includes funding for active bankruptcy judges and chambers staff.  The total budget request is an increase of 2.6 percent over the FY 2019 assumed funding level, and thus does not exceed the Budget Committee's guidance for FY 2020 that budgets not increase by more than 3.0 percent over the FY assumed level.

---

[1] The reduction in bankruptcy judge and chambers staff salaries and benefits results from a greater number of vacancies due to declines in bankruptcy filings.

## BANKRUPTCY JUDGESHIPS

The Committee was briefed on the number of authorized bankruptcy judgeships, recalled bankruptcy judges, intercircuit and intracircuit assignments, bankruptcy judgeship vacancies, and existing temporary bankruptcy judgeships. The Committee also discussed the continuing need survey process and procedures. As of March 31, 2018, there were 351 authorized bankruptcy judgeships, 35 of which were temporary judgeships; 30 recalled bankruptcy judges; and 29 bankruptcy judgeship vacancies.

### *Temporary Judgeships, Vacancies, and Related Matters*

Of the 35 temporary judgeships, seven judgeships have not been filled and are not currently at risk of lapsing because lapse dates occur five years from the appointment date of the judge named to fill the positions. This includes four new temporary judgeships authorized by the Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72. One temporary judgeship passed its lapse date on May 1, 2011, and will be lost when the next vacancy occurs in that court. Thirteen temporary judgeships passed their lapse dates on May 25, 2017, and will be lost when the next vacancies occur in those courts. The remaining 14 temporary judgeships were extended by the Bankruptcy Judgeship Act of 2017 for a period of five years from the date of enactment of that bill, October 26, 2017, and thus have lapse dates of October 26, 2022. The four new temporary judgeships and 14 extensions are in the same districts that the Judicial Conference recommended for new judgeships and conversion to permanent status, respectively, in its 2017 bankruptcy judgeship request. JCUS-MAR 17, p. 6.

### *Continuing Judgeship Need Survey*

Under 28 U.S.C. § 152(b)(3), the Judicial Conference must assess the continuing need for all authorized bankruptcy judgeships every two years and report its recommendations to Congress regarding "any authorized position which can be eliminated when a vacancy exists by reason of resignation, retirement, removal, or death" by December 31 of each even-numbered

year.  Since 1994, after each of the previous continuing judgeship need surveys, the Conference has approved the Bankruptcy Committee's recommendation that no bankruptcy judgeship be statutorily eliminated.  The Conference has also advised several circuit judicial councils to consider not filling bankruptcy judgeship vacancies occurring in districts by reason of resignation, retirement, removal, or death, unless there is a demonstrated need to do so, particularly if filling the vacancy would result in a weighted caseload per remaining judgeship(s) of fewer than 1,000 weighted filings.  JCUS-SEP 94, pp. 44-45; JCUS-SEP 96, pp. 50-51; JCUS-SEP 98, pp. 44-45; JCUS-SEP 00, pp. 42-43; JCUS-SEP 02, pp. 39-40; JCUS-SEP 04, pp. 8-9; JCUS-SEP 06, p. 8; JCUS-MAR 09, p. 5; JCUS-SEP 10, p. 8; JCUS-SEP 12, p. 8; JCUS-SEP 14, pp. 6-7; and JCUS-SEP 16, p. 7.

In accordance with the statute and the schedule and procedures approved by the Committee at its December 2017 meeting, staff identified districts where the elimination of a bankruptcy judgeship would result in fewer than 1,000 weighted filings per judgeship for the remaining positions, based on data for calendar year 2017.[2]  The chair of the Committee sent a letter to the chief bankruptcy judges for each affected district and their respective chief circuit judge offering an opportunity to submit additional information for consideration by the Committee.  Five circuit chief judges with affected districts submitted information related to the nature and mix of the district's case types, historical caseload data and filing trends, geographic issues, current economic data, and specific demographics.

Using updated weighted caseload data for the twelve-month period ending March 31, 2018, the following 27 districts (listed from lowest to highest weighted filings per authorized judgeship) had weighted caseloads lower than the 1,000-per judgeship threshold after the caseloads were recalculated based on one less bankruptcy judgeship in the district:

---

[2] Districts with one authorized judgeship are not included in the continuing need survey.

(Rev. 8/23/18)

| 1. Alaska | 10. Iowa-Southern | 19. Michigan-Western |
|---|---|---|
| 2. South Dakota | 11. Ohio-Southern | 20. New York-Northern |
| 3. Iowa-Northern | 12. Illinois-Central | 21. Washington-Eastern |
| 4. California-Northern | 13. California-Eastern | 22. Washington-Western |
| 5. Maine | 14. Oklahoma-Western | 23. Pennsylvania-Eastern |
| 6. Oklahoma-Northern | 15. Ohio-Northern | 24. New Mexico |
| 7. Oregon | 16. California-Southern | 25. Pennsylvania-Middle |
| 8. California-Central | 17. Virginia-Western | 26. Massachusetts |
| 9. New York-Western | 18. North Carolina-Middle | 27. Texas-Western |

Based on information provided on behalf of the affected districts and by AO staff, the Committee recommended that the Judicial Conference recommend to Congress that no existing bankruptcy judgeship be statutorily eliminated. The Committee also recommended that the Conference should advise the appropriate circuit judicial councils with respect to 21 districts identified by the judgeships subcommittee to consider not filling vacancies that currently exist or may occur because of resignation, retirement, removal, or death, until there is a demonstrated need to do so.

The Committee did not include three districts in its final recommendation—the Middle District of North Carolina, the Northern District of New York, and the Middle District of Pennsylvania—because the next vacancy occurring in those districts will result in the lapse of a temporary judgeship (and thus there will be no vacancy to recommend holding open) and the resulting weighted caseload calculation does not fall below the 1,000-per-judgeship threshold. Three districts—the Eastern District of Washington, the District of New Mexico, and the District of Massachusetts—submitted additional information that led the Committee to conclude that filling the next vacancy in those districts would be justified, at the discretion of the relevant court of appeals.

**Recommendations:** That the Judicial Conference—

a.  Recommend to Congress that no existing bankruptcy judgeship be statutorily eliminated, and

(Rev. 8/23/18)

b.   Advise the appropriate circuit judicial councils to consider not filling vacancies that currently exist or may occur because of resignation, retirement, removal, or death, until there is a demonstrated need to do so in the following districts:  Alaska, South Dakota, Iowa-Northern, California-Northern, Maine, Oklahoma-Northern, Oregon, California-Central, New York-Western, Iowa-Southern, Ohio-Southern, Illinois-Central, California-Eastern, Oklahoma-Western, Ohio-Northern, California-Southern, Virginia-Western, Michigan-Western, Washington-Western, Pennsylvania-Eastern, and Texas-Western.

### *Additional Judgeship Need Survey Process*

Along with the continuing need survey, the Judicial Conference is tasked with assessing the need for additional bankruptcy judgeships.  This requirement is contained in 28 U.S.C. § 152(b)(2), which states:

> The Judicial Conference shall, from time to time, submit recommendations to the Congress regarding the number of bankruptcy judges needed and the districts in which such judges are needed.

In 1991, the Judicial Conference determined that additional judgeship surveys would be conducted biennially.  JCUS-MAR 91, pp. 12-13.  At its September 1996 session, the Conference approved a change in the schedule for completing the biennial surveys so that recommendations for additional bankruptcy judgeships would be considered by the Conference in March, rather than September, of odd-numbered years.  JCUS-SEP 96, p. 50.  This schedule permits the judiciary to advocate, when appropriate, for additional bankruptcy judgeships throughout the full two-year congressional term.

The Committee approved the schedule and procedures for the 2019 additional judgeship need survey process.  Any on-site surveys needed to examine the judgeship needs for a district will be conducted in September-November 2018.  The Committee will consider requests for additional judgeships at its December 2018 meeting and make recommendations to the Conference for consideration at its March 2019 session.

*Judicial Resources Surveys*

At its December 2015 meeting, the Committee approved a process for selecting districts to receive on-site surveys, based in part on anticipation of the district's need for judicial resources.  The intent was to minimize the need to survey multiple districts within the short time frame available to complete the biennial additional judgeship needs review.  These surveys provide the Committee with information beyond raw caseload and weighted caseload data that may be relevant to Committee decisions, including geographic, population, and other relevant economic data.  At its June 2017 meeting, the Committee selected six districts to survey before its June 2018 meeting.  Two of these surveys were completed prior to the Committee's December 2017 meeting, and the remaining four were completed prior to the Committee's June 2018 meeting.  The Committee selected two additional districts to survey before its June 2019 meeting.

## DUTY STATIONS AND PLACES OF
## HOLDING COURT FOR BANKRUPTCY JUDGES

### *Designation of Duty Stations for New Temporary Judgeships*

In addition to extending the authorization of 14 existing temporary judgeships, the Bankruptcy Judgeships Act of 2017, Pub. L. No. 115-72, §§ 1002-03, 131 Stat. 1224, 1229-32, authorized four new temporary judgeships:  two in the District of Delaware, one in the Eastern District of Michigan, and one in the Middle District of Florida.  Of those, the Committee considered requests to designate duty stations for three of those positions.  The Middle District of Florida indicated that it does not intend to request that this position be filled at this time, and prefers to maintain the flexibility to designate the duty station in the future when it intends to fill the position.

The Committee considered a request from the Third Circuit Judicial Council that the Judicial Conference designate Wilmington as the duty station for the two new temporary

judgeships in the District of Delaware. With the two new temporary judgeships, the District of Delaware has eight authorized bankruptcy judgeships. The six existing judgeships are all designated to Wilmington, the district's only duty station and place of holding court. The Committee noted the size and nature of the district with respect to its sole duty station and place of holding court and that any adjustments to accommodate the two new judgeships will be made within the circuit's existing space footprint, so there will be no impact on the Judicial Conference "No Net New" policy that requires any increase in square footage within a circuit be offset by an equivalent reduction in square footage within the same fiscal year. JCUS-MAR 18, p. 11; *Guide to Judiciary Policy* (*Guide*), Vol. 3, Ch. 15, §§ 1520.30(b)(2)(B), (D), (E), and (F). It thus recommended that the Conference approve the request.

The Committee also considered a request from the Sixth Circuit Judicial Council that the Judicial Conference designate Flint as the duty station for the new temporary judgeship in the Eastern District of Michigan. With the new temporary judgeship, the Eastern District of Michigan has six authorized bankruptcy judgeships. The duty stations of the existing judgeships are follows: three in Detroit, one in Bay City, and one in "Flint or Detroit" (the current occupant is sitting in Detroit). There is a fifth judge currently serving in Detroit on a five-year intercircuit assignment from the Northern District of Iowa through the Committee's Bankruptcy Judgeship Vacancy Pilot program. The Committee noted that the bankruptcy court already has chambers and courtroom space in Flint, so there is no cost associated with this request; that Flint has the caseload to support a resident judge; and that approving this request will result in a more even distribution of cases among the judges in the district. JCUS-MAR 18, p. 11; *Guide*, Vol. 3, Ch. 15, §§ 1520.30(b)(2)(B), (D), (E), and (F). It thus recommended that the Conference approve the request.

**Recommendations:** That the Judicial Conference—

a.     Approve a request from the Third Circuit Judicial Council to designate Wilmington as the official bankruptcy judge duty station for the two new temporary judgeships in the District of Delaware, and

b.     Approve a request from the Sixth Circuit Judicial Council to designate Flint as the official bankruptcy judge duty station for the new bankruptcy judgeship in the Eastern District of Michigan.

### *Redesignation of Duty Station in the Central District of Illinois*

The Committee considered a request from the Seventh Circuit Judicial Council that the duty station for the vacant judgeship in the Central District of Illinois be redesignated from Urbana to Rock Island.  The Seventh Circuit Judicial Council requested the change due to space concerns.  Neither Urbana or Rock Island has adequate chambers or courtroom space to accommodate a bankruptcy judge.  The General Services Administration is in the process of seeking replacement leased space for the court in Rock Island.  The existing Rock Island court space is located in a building owned by the U.S. Post Office, and the building suffers from significant building, maintenance and management, and security deficiencies.  In the current facility, visiting judges use a hearing room or share the district judge's courtroom when holding proceedings in Rock Island.  The Asset Management Planning business rules—the guidelines adopted by the Judicial Conference when building a program of requirements for new space—do not allow the court to seek space equivalent to the hearing room in the replacement lease as it is not tied to a resident judge.  JCUS-MAR 08, p. 26.

Moving the duty station from Urbana to Rock Island will allow the new leased space in Rock Island to include chambers and a courtroom for a bankruptcy judge.  Absent this redesignation, the new courthouse in Rock Island would only have one courtroom that would be shared by the resident district judge, visiting district judges, the visiting magistrate judge, and the visiting bankruptcy judge.  Changing the designation of the bankruptcy judge duty station from Urbana to Rock Island would allow the new facility to include an additional courtroom and

provide flexibility for not only the bankruptcy court, but for visiting district and magistrate judges as well. Ensuring that chambers and courtroom space are available now will save the judiciary the cost of having to find or construct chambers space in the future if bankruptcy filings increase and the circuit council elects to fill the current vacancy. It thus recommended that the Conference approve the request. If this request is approved, it is also recommended that the Conference designate Urbana as a place of holding court.

> **Recommendation:** That the Judicial Conference approve a request from the Seventh Circuit Judicial Council to redesignate the official bankruptcy judge duty station in the Central District of Illinois from Urbana to Rock Island, in accordance with 28 U.S.C. § 152(b)(1), and designate Urbana as a place of holding court.

## BANKRUPTCY JUDGE RECALL REGULATIONS

AO staff periodically review the *Guide* to ensure that Judicial Conference regulations and guidelines are clear, complete, accurate, and up-to-date. Recently, staff identified portions of the bankruptcy judge recall regulations that should be revised to achieve this goal. The changes concern the regulations for ad hoc (*Guide*, Vol. 3, Ch. 9) and extended service (*Guide*, Vol. 3, Ch. 10) recall of bankruptcy judges.

The proposed revisions (a) specify the caseload standards for authorizing staff for a recalled bankruptcy judge; (b) make it clear that a circuit judicial council and the Committee may authorize a greater or lesser number of chambers staff for a recalled bankruptcy judge than provided for in the caseload standards after consideration of all relevant factors (but no more than two full-time chambers staff per recalled bankruptcy judge); and (c) require that the Committee authorize chambers staff annually for recall appointments that are longer than one year and one day (extended service recall regulations only).

With respect to the proposed revision to specify the caseload standards for authorizing staff for a recalled bankruptcy judge, the regulations currently use percentages of a full-time bankruptcy judge workload to determine the appropriate number of chambers staff positions

(75 percent of a full-time bankruptcy judge workload for authorizing two chambers staff positions, and 40 percent of a full-time bankruptcy judge workload for authorizing one chambers staff position). However, the regulations do not specify how a full-time bankruptcy judge workload is defined, or how that figure is determined.

A full-time bankruptcy judge workload of 1,100 weighted filings was established following the FJC's 1988-1989 case weights study. Although there have been subsequent case weights studies, the Committee has consistently applied the 1,100 weighted filings standard. The proposed revised regulations specify the weighted filings level to determine the appropriate number of chambers staff positions—825 weighted filings for authorizing two full-time chambers staff positions, and 440 weighted filings for authorizing one full-time chambers staff position. These numbers represent 75 percent and 40 percent of a full-time bankruptcy judge workload. The workload percentages are the same as in the current regulations but are expressed in raw figures instead of percentages. This specific guidance will assist bankruptcy judges and circuit judicial councils when considering staffing requests for recalled bankruptcy judges. Because all relevant factors may be considered along with the workload standards, there remains flexibility for the circuit judicial councils and the Committee to address unique staffing needs.

Additionally, the proposed revisions make it clear that the Committee may approve a greater or lesser number of (but no more than two total) chambers staff than specified under the caseload standards after considering factors other than weighted filings. This proposed revision would provide flexibility for circuits to certify, and the Committee to approve, a greater or lesser number of chambers staff in appropriate circumstances.

Finally, under the proposed revisions, the Committee would be required to authorize staff annually for recall appointments that are longer than one year and one day. Previously, the Committee authorized chambers staff for the entire term of recall regardless of the length of the

recall term.  This proposed revision would enable the Committee to provide greater oversight regarding the costs of the bankruptcy judge recall program.

The Committee reviewed the proposed revisions to the regulations and recommended that the Conference approve the revisions, as set forth in the Appendix.

> **Recommendation:** That the Judicial Conference approve the proposed revisions to the ad hoc and extended service bankruptcy judge recall regulations regarding authorization of chambers staff for recalled judges, as set forth in the Appendix.

## COST-CONTAINMENT

### *CACM Cost-Containment Subcommittee*

At the request of the Budget Committee, the Committee on Court Administration and Case Management (CACM) is leading a multi-committee initiative to evaluate alternative organizational models that might contain administrative costs.  To carry out this initiative, the CACM Committee established the CACM Subcommittee on Cost-Containment (CACM Subcommittee), which includes members from six Judicial Conference committees, including the Bankruptcy Committee.

The CACM Subcommittee has worked over the past three years to analyze organizational concepts for managing the administrative functions of courts.  An initial report, which was presented to the Budget Committee in July 2017, as well as to the September 2017 Judicial Conference, emphasized a need for additional data and analysis before conclusions could be drawn about cost savings and the efficacy of the different shared services models, and included recommendations for longer-term analysis and investigation.  The Budget Committee discussed the initial report at its July 2017 meeting and expressed appreciation for the subcommittee's work to date.  It provided its views to the CACM Committee, including the belief that it is sound to assume that some savings will occur with alternative shared services models, and the CACM Committee should therefore focus its efforts on providing assistance and resources to courts

interested in moving to alternative organizational models, including identifying the practical mechanisms for, and obstacles to, implementing the models.

At its September 2017 meeting, the CACM Subcommittee discussed the Budget Committee's suggestions, and drafted a second report documenting its progress and findings. The second report includes a revised action plan focused on providing feasible alternative organizational models for the courts to consider while incorporating more limited cost-benefit analyses. *See* Report of the Committee on Court Administration and Case Management at Agenda E-6 for additional information on the work of the subcommittee. After this Committee's December 2017 meeting, the chair sent a letter to the chair of the CACM Committee setting forth the Committee's comments on the report, agreeing with the subcommittee's revised approach, but disagreeing with the Budget Committee's suggestion that the subcommittee should presume savings.

At its March 2018 meeting, the CACM Subcommittee considered and endorsed a completed draft of its report on vertical consolidation of district and bankruptcy clerks' offices, and endorsed several revisions to the report. The CACM Subcommittee asked that the report be presented to each of the involved Conference committees for discussion. The Committee endorsed the revised draft of the vertical consolidation report with no comments or proposed substantive changes. After the vertical consolidation report is finalized, it will be provided to the Budget Committee and the Executive Committee, and appended to the CACM Committee's report to the Judicial Conference at its September 2018 session.

### *Horizontal Consolidation Pilot*

The Bankruptcy Committee is proceeding with implementing the horizontal consolidation pilot program approved by the Conference in March 2016. Two courts (the Bankruptcy Courts for the Northern and Southern Districts of Iowa) entered into a memorandum of understanding in 2016 and the pilot period formally began following the retirement of one of

the two clerks of court in July 2017. Two additional courts (the Bankruptcy Courts for the Districts of North Dakota and South Dakota) entered into a memorandum of understanding to participate in the pilot in April 2018 and the pilot period formally began following the retirement of one of the two clerks of court in May 2018. The Committee continues to work to identify an additional pair of courts to fulfill the goal of having up to three court pairs. The FJC, in consultation with the Committee's subcommittee on resource sharing, has also developed a detailed protocol for evaluating the pilot project and plans to host a meeting in September 2018 to bring together administrative staff from the four participating courts to assist with its study of the pilot.

## BANKRUPTCY ADMINISTRATOR MATTERS

### *Bankruptcy Administrator Program Review and Executive Committee Inquiry*

In January 2014, the Director of the AO requested a comprehensive review of the BA program. Several factors led to this review—no review of the program had been performed since its establishment in 1986; AO staff support of the program changed in 2013 to the newly established Court Services Office; and negative audit findings in some BA districts had raised concerns. The goal of the review was to ensure the BA program was being effectively supported and managed and that the program served the needs of the public. Later, in August 2014, the Executive Committee asked the Committee to examine and recommend, in consultation with other Conference committees, whether the BA program should continue to exist as a judiciary responsibility. The Committee deferred action on the Executive Committee's request pending completion of the program review.

The program review has been completed and the final report was referred by the AO Director to the Committee for consideration at its December 2017 meeting. The Committee reviewed the report and recommended that the Director provide the report to the chief judges of the bankruptcy courts and BAs in Alabama and North Carolina to give them an opportunity to

provide feedback to the Committee.  The responses from five of the six bankruptcy courts, as well as the BA Advisory Group, indicate the unanimous belief that the BA program should continue to exist as a judiciary responsibility.  The responses highlighted many of the positive findings in the report, including cleaner audits than those of U.S. trustee districts; overwhelming support from local attorneys; the efficiency and flexibility of the BA program as compared to its U.S. trustee counterparts relating to the BAs themselves, caseload, staff, and supervision; and the overall experience and preference of judges, attorneys, and trustees for the BA program over the United States Trustee Program (USTP).

The Committee's Estate Administration Subcommittee considered the report and the responses from the bankruptcy courts and the BA Advisory Group and, in addition to echoing many of the findings in the report discussed above, noted the efficiency of the BA program and the lower cost of the BA program relative to the USTP in recommending that the BA program continue to exist as a judiciary responsibility.  Consistent with the Executive Committee's request, before making its final recommendation, the Committee is seeking the views of the Committees on Audits and AO Accountability, the Budget, and Judicial Resources regarding whether the BA program should continue to exist as a judiciary responsibility.  Subject to the feedback received from those committees, a draft response will be considered by the Committee at its December 2018 meeting and transmitted to the Executive Committee in early 2019.

### *Horizontal Restructuring of Bankruptcy Administrator Offices*

During the Bankruptcy Committee's 2017 meeting with the Economy Subcommittee of the Budget Committee, there was discussion about exploring the possibility of horizontally restructuring BA offices.  At its December 2017 meeting, the Committee divided its analysis of the areas where horizontal restructuring of BA offices may result in cost savings into two categories: (1) management and oversight and (2) other operational and administrative roles/functions.  The Committee referred this matter to its Estate Administration Subcommittee

to develop, in consultation with its BA liaison, a report on whether there may be areas where restructuring or further sharing within BA offices may result in cost savings. Following the Committee's December 2017 meeting, the Committee's BA liaison provided the Estate Administration Subcommittee with information related to the BA program and existing levels of sharing done by the BAs with one another and with other court units.

The Committee agreed with the Estate Administration Subcommittee's conclusion that the BA offices within the judiciary are already sharing many of their administrative functions with one another and other court units, and therefore, formal consolidation would not produce additional cost savings. The chair sent letters to the CACM and Judicial Resources Committees seeking their views.

## JUDICIARY STRATEGIC PLANNING

The Committee was asked by Chief Judge Carl E. Stewart, the judiciary's planning coordinator, to provide an update on the strategic initiatives that it is pursuing to implement the *Strategic Plan for the Federal Judiciary*. The Committee was also asked to consider whether any changes to its strategic initiatives were warranted, based on strategic planning priorities or other judiciary initiatives. Following the June 2018 meeting, the chair provided a report to Chief Judge Stewart on the information requested.

## BANKRUPTCY JUDGE QUARTERLY
## REPORTING OF MATTERS UNDER ADVISEMENT

In March 1985, the Judicial Conference adopted a policy requiring circuit executives to collect quarterly reports from bankruptcy (as well as district and magistrate) judges on matters held under advisement for over 60 days. JCUS-MAR 85, pp. 11-12; *Guide*, Vol. 18, Ch. 5, § 560. Subsequently, the Civil Justice Reform Act of 1990 (CJRA), Pub. L. No. 101-650, was enacted imposing reporting requirements on pending matters for district and magistrate judges (the CJRA did not apply to bankruptcy judges) but only required semiannual reporting. The

Conference determined that the CJRA reporting requirements were sufficiently similar to its previously adopted requirements and agreed to adopt the semiannual reporting for district and magistrate judges, but did not change the bankruptcy judge reporting requirement.  JCUS-SEP 91, pp. 45-46.

On November 15, 2017, all circuit executives in circuits with bankruptcy judges agreed to request a change to the reporting requirements for bankruptcy matters held under advisement for over 60 days from quarterly to semiannually to bring bankruptcy judge reporting requirements in line with the reporting requirement for other judge types.  The Bankruptcy Judges Advisory Group unanimously agreed that the Committee should recommend approval of the change.  The proposed changes are not intended to prevent circuit executives from requiring more frequent reporting.  Volume 18, Ch. 5, § 560 of the *Guide* and the reporting form, AO-413, would need to be modified to reflect semiannual instead of quarterly reporting.

The Committee requested that the CACM Committee recommend that the Judicial Conference approve changing the frequency of the reporting requirements for bankruptcy matters held under advisement for over 60 days.  The CACM Committee has recommended the change to the September 2018 Judicial Conference, to begin with the reporting period ending March 31, 2019.  *See* Report of the Committee on Court Administration and Case Management at Agenda E-6.

## REVISED PRELIMINARY APPLICATION AND
## DISCLOSURE STATEMENT FOR BANKRUPTCY JUDGE NOMINEES

At their March 2018 semiannual meeting held immediately after the Judicial Conference session, the chief circuit judges and circuit executives discussed the effect of the current sample application and disclosure statement for bankruptcy judge positions.  Some chief judges and circuit executives expressed concern that the current sample application and disclosure statement

do not elicit enough information early enough in the process to allow proper consideration prior to the background investigations required for appointment.

To address the concerns, at its June 2018 meeting, the Committee discussed proposed revisions to the sample bankruptcy judgeship application and disclosure statement, the sample vacancy notices, and the *Regulations for the Selection, Appointment, and Reappointment of Bankruptcy Judges*. The Committee will seek the views of the chief circuit judges and circuit executives on proposed revisions at their September 2018 meeting. The changes will then be considered by the Committee and the Judicial Conference, as appropriate.

## QUARTERLY FEES IN LARGE CHAPTER 11
## CASES IN BANKRUPTCY ADMINISTRATOR DISTRICTS

The application of chapter 11 quarterly fees in districts under the USTP is set forth in 28 U.S.C. § 1930(a)(6). The fee does not apply to chapter 11 cases in BA districts.

In 1994, the Ninth Circuit issued an opinion in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), holding that excluding the BA districts from the fees charged in USTP districts was unconstitutional under the Uniformity Clause of the Constitution. The Ninth Circuit found that the chapter 11 quarterly fees required in courts served by the USTP but not assessed in BA districts resulted in a non-uniform application of bankruptcy law and unequal treatment of creditors. As a result, in March 1996, the Judicial Conference adopted a recommendation from the Committee to seek legislation providing authority to collect chapter 11 quarterly fees in BA districts. JCUS-MAR 96, p. 10. On November 13, 2000, the Federal Courts Improvement Act of 2000, Pub. L. No. 105-518, § 105, 114 Stat. 2410, 2412, was signed into law, and 28 U.S.C. § 1930 was amended to add subsection (a)(7), permitting the Judicial Conference to impose fees in BA districts in amounts equal to those listed in 28 U.S.C. § 1930(a)(6). Subsection (a)(7) further requires the judiciary to deposit all chapter 11 quarterly fees collected in BA districts as offsetting receipts to the fund established under 28 U.S.C. § 1931.

In September 2001, the Judicial Conference approved the Committee's recommendation that quarterly fees for chapter 11 cases in BA districts be imposed "in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time." JCUS-SEP/OCT 01, pp. 45-46.

The Bankruptcy Judgeship Act of 2017 revised subsection (a)(6) to add a new subsection (B), which provides that, during each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund (Fund) as of September 30 of the most recent full fiscal year is less than $200 million, the quarterly fee payable for a calendar quarter in which disbursements equal or exceed $1 million shall be the lesser of one percent of such disbursements or $250,000. This would be a substantial increase over the fees currently charged, which range from $6,500 to $30,000 for disbursements exceeding $1 million. The Fund is used for the operation of the USTP, and it does not apply to the BA districts. *See* 28 U.S.C. § 589a.

To ensure nationwide uniformity, the BAs requested that the Committee recommend that the Conference approve similar fees in BA districts. The Committee noted the following issues with the quarterly fees generally, and the possibility that increasing the fees would exacerbate such problems: (1) whether imposing the quarterly fee has had a chilling effect on large chapter 11 case filings and (2) whether imposing the quarterly fee has precluded certain large chapter 11 debtors from successfully reorganizing (and compelling those debtors to instead dismiss or convert to chapter 7).[3] The Committee will further consider these issues and consider whether the Conference should make a recommendation to Congress regarding whether to reenact revised subsection (a)(6)(B).

---

[3] The Committee also noted the following issues with interpreting the relevant statutes: (1) whether certain payments constitute "disbursements" for purposes of calculating the quarterly fee (specifically payments made by a chapter 11 debtor to its post-petition lender in connection with a revolving line of credit) and (2) whether a chapter 11 debtor is obligated to pay the quarterly fee after confirmation of a chapter 11 plan.

(Rev. 8/23/18)

Notwithstanding the concerns outlined above, the Committee agreed that the quarterly fee calculation changes in 28 U.S.C. § 1930(a)(6)(B) should apply in BA districts beginning in the first quarter of fiscal year 2019 (that is, for any chapter 11 case filed on or after October 1, 2018, and not for cases then pending). The Committee additionally endorsed ensuring that debtors receive proper notice before imposing a higher fee on them. To allow the BAs and bankruptcy courts in Alabama and North Carolina time to provide sufficient notice, the Committee asked the Executive Committee to act on an expedited basis on behalf of the Conference. The Executive Committee approved the Committee's request at its August 9-10, 2018, meeting. *See* Agenda E-1.

### BANKRUPTCY JUDGESHIP VACANCY PILOT

At its June 2014 meeting, the Committee recommended that the Judicial Conference approve a pilot project that would allow no more than two districts with long-standing bankruptcy judgeship vacancies to be filled and the selected judges to be assigned to districts with emergency needs for additional bankruptcy judgeship resources through an intercircuit assignment. On September 16, 2014, the Judicial Conference approved the bankruptcy judgeship vacancy pilot. JCUS-SEP 14, p. 7. The pilot was implemented with the United States Bankruptcy Courts for the Middle District of Florida and the Eastern District of Michigan as the initial borrowing districts, and the District of South Dakota and Northern District of Iowa as the lending districts. The participating courts and circuit judicial councils negotiated memoranda of understanding (MOU) implementing the pilot and, in 2016, the selected judges were appointed.

Shortly after the Committee's December 2017 meeting, a vacancy occurred in the Middle District of Florida that was subsequently filled by the pilot judge from the District of South Dakota, Judge Roberta Colton. The Bankruptcy Court for the Middle District of Florida advised that it no longer needed the additional bankruptcy judgeship, and as a result, the lending arrangement between the District of South Dakota and the Middle District of Florida terminated

when Judge Colton began her new 14-year term in December 2017. The FJC's study of the lending agreement between the District of South Dakota and the Middle District of Florida will continue until a final report is presented to the Committee.

The District of South Dakota, with the support of the Eighth Circuit Judicial Council, agreed to continue to participate as a lending district for another round of the pilot, with the Northern District of Mississippi, with the approval of the Fifth Circuit Judicial Council, as the next borrowing district. The Fifth and Eighth Circuit Judicial Councils entered into an MOU in December 2017 to govern their participation in the pilot program. The Eighth Circuit sought applications for a bankruptcy judge in the District of South Dakota with a duty station in Sioux Falls, South Dakota, but who will serve in Aberdeen in the Northern District of Mississippi for the first five years of the fourteen-year appointment via a long-term intercircuit assignment. Interviews were conducted and an initial selection made in accordance with the agreement between the circuit councils. The candidate is undergoing the FBI and IRS background investigations.

The Committee noted the positive feedback received to date about the pilot and the existence of other long-standing bankruptcy judgeship vacancies that could be utilized to better manage existing judgeship resources across the country. The Committee further noted that the FJC's study would benefit from additional participation in the pilot, particularly from courts in different circuits participating as the lending districts. Subject to Judicial Conference approval of the expansion of the pilot and the approval of the appropriate circuit judicial councils, the Committee has identified at least one other vacancy that it believes may be a good candidate for participation in the program. It thus recommended that the Judicial Conference approve expanding the pilot to allow up to five long-standing bankruptcy judgeship vacancies to be filled and the judges lent through the use of intercircuit assignments and agreements between volunteer circuits, to districts that have emergency needs for additional bankruptcy judgeships.

**Recommendation**: That the Judicial Conference approve expanding the bankruptcy judgeship vacancy pilot project to allow up to five long-standing vacancies to be filled and the judge lent to a district that has an emergency need for an additional judgeship through the use of an intercircuit assignment designation and an agreement between participating circuit councils.

## OTHER MATTERS

Staff updated the Committee on the work of a task force established at its December 2017 meeting to explore options for improving the judiciary's management of unclaimed funds attributable to bankruptcy courts. The task force is comprised of judges, clerks of court, a bankruptcy administrator, and AO staff, as well as representation from the Department of Justice Executive Office for United States Trustees. The task force considered a number of proposals related to (1) improving trustee efforts to locate creditors prior to depositing unclaimed funds with the bankruptcy court, (2) improving the database that consolidates unclaimed funds data, (3) improving bankruptcy court management of unclaimed funds, and (4) various proposals related to escheatment, fees, the *cy pres* doctrine, and the possibility of creditors disclaiming their interests in unclaimed funds. The task force discussed and agreed on proposals (both short- and long-term) to develop and further research.

The Committee received a report from its working group on diversity in bankruptcy practice and discussed an event the working group organized with the University of San Diego Law School, which was held the day before the Committee meeting. Law students from the University of San Diego, externs with federal judges, and local federal judges were invited to attend. The event included roundtable discussions among judges and law students. Law students had the opportunity to learn and ask questions about bankruptcy practice, judicial clerkships, and judicial service.

The Committee received a report from its working group on interpreting services in bankruptcy courts regarding progress made on identifying strategies for making interpreting services available in courts in need of such services, and identifying potential funding sources.

The Committee is waiting for a legal opinion from the AO's Office of General Counsel regarding payments to providers of interpreting services before proceeding.

The Committee received a report from FJC staff regarding the FJC's ongoing projects for the Committee, including evaluations of the Committee's vacancy and horizontal consolidation pilots and its study of bankruptcy judge time usage to aid development of new bankruptcy case weights, as well as work relating to various educational initiatives.

The Committee received status reports from the Bankruptcy Clerk of Court Committee Liaison, the Bankruptcy Administrator Committee Liaison, the Advisory Committee on Bankruptcy Rules Liaison, the Chair of the Bankruptcy Judges Advisory Group, and the President of the National Conference of Bankruptcy Judges.  The Committee also received briefings from several AO offices.

Respectfully Submitted,

Karen E. Schreier, Chair

| | |
|---|---|
| Leslie J. Abrams | Barbara J. Houser |
| Christine M. Arguello | Thomas L. Ludington |
| John P. Bailey | Eduardo C. Robreno |
| Sara Darrow | Brendan L. Shannon |
| Pedro A. Delgado Hernandez | Erithe A. Smith |
| Paul Engelmayer | N. Randy Smith |
| Mary P. Gorman | John E. Waites |
| Catharina Haynes | |

Appendix - Proposed Revisions to the Ad Hoc and Extended Service Bankruptcy Judge Recall Regulations