# EXHIBIT D

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## September 13, 2018

The Judicial Conference of the United States convened in Washington, D.C., on September 13, 2018, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Jeffrey R. Howard
> Chief Judge Nancy Torresen,
> > District of Maine

Second Circuit:

> Chief Judge Robert A. Katzmann
> Chief Judge Colleen McMahon,
> > Southern District of New York

Third Circuit:

> Chief Judge D. Brooks Smith
> Chief Judge Christopher C. Conner,
> > Middle District of Pennsylvania

Fourth Circuit:

> Chief Judge Roger L. Gregory
> Judge Robert James Conrad, Jr.,
> > Western District of North Carolina

Fifth Circuit:

> Chief Judge Carl E. Stewart
> Chief Judge Lee H. Rosenthal,
> > Southern District of Texas

Sixth Circuit:

>        Chief Judge Ransey Guy Cole, Jr.
>        Judge Thomas B. Russell,
>                        Western District of Kentucky

Seventh Circuit:

>        Chief Judge Diane P. Wood
>        Chief Judge Michael J. Reagan,[*]
>                        Southern District of Illinois

Eighth Circuit:

>        Chief Judge Lavenski R. Smith[*]
>        Judge Linda R. Reade,
>                        Northern District of Iowa

Ninth Circuit:

>        Chief Judge Sidney R. Thomas
>        Judge Claudia Wilken,
>                        Northern District of California

Tenth Circuit:

>        Chief Judge Timothy M. Tymkovich
>        Judge Martha Vazquez,
>                        District of New Mexico

Eleventh Circuit:

>        Chief Judge Ed Carnes
>        Judge Federico A. Moreno,
>                        Southern District of Florida

---

[*] Participated by teleconference due to a weather emergency.

District of Columbia Circuit:

Chief Judge Merrick B. Garland
Chief Judge Beryl A. Howell,
                District of Columbia

Federal Circuit:

Chief Judge Sharon Prost

Court of International Trade:

Chief Judge Timothy C. Stanceu

The following Judicial Conference committee chairs also attended the Conference session: Circuit Judges Michael A. Chagares, Richard R. Clifton,  Debra Ann Livingston, Raymond J. Lohier, Jr., and Anthony J. Scirica;  District Judges John D. Bates, Susan R. Bolton, David G. Campbell, Kathleen Cardone, Audrey G. Fleissig (incoming), David R. Herndon, Royce C. Lamberth, John W. Lungstrum, Ricardo S. Martinez, Roslynn R. Mauskopf, Donald W. Molloy, Karen E. Schreier, Richard Seeborg, Rebecca Beach Smith,[*] and Anthony J. Trenga; and Bankruptcy Judge Helen E. Burris.  Attending as the bankruptcy judge and magistrate judge observers, respectively, were Bankruptcy Judge Catherine Peek McEwen and Magistrate Judge Candy W. Dale.  Susan J. Goldberg of the First Circuit represented the circuit executives.

James C. Duff, Director of the Administrative Office of the United States Courts, attended the session of the Conference, as did Lee Ann Bennett, Deputy Director; Sheryl L. Walter, General Counsel; Katherine H. Simon, Secretariat Officer, and WonKee Moon, Supervisory Attorney Advisor, Judicial Conference Secretariat; Cordia A. Strom, Legislative Affairs Officer; and David A. Sellers, Public Affairs Officer.  District Judge Jeremy D. Fogel, Director, and John S. Cooke, Deputy Director, Federal Judicial Center, and Circuit Judge William H. Pryor, Jr., Acting Chair, and Kenneth P. Cohen, Staff Director, United States Sentencing Commission, were in attendance at the session of the Conference, as were Jeffrey P. Minear, Counselor to the Chief Justice, and Ethan V. Torrey, Supreme Court Legal Counsel.

Attorney General Jeff Sessions addressed the Conference on matters of mutual interest to the judiciary and the Department of Justice.  Representatives Bob Goodlatte, Darrell

---

[*] Participated by teleconference due to a weather emergency.

Issa, and Hank Johnson spoke on matters pending in Congress of interest to the Conference.

# REPORTS

Mr. Duff reported to the Judicial Conference on the judicial business of the courts and on matters relating to the Administrative Office. Judge Jeremy D. Fogel spoke to the Conference about Federal Judicial Center (FJC) programs and Judge William H. Pryor, Jr. reported on United States Sentencing Commission activities. Judge Anthony J. Scirica, Chair of the Committee on Judicial Conduct and Disability, and Chief Judge Rebecca Beach Smith, Chair of the Committee on Codes of Conduct, presented special reports on their committees' efforts to amend the Rules of Judicial-Conduct and Judicial-Disability Proceedings and the codes of conduct for judges and for judicial employees, respectively, to address recommendations contained in the June 1, 2018, Report of the Federal Judiciary Workplace Conduct Working Group.

# EXECUTIVE COMMITTEE

## RESOLUTION

The Judicial Conference approved a recommendation of the Executive Committee to adopt the following resolution recognizing the substantial contributions made by Judicial Conference committee chairs whose terms of service end in 2018:

The Judicial Conference of the United States recognizes with appreciation, respect, and admiration the following judicial officers:

### HONORABLE REBECCA BEACH SMITH
Committee on Codes of Conduct

### HONORABLE Wm. TERRELL HODGES
Committee on Court Administration and Case Management

### HONORABLE ROYCE C. LAMBERTH
Committee on Intercircuit Assignments

4

**HONORABLE ALLYSON KAY DUNCAN**
Committee on International Judicial Relations

**HONORABLE LAWRENCE F. STENGEL**
Committee on Judicial Resources

**HONORABLE DAVID R. HERNDON**
Committee on Judicial Security

**HONORABLE RICHARD SEEBORG**
Committee on the Administration of the Magistrate Judges System

**HONORABLE SANDRA SEGAL IKUTA**
Advisory Committee on Bankruptcy Rules

Appointed as committee chairs by the Chief Justice of the United States, these outstanding jurists have played a vital role in the administration of the federal court system. These judges served with distinction as leaders of their Judicial Conference committees while, at the same time, continuing to perform their duties as judges in their own courts. They have set a standard of skilled leadership and earned our deep respect and sincere gratitude for their innumerable contributions. We acknowledge with appreciation their commitment and dedicated service to the Judicial Conference and to the entire federal judiciary.

---

## SALARY OF THE PRINCIPAL SECRETARY TO A CHIEF CIRCUIT JUDGE

In March 2018, the Executive Committee asked the Committee on Judicial Resources to reconsider a policy adopted by the Judicial Conference in March 2012, which made the promotion to Judiciary Salary Plan (JSP) grade 12 of a principal secretary to a chief circuit judge or chief judge of the Court of International Trade temporary rather than permanent (JCUS-MAR 12, pp. 19-20).  Under the 2012 policy, the secretary's salary reverts to JSP grade 11 at the expiration of the judge's tenure as a chief judge or when the secretary leaves the position, except for secretaries who had attained grade 12 prior to the date of the policy change.  Before the March 2012 change, the promotion became permanent after two years (JCUS-SEP 98, p. 80; JCUS-SEP 04, p. 24).   In seeking reconsideration, the Executive Committee noted concern

5

that salary demotion could have a negative impact on the judiciary's ability to retain experienced and high-performing judicial assistants who might choose to retire rather than suffer the demotion at the end of their careers, and also noted that the cost savings were minimal.  The Judicial Resources Committee considered the Executive Committee's request at its June 2018 meeting, but reported that the vote of its Committee was tied and, therefore, the Committee did not take a position.

After communicating with the chair of the Judicial Resources Committee, the Executive Committee recommended that the Conference rescind the policy adopted in March 2012 and reinstate the policy adopted in September 1998 (as modified in September 2004) providing that the promotion from JSP grade 11 to JSP grade 12 of a principal secretary to a chief circuit judge or chief judge of the Court of International Trade becomes permanent after two years.  In so doing, the Executive Committee reiterated its initial concern about losing experienced staff, and noted further that the March 2012 policy results in inequities because it creates two classes of principal secretaries:  those who happened to be working for a chief circuit judge in 2012 who can retain their increased salary, and those whose judges became chief circuit judges after the 2012 policy was adopted.  The Conference adopted the Executive Committee's recommendation.

## AD HOC COMMITTEE TO REVIEW THE CRIMINAL JUSTICE ACT PROGRAM

The Executive Committee continued its consideration of the report and recommendations of the Ad Hoc Committee to Review the Criminal Justice Act Program (Cardone Committee).  The Cardone Committee was created by Chief Justice John G. Roberts, Jr., in April 2015 to conduct a comprehensive and impartial review of the administration and operation of the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, and submitted its final report and recommendations to the Judicial Conference in November 2017.  In February 2017, in anticipation of receipt of the report, the Executive Committee determined that all Conference committees whose jurisdictions were implicated by recommendations in the report would be provided an opportunity to comment, and that the Executive Committee would coordinate the presentation of those comments to the Judicial Conference.  At its February 2018 meeting, the Executive Committee created a subcommittee to facilitate the Committee's consideration of the Cardone Committee recommendations that fell within the Executive Committee's primary jurisdiction and to recommend a process for coordinating the presentation of the views of the involved Conference committees to the Judicial Conference.

Coordination of Committee Views for Presentation to the Judicial Conference.
The Cardone Committee's report recommended the establishment of an independent
Federal Defender Commission within the judicial branch, but outside the oversight of
the Judicial Conference, with sole authority to set policy and practices related to the
provision of federal defense. Recognizing that the creation of an independent
commission would require an act of Congress and could not be implemented
immediately, the Cardone Committee made 35 interim recommendations designed to
give the defender services program more autonomy within the current structure. To
ensure adequate time for a thorough review, the Executive Committee asked impacted
committees to focus on the 35 interim recommendations for the September 2018
Judicial Conference session and defer consideration of the report's final
recommendations regarding structural independence until a later Conference session.

At its August 2018 meeting, after reviewing the reports of the relevant
committees on the interim recommendations, and considering the recommendations of
its subcommittee, the Executive Committee determined to place on the Conference
calendar for the September 2018 session only those interim recommendations on
which there appeared to be consensus among the impacted committees and to defer for
future consideration interim recommendations where additional deliberation was
needed. For some interim recommendations, modifications had been suggested by
another committee. Following its August 2018 meeting, after receiving further
feedback from the committees, particularly with regard to proposed modifications, the
Executive Committee determined to place on the Conference calendar for the
September 2018 session interim recommendations 11, 15, 17-23, 25, and 28-34, as
recommended by the Cardone Committee, and modified versions of interim
recommendations 8 and 14, as recommended by the Defender Services Committee. It
deferred for further deliberation interim recommendations 7, 9, 10, 12-13, 16, 24, 26-
27, and 35, and any corresponding modifications proposed by other committees and
the alternative recommendation proposed by the Committees on Defender Services
and the Judicial Branch for interim recommendations 5 and 6. For ease of reference,
the Committee also approved providing the Conference with a supplement to the
report which compiles the views of all Conference committees commenting on the
report in one document. As discussed below, the Executive Committee or the AO
Director considered all or portions of recommendations 1, 2, 3, 4, 5, and 6.

Recommendations Within the Executive Committee's Jurisdiction. Interim
recommendations 1, 2, and 3 fall within the jurisdiction of the Executive Committee.
After considering the views of the affected committees, the Executive Committee
considered and took the following actions with regard to the recommendations.

*Judicial Conference of the United States*                                              *September 13, 2018*

**Interim Recommendation 1:**  The Defender Services Committee should have:
  a.  Exclusive control over defender office staffing and compensation.
  b.  The ability to request assistance of Judicial Resources Committee staff on work measurement formulas.
  c.  Control over development and governance of eVoucher in order to collect data and better manage the CJA program.
  d.  Management of the eVoucher program and the interface with the payment system.
  e.  Exclusive control over the spending plan for the defender services program.

*Interim Recommendations 1(a) and 1(b).*  The Executive Committee approved changes to the jurisdictional statements of the Committees on Defender Services and Judicial Resources in response to interim recommendation 1(a), which asked that exclusive control over defender office staffing and compensation be given to the Defender Services Committee.  The Executive Committee agreed to transfer jurisdiction over defender office compensation, including classification and qualification standards, to the Committee on Defender Services, recognizing that committee's expertise and experience with the needs of the defender services program in these areas.  However, it decided that the Committee on Judicial Resources should retain primary jurisdiction over defender office staffing formula development and requirements for personnel, recognizing that committee's expertise and experience with staffing formula development and requirements.  In addition to the revisions made to the jurisdictional statements, the Executive Committee requested that the Administrative Office develop a written protocol that will provide the defender services program with the ability to allocate additional resources quickly to federal offices in response to changing needs such as new laws or prosecutorial initiatives that are beyond their control.  The Executive Committee's decision to leave jurisdiction over staffing formula development with the Committee on Judicial Resources rendered interim recommendation 1(b) moot, as it was contingent on transfer of such jurisdiction to the Committee on Defender Services.

*Interim Recommendations 1(c) and 1(d).*  Interim recommendations 1(c) and 1(d) request that control over development, governance and management of eVoucher be vested with the Defender Services Committee.  The Executive Committee agreed to revise the jurisdictional statement of the Committee on Defender Services to give it primary jurisdiction over the eVoucher program and officially recognize its role in overseeing policy development for the program.

*Interim Recommendation 1(e).*  The Executive Committee deferred consideration of interim recommendation 1(e), which asks that the Defender Services

8

Committee be given exclusive control of the defender services spending plan.  This decision is consistent with the Committee on Defender Services' view that the recommendation fundamentally relates to the independence of the defense function and is better suited for discussion when the Conference considers the Cardone Committee report's final recommendation regarding structural independence.

> **Interim Recommendation 2:**  For any period during which the Administrative Office and Judicial Conference continue to have authority over the budget for the CJA program, when either the Budget or Executive Committee disagree with the budget request by the Defender Services Committee, the matter should be placed on the discussion calendar of the full Judicial Conference.

The Defender Services Committee recommended the following modification to interim recommendation 2:

> For any period during which the Administrative Office and Judicial Conference continue to have authority over the budget for the CJA program, when the Budget Committee disagrees with the Defender Services Committee's budget request, at the request of the Defender Services Committee, the matter should be placed on the Executive Committee agenda.

The Executive Committee declined to adopt interim recommendation 2, noting that the Conference has delegated to the Executive Committee the authority to prepare and determine the consent and discussion calendars for Conference sessions.  Pursuant to the procedures established by the Executive Committee for moving an item to the discussion calendar (set forth in *The Judicial Conference and Its Committees*, pp. 8-9), committee chairs, when filing their reports, may suggest to the Executive Committee that items be placed on the discussion calendar, and any judge or committee member may ask any Conference member to move an item from the consent to the discussion calendar.  Adequate mechanisms are therefore already available for a chair to suggest that an item be placed on the discussion calendar, and the automatic placement of any item on the discussion calendar would effect a substantial change to current Conference procedure.

The Executive Committee similarly declined to adopt the Defender Services Committee's proposed modification to interim recommendation 2, noting that Judicial Conference procedures provide that chairs have "final approval over inclusion of items within the committee's jurisdiction on committee agendas, except that matters referred by the Chief Justice, the Conference, or the Executive Committee must be included."  *The Judicial Conference and Its Committees*, p. 7.  This proposed change

would bestow greater advantage and power upon one committee than is granted to other Conference committees.  The Executive Committee also noted that Conference committees currently can request that an item be placed on the Executive Committee's agenda and such requests are given due consideration.

**Interim Recommendation 3:**  The composition of the Defender Services Committee should include the co-chairs of the Defender Services Advisory Group, both as voting members.

Requests for changes to committee composition and membership typically emerge as a result of the Executive Committee's five-year review of Judicial Conference committees' jurisdiction and structure, which asks committees to provide input regarding committee composition.  Noting that the Defender Services Committee plans to include its views on interim recommendation 3 in its pending response to the five-year review survey, the Executive Committee deferred consideration of this recommendation until receipt of that response.

Interim Recommendations within the Director's Jurisdiction.  The Director of the Administrative Office (AO) reported on his consideration of interim recommendations 4, 5, and 6, which fall within his authority.[1]  Those recommendations provide as follows:

**Interim Recommendation 4:**  The Defender Services Office (DSO) must be restored to a level of independence and authority at least equal to what it possessed prior to the reorganization of the AO.  In particular, DSO should be empowered to:

a.  Exclusively control hiring and staffing within DSO.
b.  Operate independently from the AO Department of Program Services or any other department that serves the courts.
c.  Retain exclusive control with the National Information Technology Operations and Application Development Branch (NITOAD) over defender IT programs.
d.  Retain ultimate discretion with DSC in setting the agenda for DSC meetings — no requirement of approval from other AO offices.

---

[1] Portions of interim recommendations 1(c) and 1(d) also implicate the AO Director's authority as they relate to the organization of the AO.  The AO Director is still considering those aspects of 1(c) and 1(d).  (See *supra*, pp. 8-9).

*Judicial Conference of the United States*                    *September 13, 2018*

**Interim Recommendation 5:**  DSO should be made a member of the AO Legislative Council to consult on federal legislation.

**Interim Recommendation 6:**  Representatives from DSO should be involved in the Congressional appropriations process.

The AO Director informed the Executive Committee that, after considering the views of relevant Conference committees and AO staff, he had determined in response to interim recommendation 4 to make DSO an independent office within the AO outside the Department of Program Services reporting to the AO Director and Deputy Director.[2]  He also made DSO a member of the AO Legislative Council in response to interim recommendations 5 and 6.[3]

## MISCELLANEOUS ACTIONS

The Executive Committee—

- Approved final fiscal year (FY) 2018 financial plans for the Salaries and Expenses, Defender Services, Court Security, and Fees of Jurors and Commissioners accounts.

- Denied, on behalf of the Judicial Conference on an expedited basis, a request for an exception to Judicial Conference policy on foreign depositions and section 220.30.10(d) of the Travel Regulations for Justices and Judges, *Guide to Judiciary Policy*, Vol. 19, Ch. 2, that would have allowed reimbursement of travel expenses for a judge from the Central District of California to travel to Israel and the Republic of Georgia to preside over depositions of witnesses in a criminal case.

- Approved, on behalf of the Judicial Conference on an expedited basis, imposing quarterly fees in chapter 11 cases filed in bankruptcy administrator districts in the amounts specified in 28 U.S.C. § 1930(a)(6)(B) for cases filed on or after October 1, 2018 for any fiscal year in which the U.S. Trustee

[2] The Director is still considering aspects of interim recommendation 4 as they relate to Defender IT programs.
[3] The Committees on Defender Services and the Judicial Branch recommended an alternative recommendation to interim recommendations 5 and 6 for consideration by the Conference, as opposed to the AO Director, which the Executive Committee deferred for further consideration, as noted above.

11

Program exercises its authority under that statute, and pursuant to any future extensions of that or similar authority.

- Provided feedback to the Committee on Judicial Conduct and Disability and the Committee on Codes of Conduct on proposed amendments to the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and the codes of conduct for judges and for judicial employees, respectively, to address recommendations contained in the June 1, 2018, Report of the Federal Judiciary Workplace Conduct Working Group.

- Approved interim FY 2019 financial plans for the Salaries and Expenses, Defender Services, Court Security, and Fees of Jurors and Commissioners accounts and endorsed a strategy for distributing court allotments among court programs.

# COMMITTEE ON AUDITS AND ADMINISTRATIVE OFFICE ACCOUNTABILITY

## COMMITTEE ACTIVITIES

The Committee on Audits and Administrative Office Accountability reported that it was briefed on the results of audits of court units, federal public defender organizations, community defender organization grantees, and bankruptcy trustees in bankruptcy administrator districts. The Committee also considered those interim recommendations of the report of the Ad Hoc Committee to Review the Criminal Justice Act Program that implicate its jurisdiction.

# COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

## CONTINUING NEED FOR BANKRUPTCY JUDGESHIPS

In accordance with 28 U.S.C. § 152(b)(3), the Judicial Conference conducts a comprehensive review of all judicial districts every other year to assess the continuing need for authorized bankruptcy judgeships. By December 31 of each even-numbered year, the Conference reports to Congress its findings and any recommendations for the elimination of an authorized bankruptcy judgeship that can be eliminated when a

vacancy exists by reason of resignation, retirement, removal, or death.  On recommendation of the Bankruptcy Committee, which relied on the results of the 2018 continuing needs survey, the Conference agreed to take the following actions:

a.   Recommend to Congress that no existing bankruptcy judgeship be statutorily eliminated; and

b.   Advise the appropriate circuit judicial councils to consider not filling vacancies that currently exist or may occur because of resignation, retirement, removal, or death, until there is a demonstrated need to do so in the following districts: Alaska, South Dakota, Iowa-Northern, California-Northern, Maine, Oklahoma-Northern, Oregon, California-Central, New York-Western, Iowa-Southern, Ohio-Southern, Illinois-Central, California-Eastern, Oklahoma-Western, Ohio-Northern, California-Southern, Virginia-Western, Michigan-Western, Washington-Western, Pennsylvania-Eastern, and Texas-Western.

## OFFICIAL DUTY STATIONS AND PLACES OF HOLDING COURT

On recommendation of the Bankruptcy Committee, and in accordance with 28 U.S.C. § 152(b)(1), the Judicial Conference approved the following requests with regard to bankruptcy judge official duty stations and places of holding court:

a.   A request from the Third Circuit Judicial Council to designate Wilmington as the official bankruptcy judge duty station for the two new temporary judgeships in the District of Delaware.

b.   A request from the Sixth Circuit Judicial Council to designate Flint as the official bankruptcy judge duty station for the new bankruptcy judgeship in the Eastern District of Michigan.

c.   A request from the Seventh Circuit Judicial Council to redesignate the official bankruptcy judge duty station in the Central District of Illinois from Urbana to Rock Island, and designate Urbana as a place of holding court.

## RECALL REGULATIONS

On recommendation of the Committee, the Judicial Conference adopted revisions to the ad hoc and extended service bankruptcy judge recall regulations regarding the authorization of chambers staff for recalled judges.  The revisions

13

(a) specify the caseload standards for authorizing staff for a recalled bankruptcy judge; (b) make it clear that a circuit judicial council and the Committee may authorize a greater or lesser number of chambers staff for a recalled judge than provided in the caseload standards after consideration of all relevant factors (but no more than two full-time chambers staff per recalled bankruptcy judge); and (c) require that the Committee authorize chambers staff annually for recall appointments that are longer than a year and one day (extended service recall regulations only).

## BANKRUPTCY JUDGESHIP VACANCY PILOT PROJECT

In September 2014, the Judicial Conference approved a pilot project that would allow a long-standing bankruptcy judgeship vacancy to be filled and the judge lent through an intercircuit assignment and an agreement between participating circuits to a district that had an emergency need for an additional bankruptcy judgeship. JCUS-SEP 14, p. 7. The pilot was to involve lending no more than two bankruptcy judges and the Federal Judicial Center (FJC) was asked to conduct a study to determine the efficacy of the pilot. Noting the positive feedback received by the Committee so far about the pilot and that the FJC study would benefit from additional courts participating, the Committee recommended that the Conference approve expanding the pilot to allow up to five long-standing vacancies to be filled and the judge lent to a district that has an emergency need for an additional judgeship through the use of an intercircuit assignment designation and an agreement between participating circuits. The Conference approved the Committee's recommendation.

## COMMITTEE ACTIVITIES

The Committee on the Administration of the Bankruptcy System reported that it received an update on efforts to revise the application and disclosure statement for bankruptcy judge nominees to address concerns raised by chief circuit judges and circuit executives. The Committee was briefed by FJC staff on the progress of the FJC's study of bankruptcy judge time usage to aid development of new case weights. It also received a briefing on the work of a task force created at its December 2017 meeting to explore possible recommendations to improve the judiciary's management of unclaimed funds attributable to bankruptcy cases. In addition, the Committee received an update on the horizontal consolidation pilot that was approved by the Judicial Conference in March 2016 (JCUS-MAR 16, p. 8) and the two pairs of courts participating in the pilot.