# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

*SEPTEMBER/OCTOBER 2001*
*WASHINGTON, D.C.*

# REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES

*SEPTEMBER/OCTOBER 2001*
*WASHINGTON, D.C.*

*JUDICIAL CONFERENCE OF THE UNITED STATES*
*CHIEF JUSTICE WILLIAM H. REHNQUIST,*
*PRESIDING*
*LEONIDAS RALPH MECHAM, SECRETARY*

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## September/October 2001

### Contents

Call of the Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Executive Committee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    Resolutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    United States Sentencing Commission  . . . . . . . . . . . . . . . . . . . . . . . . 39
    Information Technology Security/Use of the Internet . . . . . . . . . . . . . 39
    Miscellaneous Actions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Committee on the Administrative Office  . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
Committee on Automation and Technology  . . . . . . . . . . . . . . . . . . . . . . . . 42
    Lawbooks and Libraries Study . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    Use of the Internet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Committee on the Administration of the Bankruptcy System  . . . . . . . . . . . . 45
    Trustee Retention of Professionals  . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    Chapter 11 Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Committee on the Budget  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Fiscal Year 2003 Budget Request  . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Certifying Officers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Committee on Codes of Conduct  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Committee on Court Administration and Case Management  . . . . . . . . . . . . . 48
    Privacy and Public Access to Electronic Case Files  . . . . . . . . . . . . . . 48
    Model Local Rules for Electronic Case Filing  . . . . . . . . . . . . . . . . . . 50
    Miscellaneous Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    Juror Attendance Fee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    E-Government Act of 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Committee on Criminal Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
    DNA and Competency of Counsel Legislation  . . . . . . . . . . . . . . . . . . . 54
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Committee on Defender Services  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
    Malpractice Claims Against Panel Attorneys  . . . . . . . . . . . . . . . . . . . . 54
    DNA and Competency of Counsel Legislation  . . . . . . . . . . . . . . . . . . . 55
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Committee on Federal-State Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    Diversity Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    Patients' Rights Legislation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    DNA and Competency of Counsel Legislation  . . . . . . . . . . . . . . . . . . . 58
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Committee on Financial Disclosure  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    Financial Disclosure Report Preparation  . . . . . . . . . . . . . . . . . . . . . . . 59
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Committee on Intercircuit Assignments  . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Committee on International Judicial Relations  . . . . . . . . . . . . . . . . . . . . . . 60
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Committee on the Judicial Branch  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
    Government Management Reform Act of 1994  . . . . . . . . . . . . . . . . . . . 60
    Travel Regulations for United States Justices and Judges . . . . . . . . . . . 61
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Committee on Judicial Resources  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
    Court Interpreter Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
    Bankruptcy Administrator Staff  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
    Physical Fitness Centers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
    Bankruptcy Appellate Panel Law Clerks . . . . . . . . . . . . . . . . . . . . . . . . 62
    District Clerks' Offices Staffing Formula . . . . . . . . . . . . . . . . . . . . . . . . 63
    Alternative Dispute Resolution Staffing Factor  . . . . . . . . . . . . . . . . . . 64
    Qualifications Standards for Chief Probation and
        Chief Pretrial Services Officers  . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Committee on the Administration of the Magistrate Judges System . . . . . . . 65
    Selection and Appointment Regulations  . . . . . . . . . . . . . . . . . . . . . . . . 65
    Changes in Magistrate Judge Positions . . . . . . . . . . . . . . . . . . . . . . . . . 65
    Accelerated Funding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Committee to Review Circuit Council Conduct and Disability Orders  . . . . . . 68
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

Committee on Rules of Practice and Procedure  . . . . . . . . . . . . . . . . . . . . . . . . . 68
    Federal Rules of Appellate Procedure  . . . . . . . . . . . . . . . . . . . . . . . . . 68
    Federal Rules of Bankruptcy Procedure  . . . . . . . . . . . . . . . . . . . . . . . 69
    Federal Rules of Civil Procedure  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
    Federal Rules of Criminal Procedure  . . . . . . . . . . . . . . . . . . . . . . . . . 70
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
Committee on Security and Facilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
    *U.S. Courts Design Guide*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
    Delegation of Construction Authority  . . . . . . . . . . . . . . . . . . . . . . . . . 71
    Congressional Review of Courthouse Construction  . . . . . . . . . . . . . . . 71
    Courtroom Information Project  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
    Committee Activities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
Committees on Criminal Law, Defender Services, and
    Federal-State Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
    Consolidated Report on DNA and Competency of Counsel Legislation . 72
Funding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## September/October 2001

The Judicial Conference of the United States convened in Washington, D.C., on September 11, 2001, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Michael Boudin
> Chief Judge D. Brock Hornby,
> > District of Maine

Second Circuit:

> Chief Judge John M. Walker, Jr.
> Judge Charles P. Sifton,
> > Eastern District of New York

Third Circuit

> Chief Judge Edward R. Becker
> Chief Judge Sue L. Robinson,
> > District of Delaware

Fourth Circuit

> Chief Judge J. Harvie Wilkinson III
> Chief Judge Charles H. Haden II,
> > Southern District of West Virginia

Fifth Circuit

> Chief Judge Carolyn Dineen King
> Judge Hayden W. Head, Jr.,
> > Southern District of Texas

*Judicial Conference of the United States*

Sixth Circuit

Chief Judge Boyce F. Martin, Jr.
Judge Thomas A. Wiseman, Jr.,
          Middle District of Tennessee

Seventh Circuit

Chief Judge Joel M. Flaum
Chief Judge Marvin E. Aspen,
          Northern District of Illinois

Eighth Circuit

Chief Judge Roger L. Wollman
Chief Judge James M. Rosenbaum,
          District of Minnesota

Ninth Circuit

Chief Judge Mary M. Schroeder
Judge Lloyd D. George,[1]
          District of Nevada

Tenth Circuit

Chief Judge Deanell R. Tacha
Chief Judge Frank Howell Seay,
          Eastern District of Oklahoma

Eleventh Circuit

Chief Judge R. Lanier Anderson, III
Chief Judge Charles R. Butler, Jr.,
          Southern District of Alabama

---

[1]Designated by the Chief Justice to attend in lieu of Judge Judith N. Keep of the Southern District of California.

*September/October 2001*

District of Columbia Circuit:

      Chief Judge Douglas H. Ginsburg
      Chief Judge Thomas F. Hogan,
           District of Columbia

Federal Circuit:

      Chief Judge Haldane Robert Mayer

Court of International Trade:

      Chief Judge Gregory W. Carman

Shortly after the Judicial Conference session began on September 11, 2001, members were informed of terrorist attacks in New York and Washington, D.C. The Conference adjourned promptly upon notification of the evacuation of the Supreme Court Building. No Conference business was conducted on that day, although the members were addressed by Senators Patrick Leahy, Orrin Hatch, and Jeff Sessions, and Representatives James Sensenbrenner and Howard Coble. The committee recommendations comprising the Conference's consent and discussion calendars were subsequently considered by Conference members in two mail ballots[2] — one concluded on September 19, 2001, and the second concluded on October 1, 2001. The actions taken as a result of these mail ballots are described below.[3]

# EXECUTIVE COMMITTEE

## RESOLUTIONS

The Judicial Conference approved a recommendation of the Executive Committee to adopt the following resolution in recognition of the substantial contributions made by Judicial Conference committee chairs who will complete their terms of service in 2001:

---

[2]Two discussion items were deferred until the March 2002 Conference session.

[3]Unless otherwise noted, all actions were approved by the mail ballot concluded on September 19, 2001.

*Judicial Conference of the United States*

The Judicial Conference of the United States recognizes with appreciation, respect and admiration the following judicial officers:

**HONORABLE CAROL BAGLEY AMON**
Committee on Codes of Conduct

**HONORABLE WALTER K. STAPLETON**
Committee on Federal-State Jurisdiction

**HONORABLE WILLIAM J. ZLOCH**
Committee on Financial Disclosure

**HONORABLE DAVID R. HANSEN**[4]
Committee on the Judicial Branch

**HONORABLE WILL L. GARWOOD**
Advisory Committee on Rules of Appellate Procedure

**HONORABLE W. EUGENE DAVIS**
Advisory Committee on Rules of Criminal Procedure

Appointed as committee chairs by Chief Justice William H. Rehnquist, these outstanding jurists have played a vital role in the administration of the federal court system. These judges served with distinction as leaders of their Judicial Conference committees while, at the same time, continuing to perform their duties as judges in their own courts. They have set a standard of skilled leadership and earned our deep respect and sincere gratitude for their innumerable contributions. We acknowledge with appreciation their commitment and dedicated service to the Judicial Conference and to the entire federal judiciary.

---

[4]The resolution recognizing the contributions of Judge Hansen was approved by the Executive Committee, on behalf of the Conference, by mail ballot concluded on March 29, 2001, to coincide with the completion of his term as chair.

*September/October 2001*

## UNITED STATES SENTENCING COMMISSION

On recommendation of the Executive Committee, the Judicial Conference agreed to urge the President, with the advice and consent of the Senate, to reappoint to the United States Sentencing Commission Judges Sterling Johnson, Jr., of the Eastern District of New York, and Joe Kendall of the Northern District of Texas.

## INFORMATION TECHNOLOGY SECURITY/ USE OF THE INTERNET

In March 2001, the Executive Committee was advised that, consistent with Judicial Conference policy (*see* JCUS-SEP 88, p. 57), the Administrative Office was confidentially informing chief judges of potentially inappropriate use of the Internet by court personnel, so that the chief judge could take action, if appropriate. The Committee supported these actions, and asked the Committee on Automation and Technology to develop a comprehensive plan for improving information technology security in the judiciary. In late May, upon hearing of objections by certain judges to the judiciary's Internet access policy as managed by the AO, the Executive Committee urged the Committee on Automation and Technology, on an expedited basis, to develop policies and procedures to protect the confidentiality of electronic judicial communications and work product, including appropriate controls on monitoring.

The Executive Committee subsequently learned that the Ninth Circuit Judicial Council had directed the disconnection of intrusion detection software installed at the Ninth Circuit Internet gateway (which also serves the Eighth and Tenth Circuits). This software made possible, among other things, the identification of high-volume music and movie files. Concerned that the security of judiciary data in these circuits was jeopardized, the Committee determined to ask that the Ninth Circuit Council reactivate the intrusion detection software immediately, and agreed that if this was done, the identification of high-volume files (to which the Ninth Circuit Council had objected) would cease in all three judiciary gateways, pending the previously requested development of policies and procedures by the Automation and Technology Committee. The Ninth Circuit Council agreed.

In June, and again in August 2001, the Executive Committee was informed by the Chair of the Automation and Technology Committee of the latter committee's efforts to develop procedures on appropriate Internet use and the management of such use and on recommendations to be presented to the

*Judicial Conference of the United States*

Conference for actions to be taken pending further development (*see* "Use of the Internet ," p. 43).  In August 2001, the Executive Committee, with the concurrence of the Automation and Technology Committee, agreed to release to the public prior to the Conference session the latter committee's addendum to its report, which deals with this matter.

## MISCELLANEOUS ACTIONS

The Executive Committee—

- Approved proposed interim financial plans for fiscal year 2002 for the Salaries and Expenses, Defender Services, Fees of Jurors and Commissioners, and Court Security accounts, as recommended by the Director of the Administrative Office, and authorized the Director of the Administrative Office to make technical and other adjustments as deemed necessary.  The Executive Committee will be consulted as necessary concerning significant changes in the financial plans or allotments that might be required once a full-year appropriation is enacted.

- Concurred in the determination of the Court Administration and Case Management Committee to defer seeking enactment in a federal courts improvement bill of a provision authorizing the judiciary to charge fees for courtroom technologies such as videoconferencing of appellate arguments, in order to maintain the noncontroversial nature of the bill.

- Declined to take action on a Judicial Branch Committee request to authorize the Director of the Administrative Office to "weigh-in" in support of permitting federal employees to utilize frequent flier mileage for personal use.

- Discussed the issue of judges' attendance at private seminars, and determined to ask the Codes of Conduct Committee to consider amending Advisory Opinion No. 67 in light of *In re Aguinda*, 241 F.3d 194 (2d Cir. 2001).

- Approved a recommendation of the Budget Committee to amend the cost control monitoring system policy on funding court positions to provide nine months of funding for each increase in work units and three months of funding for each decrease in work units, subject to the availability of funds as determined by the Executive Committee during approval of annual financial plans, and upon consideration of the advice

and recommendation of the Director of the Administrative Office.

•     Approved a recommendation of the Security and Facilities Committee that a third "judicial space emergency" be declared in Brooklyn, New York.

•     Agreed to release to the public prior to Conference action a Court Administration and Case Management Committee report relating to privacy and public access to electronic case files.

•     On recommendation of the Criminal Law Committee, agreed to (a) strongly support the establishment of projects designed to evaluate reentry programs to assist certain criminal offenders' reintegration into local communities from prison; (b) not oppose legislation designed to implement such projects so long as the judiciary is fully funded to implement the required provisions of any proposed legislation; and (c) authorize the Administrative Office Director to work with Congress to suggest modifications to any proposed legislation reflecting concerns of the Conference including, among other things, that the project parameters be structured to maximize efficiency and effectiveness.

•     Agreed to ask the Administrative Office to implement certain changes to the Federal Law Clerk Information System suggested by law school placement personnel and also agreed to encourage all judges to participate in the system.

## COMMITTEE ON THE ADMINISTRATIVE OFFICE

### COMMITTEE ACTIVITIES

The Committee on the Administrative Office reported that, at the request of the Executive Committee, it conducted a review of the purposes for which statutorily required reports are produced by the Administrative Office and determined that it was not necessary to seek to modify or eliminate any of the 17 statutorily required reports. The Administrative Office Committee devoted considerable attention to the AO's role and actions in managing the security and performance of the judiciary's data communications network, including its procedures for notifying chief judges about possible inappropriate Internet use, which were consistent with established protocols. The Committee was briefed on current issues respecting the managing of judiciary Internet usage; it met in executive session and reviewed and approved the actions of the Administrative Office in that regard. The Committee was also briefed on the

*Judicial Conference of the United States*

progress of several major initiatives and studies, including the status of the AO's management oversight and stewardship initiative.

## COMMITTEE ON AUTOMATION AND TECHNOLOGY

### LAWBOOKS AND LIBRARIES STUDY

At the request of the Executive Committee, the Committee on Automation and Technology, with the assistance of the Committee on Security and Facilities, undertook a comprehensive study of lawbook and library usage within the judiciary with an eye toward cutting costs. Based on this study, the Committee recommended that the Conference adopt the following strategic recommendations:

1.  The lawbooks and library program should be actively managed through circuit-wide library committees and governance structures, increased use and better application of existing management tools and techniques, and periodic review of and consultation with users as to their needs and use of legal research materials. Potential opportunities for more efficient use of lawbook resources should be explored by each circuit.

2.  While successful efforts to restrain the costs of the lawbooks and library program have been achieved over the past several years, modest changes to chambers core collection guidelines and refinements to space and other guidelines would assist in a cost-effective use of judiciary lawbook funds.

3.  There continues to be a clear and compelling need for legal research materials in hard copy format, and it is clear that the transition to on-line legal research is an evolutionary process. The judiciary should continue to promote the use of on-line research and training for judges, librarians and others. Local variations due to differences in research needs, types of cases, culture, and physical plant need to be recognized, and the reduction of lawbook collections should occur on a voluntary basis.

The Committee also recommended adoption of 32 implementing recommendations, which are contained in the executive summary to the Committee's Lawbooks and Libraries Study Report. The Judicial Conference approved the Committee's recommendations, which are intended to make the lawbook and library program more cost-effective and efficient without sacrificing availability of research materials.

42

_____

## USE OF THE INTERNET

In September 1997, the Judicial Conference approved a judiciary-wide policy aimed at protecting the security of the judiciary's electronic systems and information, requiring that, for computers connected to the judiciary's data communications network, access to the Internet would be provided only through national gateway connections approved by the Administrative Office pursuant to procedures adopted by the Automation and Technology Committee. It also urged all courts to adopt their own policies establishing local responsibility for managing employee access to the Internet and providing guidance on appropriate Internet use. JCUS-SEP 97, pp. 52-53. In December 2000, concerned with the explosive growth in Internet usage within the judiciary, the Committee asked the Administrative Office to conduct an analysis of such use. The analysis revealed that a significant factor contributing to the growth of Internet traffic in the courts appeared to be related to personal, rather than business usage.

Informed of the Automation and Technology Committee's efforts, of the AO's analysis, and of subsequent steps taken to advise chief judges of potentially inappropriate Internet use, the Executive Committee, in March 2001, asked the Committee on Automation and Technology to develop a comprehensive plan for improving information technology security in the judiciary (*see* JCUS-MAR 2001, p. 6). The Executive Committee later expanded its request, urging the Automation Committee, on an expedited basis, to develop policies and procedures to protect the confidentiality of electronic judiciary communications and work product, including appropriate controls on monitoring (*supra*, "Information Technology Security/Use of the Internet," pp. 39-40).

The Committee on Automation and Technology developed a number of recommendations regarding operations of the national communications infrastructure, appropriate use of judiciary information technology resources, noticing of judiciary employees, and protection of the judiciary's communications infrastructure. These recommendations were approved by the Judicial Conference, as follows:

That the Judicial Conference—

•        Pending the completion of a review of the system architecture in 2002

*Judicial Conference of the United States*

that will be completed under the Committee's direction, with a view toward possible decentralization of Internet access to individual courts in a manner consistent with the security of the entire judiciary network, agree to reaffirm (a) that computers connected to the data communications network (DCN) shall access the Internet only through national gateways; and (b) that operations and security at those gateways are under the administrative, managerial, and logistical control of the Administrative Office, subject to the direction of the Conference or, where appropriate, Conference committees;

• Agree to adopt immediately, on an interim basis, the model use policy developed by the federal Chief Information Officers Council (except for Section F, "Privacy Expectations," which the Committee determined to reconsider), as ultimately revised by the Committee or its Subcommittee on IT Architecture and Infrastructure to tailor it to the judiciary, as a national minimum standard defining appropriate Internet use, subject to the right of each court unit to impose or maintain more restrictive policies. Further agree that in carrying out routine administrative, operational, and maintenance responsibilities, should instances of possibly inappropriate use of government resources come to the attention of the management of a court unit or the Administrative Office, established Judicial Conference notification policy will be followed;

• Reaffirm that individual courts have responsibility to enforce appropriate Internet use policies and direct the Administrative Office, as part of its regular audit process, to examine and comment upon the adequacy of the courts' enforcement methods;

• Agree to recommit to the Committee on Automation and Technology a recommendation on providing notice to judiciary employees of Internet use policies, in light of developments in technology and recent concerns raised on privacy; and

• Having discerned no material business use for Gnutella, Napster, Glacier, and Quake, all of which raise immediate and continuing security vulnerabilities, agree to (a) direct the Administrative Office to take appropriate steps to block such traffic involving computers connected to the DCN; and (b) delegate to the Committee the authority to block other tunneling protocols that may cause security breaches.

## COMMITTEE ACTIVITIES

44

*September/October 2001*

The Committee on Automation and Technology reported that it had approved priorities for implementing the recommendations of a comprehensive, independent study of the judiciary's national information technology program and approved resource requirements and priorities for the five programs under its jurisdiction: automation, telecommunications, court automation support reimbursable, library services, and electronic public access. The Committee discussed a revised information technology vision to be included in the next update to the *Long Range Plan for Information Technology* and received briefings on a number of information technology projects. The Committee also endorsed the continuation of an implementation strategy for installation of the replacement electronic mail system.

## COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

### TRUSTEE RETENTION OF PROFESSIONALS

Section 327(d) of the Bankruptcy Code (11 U.S.C. § 327(d)) allows courts to authorize trustees to hire themselves or their firms as attorneys or accountants for an estate if it is "in the best interest of the estate." This practice has been defended on the grounds of economy and efficiency to the estate, but has also raised concerns about possible conflicts of interest as well as a public perception of impropriety. In March 1994, the Judicial Conference agreed to support amendments to section 327(d) to address such concerns (JCUS-MAR 94, p. 11), but for a variety of reasons, such legislation has not been pursued. Upon reconsideration, the Committee determined to recommend that the Conference rescind its March 1994 position, noting that courts are aware of the dangers inherent in the practice of trustees employing themselves or their firms and have not encountered any difficulty in supervising the practice, or in applying the "best interest of the estate" standard that presently exists in section 327(d). The Conference adopted the Committee's recommendation.

### CHAPTER 11 QUARTERLY FEES

Bankruptcy administrators are independent non-judicial officers within the judicial branch who by statute perform the same bankruptcy estate administration oversight functions in the six districts in Alabama and North Carolina that the United States trustees perform in the other districts. Section 105 of the Federal Courts Improvement Act of 2000, Public Law No. 106-518, proposed by the Judicial Conference in March 1996 (JCUS-MAR 96, p. 10)

*Judicial Conference of the United States*

and enacted on November 13, 2000, authorizes the Conference to impose quarterly fees in chapter 11 cases in bankruptcy administrator districts comparable to those already being charged in United States trustee districts. To implement this statute, the Conference approved a Bankruptcy Committee recommendation that such fees be imposed in bankruptcy administrator districts in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time.

## COMMITTEE ACTIVITIES

The Bankruptcy Committee reported that it has established a subcommittee to study venue-related issues in bankruptcy cases, including effective procedures for handling large chapter 11 cases.[5] It also authorized its chair, at an appropriate time, to create a subcommittee to help coordinate the judiciary's implementation of bankruptcy reform legislation. The Committee further unanimously endorsed the recommendations of the Court Administration and Case Management Committee regarding privacy and public access to court case files (*see infra*, "Privacy and Public Access to Electronic Case Files," pp. 48-50) and of the Budget Committee regarding the designation of certifying officers (*see infra,* "Certifying Officers," p. 47).

# COMMITTEE ON THE BUDGET

## FISCAL YEAR 2003 BUDGET REQUEST

The Judicial Conference approved the Budget Committee's proposed budget request for fiscal year 2003, subject to amendments necessary as a result of new legislation, actions of the Judicial Conference, or any other reason the Executive Committee considers necessary and appropriate.

## CERTIFYING OFFICERS

---

[5]Prior to this Judicial Conference session, the Bankruptcy Committee withdrew for further consideration certain recommendations it had made proposing amendments to statutory and rule provisions governing venue in bankruptcy cases and proceedings.

The Federal Courts Improvement Act of 2000 included a Conference-sought provision authorizing the Director of the Administrative Office to designate certifying officers in the judiciary.  In anticipation of such legislation, at its September 1998 session, the Judicial Conference adopted an implementation strategy stating that the Director should consult with the chief judge before designating additional certifying officers in a district court (JCUS-SEP 98, p. 59).  At this session, the Judicial Conference approved a recommendation of the Budget Committee, made in consultation with the Committees on Court Administration and Case Management, Bankruptcy, Criminal Law, and Defender Services, that the September 1998 Conference policy be amended so that the appropriate chief judge maintains oversight of operations within his or her court unit.  Under the amended policy, the Director of the Administrative Office will designate certifying officers in appellate, district, and bankruptcy courts with the concurrence of the respective chief judges of those courts.  In those courts in which the clerk's office functions of the district and bankruptcy units are consolidated, certifying officer responsibilities also will be consolidated, and concurrence of the chief district judge will be required.  Certifying officers in the bankruptcy administrator and bankruptcy appellate panel programs will be designated with the concurrence of the circuit chief judge, and federal public defenders will be designated without chief judge concurrence.

## COMMITTEE ACTIVITIES

The Budget Committee and chairs of the program committees discussed news articles that reported the apparent use of the Internet by court employees for non-official purposes including substantial downloading of inappropriate material.  The Budget Committee believes that the judiciary must employ adequate safeguards over the use of its property and facilities; that past success in acquiring the necessary appropriations for the operations of the courts is due largely to the trusting relationship that the judiciary enjoys with the Congress and the confidence Congress has that the judiciary will use its resources wisely; and that all reasonable steps must be taken to retain Congress' confidence in the courts' stewardship of the taxpayers' dollars.  Therefore, the Committee unanimously resolved that, in formulating an information resources use policy, the Committee on Automation and Technology should ensure that judiciary

automation property and facilities are used for official purposes. The Budget Committee encouraged the Conference to embrace policies and administrative procedures for judiciary programs that will promote reasonable safeguards over the use of judiciary assets. *See also, supra,* "Use of the Internet," pp. 43-44.

# COMMITTEE ON CODES OF CONDUCT

## COMMITTEE ACTIVITIES

Since its last report to the Judicial Conference in March 2001, the Committee on Codes of Conduct received 31 new written inquiries and issued 31 written advisory responses. During this period, the average response time for these requests was 18 days. The Chairman received and responded to 17 telephonic inquiries. In addition, individual committee members responded to 126 inquiries from their colleagues.

# COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT

## PRIVACY AND PUBLIC ACCESS TO ELECTRONIC CASE FILES

After extensive study and opportunity for public comment, the Committee on Court Administration and Case Management, with substantial input from the Committees on Criminal Law, the Administration of the Bankruptcy System, Rules of Practice and Procedure, and Automation and Technology, endorsed the "Report on Privacy and Public Access to Electronic Case Files" (the Privacy Report) and recommended its adoption by the Judicial Conference. The Privacy Report establishes a judiciary-wide policy governing electronic availability of case file information. The Judicial Conference approved the following general principles and specific recommendations contained in the Report regarding access to different types of case files:

### GENERAL PRINCIPLES

- There should be consistent, nationwide policies in federal courts in order to ensure that similar privacy protections and access presumptions apply regardless of which federal court is the custodian of a particular case file.

48

• Notice of these nationwide policies should be given to all litigants in federal court so that they will be aware of the fact that materials which they submit in a federal court proceeding could become available on the Internet.

• Members of the bar must be educated about the policies and the fact that they must protect their clients by carefully examining the documents that they file in federal court for sensitive, private information and by making the appropriate motions to protect documents from electronic access when necessary.

• Except where otherwise noted, the policies apply to both paper and electronic files.

• Electronic access to docket sheets through PACERNet and court opinions through court websites will not be affected by these policies.

• The availability of case files at the courthouse will not be affected or limited by these policies.

• Nothing in these recommendations is intended to create a private right of action or to limit the application of Rule 11 of the Federal Rules of Civil Procedure.

## SPECIFIC RECOMMENDATIONS

• Civil Case Files. Documents in civil case files should be made available electronically to the same extent that they are available at the courthouse with one exception (that Social Security cases should be excluded from electronic access) and one change in policy (that certain "personal data identifiers" should be modified or partially redacted by the litigants; these identifiers are Social Security numbers, dates of birth, financial account numbers and names of minor children).

• Criminal Case Files. Public remote electronic access to documents in criminal cases should not be available at this time, with the understanding that this policy will be reexamined within two years of adoption by the Judicial Conference.

• Bankruptcy Case Files. Documents in bankruptcy case files should be made generally available electronically to the same extent that they are available at the courthouse, with a similar policy change for personal identifiers as in civil cases; section 107(b)(2) of the Bankruptcy Code

*Judicial Conference of the United States*

should be amended to establish privacy and security concerns as a basis for the sealing of a document; and the Bankruptcy Code and Rules should be amended as necessary to allow the court to collect a debtor's full Social Security number but display only the last four digits.

• Appellate Case Files. Appellate case files should be treated at the appellate level the same way in which they are treated at the lower level.

## MODEL LOCAL RULES FOR ELECTRONIC CASE FILING

On recommendation of the Committee, the Conference adopted model local rules for district and bankruptcy courts to assist those courts in implementing the electronic case filing (ECF) program.[6] The rules were developed with the assistance of the Committee on Automation and Technology and the Committee on Rules of Practice and Procedure. Courts may adopt the rules in full or in part, and courts may also opt to promulgate them through standing orders.

## MISCELLANEOUS FEES

Judicial Panel on Multidistrict Litigation. In September 1996, the Judicial Conference approved increases to certain fees in the miscellaneous fee schedules for appellate, district, and bankruptcy courts and the Court of Federal Claims to account for inflation. These fee increases were made contingent on the enactment of legislation to permit the judiciary to retain the resulting increased amounts (JCUS-SEP 96, p. 54). The Conference's 1996 action did not extend to the Judicial Panel on Multidistrict Litigation because its fee schedule was not established until March 1997 (JCUS-MAR 97, p. 20). Legislation permitting the judiciary to retain miscellaneous fee increases was enacted in section 102 of the Federal Courts Improvement Act of 2000 and includes the Multidistrict Litigation Panel with the other court types for which such fee increases may be retained. In order to maintain uniformity among the fee schedules of the different court types, the Judicial Conference approved a Committee recommendation that the Miscellaneous Fee Schedule for the Judicial Panel on Multidistrict Litigation be amended to include the fee increases set forth below:

---

[6]No courts of appeals have yet instituted ECF. Therefore, no rules are proposed for those courts at this time.

*September/October 2001*

| Fee | Current Amount | Increased Amount |
|---|---|---|
| Search of Records | $15 | $20 |
| Certification of Documents | $ 5 | $ 7 |
| Returned Check | $25 | $35 |

Federal Agency Exemption in the Courts of Appeals.  On recommendation of the Committee, the Judicial Conference agreed to amend Items 2 and 4 of the Court of Appeals Miscellaneous Fee Schedule to add language concerning limitations on federal agency exemption from fees.  This language, which is similar to that found in the district and bankruptcy court fee schedules, had been inadvertently omitted when the appellate fee schedule was amended to reflect the application of electronic access fees (*see* JCUS-SEP 93, pp. 44-45).  As amended, Items 2 and 4 read as follows (new language in italics) :

(2) For every search of the records of the court and certifying the results thereof, $20.  *This fee shall apply to services rendered on behalf of the United States if the information requested is available through electronic access.*

* * * * *

(4) For reproducing any record or paper, 50 cents per page.  This fee shall apply to paper copies made from either: (1) original documents; or (2) microfiche or microfilm reproductions of the original records.  *This fee shall apply to services rendered on behalf of the United States if the record or paper requested is available through electronic access.*

Appeal Fee in Bankruptcy.  The Conference adopted the recommendation of the Committee on Court Administration and Case Management, as endorsed by the Committee on the Administration of the Bankruptcy System, to amend Items 15 and 21 of the Bankruptcy Court Miscellaneous Fee Schedule to provide that fees for appeals or cross-appeals by bankruptcy trustees (and debtors in possession in chapter 11 cases) be payable only from the estate and to the extent that an estate is realized in order to encourage trustees to pursue estate assets.  A similar provision has already been included in Item 6 of the Bankruptcy Court Miscellaneous Fee Schedule pertaining to the obligation of trustees and debtors in possession to pay adversary proceeding filing fees.

*Judicial Conference of the United States*

## JUROR ATTENDANCE FEE

Pursuant to the Jury Selection and Service Act, 28 U.S.C. § 1871, jurors are entitled to receive a fee of $40 per day for attendance at a place of trial or hearing. While this fee is not intended to support or replace salaries, it is intended to provide a minimal level of compensation for jurors fulfilling their civic responsibility. However, this fee has not been increased in over ten years.[7] On recommendation of the Committee on Court Administration and Case Management, the Judicial Conference agreed to seek legislation to amend 28 U.S.C. § 1871(b)(1) to increase from $40 to $50 the fee paid to a juror per day of actual attendance, subject to congressional funding.

## E-GOVERNMENT ACT OF 2001

The proposed E-Government Act of 2001 (S. 803 and H.R. 2458, 107th Congress) is intended to improve the use of information technology by the federal government. Section 205 of both bills would require appellate, district and bankruptcy courts to establish official websites containing information or links to information such as local rules, written opinions and electronically filed documents. It would permit the Judicial Conference to promulgate rules to address privacy concerns, and includes an "opt out" provision. The bills also address the conditions under which fees may be charged for court information. Since an extensive effort is already underway in the judiciary both to expand public access through technology (*e.g.*, the case management/electronic case files system) and to address privacy issues related to public access (*see supra*, "Report on Privacy and Public Access to Electronic Case Files," pp. 48-50), it was the Committee's view that the judiciary is better equipped to address these issues. On recommendation of the Committee, the Judicial Conference agreed to ask Congress to strike section 205 and replace it with a provision giving the judiciary six months to study the use of information technology in providing court-related information to the public and provide the Senate Governmental Affairs and the House Government Reform Committees with language more tailored to the objectives and needs of the judiciary and its users.

---

[7]In March 1998, the Judicial Conference approved seeking legislation to reduce from 30 to five the number of days jurors are required to serve before they are eligible to receive an additional fee (JCUS-MAR 98, p. 9), but this proposal has not yet been enacted.

In addition, on recommendation of the Committee, the Conference adopted the following specific fallback positions in the event Congress declines to strike section 205:

That the Judicial Conference—

a.   take no position with regard to the meaning of the term "written opinion" as used in the legislation;

b.   take no position on the amendment of the fee language in the Judiciary Appropriations Act of 1991;

c.   make Congress aware of the fact that there are significant costs associated with the maintenance of written opinions online for an indefinite period of time;

d.   make Congress aware of any inconsistencies between any privacy and access policy the Conference may adopt and the provisions of the legislation;

e.   make Congress aware that the "opt out" provision of the bill is contrary to the establishment of a nationwide access policy and should be viewed as merely a short-term solution to initial noncompliance;

f.   seek an amendment to the legislation to allow chief bankruptcy judges to create the websites of bankruptcy courts; and

g.   seek an amendment to the legislation to extend the time requirement for compliance with both the operation of court websites and the availability of electronic documents to five years after the effective date of the Act.

_____

## COMMITTEE ACTIVITIES

The Committee on Court Administration and Case Management reported that, among other things, it received a briefing on the Criminal Justice Act supervisory attorney pilot project, which will be evaluated by the Committee at its next meeting; an update on videoconferencing in the federal courts; an update on the case management/electronic case files project; and a briefing on the Federal Judicial Center's ongoing district case weighting study.

*Judicial Conference of the United States*

## COMMITTEE ON CRIMINAL LAW

### DNA AND COMPETENCY OF COUNSEL LEGISLATION

Legislation pending in the 107th Congress on improving the availability of post-conviction forensic DNA testing in federal and state criminal justice systems and on ensuring competent counsel in state capital cases was considered by the Committees on Criminal Law, Defender Services, and Federal-State Jurisdiction, each with regard to those provisions falling within its jurisdiction.  The recommendations of those committees were presented to the Conference in one consolidated report and are discussed *infra,* "Consolidated Report on DNA and Competency of Counsel Legislation," pp. 72-75.

### COMMITTEE ACTIVITIES

The Committee reported on its recommendation to the AO Director that the Regulations of the Director of the Administrative Office Concerning the Carrying and Use of Firearms by U.S. Probation and Pretrial Services Officers be revised to authorize probation and pretrial services officers to carry judiciary-issued, double-action only, semiautomatic firearms in the performance of their official duties.  The regulations, adopted by the Conference at its March 1997 session (JCUS-MAR 97, p. 22), delegate to the AO Director, in consultation with the Committee, the authority to determine which firearms and ammunition are authorized for use by the officers.  The Committee was briefed on the activities of an ad hoc working group that is reviewing and revising pretrial services and post-conviction supervision monographs.

## COMMITTEE ON DEFENDER SERVICES

### MALPRACTICE CLAIMS AGAINST PANEL ATTORNEYS

The Federal Courts Improvement Act of 2000 amended subsection (d) of the Criminal Justice Act (CJA), 18 U.S.C. § 3006A(d), to authorize courts to reimburse panel attorneys for expenses reasonably incurred by them in defending against actions alleging their malpractice in furnishing representational service under the CJA.  On recommendation of the Committee

*September/October 2001*

on Defender Services, the Judicial Conference approved a proposed revision of paragraph 2.27 of the Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Volume VII, *Guide to Judiciary Policies and Procedures,* to add a new subparagraph (D) to advise courts and panel attorneys regarding implementation of this legislation.  (The previous subparagraph (D) is redesignated as (E).)  The new guideline sets a monetary ceiling for reimbursement, the deductible amount of the attorney's professional liability insurance or $5,000, whichever is less; precludes reimbursement for the value of the attorney's *own* services in defending against the action; and, as specified in the statute, prohibits reimbursement if a judgment of malpractice is rendered against the panel attorney.  Expenses incurred on or after November 13, 2000 are eligible for reimbursement.

## DNA AND COMPETENCY OF COUNSEL LEGISLATION

Legislation pending in the 107th Congress on improving the availability of post-conviction forensic DNA testing in federal and state criminal justice systems and on ensuring competent counsel in state capital cases was considered by the Committees on Criminal Law, Defender Services, and Federal-State Jurisdiction, each with regard to those provisions falling within its jurisdiction.  The recommendations of those committees were presented to the Conference in one consolidated report and are discussed *infra*, "Consolidated Report on DNA and Competency of Counsel Legislation," pp. 72-75.

## COMMITTEE ACTIVITIES

Under its delegated authority from the Judicial Conference (JCUS-MAR 89, pp. 16-17), the Committee on Defender Services approved fiscal year 2002 budgets and grants for 73 federal defender organizations, totaling $272,123,700.

The Committee reported that it reviewed the continuing development and implementation of the Outline of the Defender Services Program Strategic Plan, and supported the concept of convening a joint state and federal defender conference on quality of representation.  The Committee endorsed establishment of two capital resource counsel positions to be used to train and consult with federal defender organization staffs on federal death penalty representation, and, as their availability permits, provide support and training to Criminal Justice Act panel attorneys on such matters.  Efforts by the

*Judicial Conference of the United States*

Committee and other components of the judiciary to obtain an increase in the compensation rate for Criminal Justice Act panel attorneys appear to be yielding positive results, in that Congress approved FY 2002 funding for an hourly rate of $90 for in-court and out-of-court work.  The Committee also received a report on federal defender and panel attorney training events.

## COMMITTEE ON FEDERAL-STATE JURISDICTION

### DIVERSITY JURISDICTION

Section 1332(c) of title 28, United States Code, currently "deems" a corporation to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, for purposes of diversity of citizenship and removal jurisdiction.  The provision was originally adopted to expand the number of states in which a corporation will be deemed a citizen, thus restricting the scope of diversity jurisdiction.  However, some courts have interpreted the word "State" in section 1332(c)(1) as not including foreign states, resulting in the expansion of the availability of diversity jurisdiction for corporations with foreign contacts.  In response to this situation, the Committee on Federal-State Jurisdiction recommended that the Judicial Conference endorse enactment of a proposal of the American Law Institute to amend 28 U.S.C. § 1332(c) to deem a corporation to be a citizen of every state and foreign state by which it has been incorporated and of the state or foreign state in which it has its principal place of business.  The Conference adopted the Committee's recommendation, which would have the effect of restricting the availability of diversity jurisdiction for corporations with foreign contacts.

### PATIENTS' RIGHTS LEGISLATION

During the first session of the 107th Congress, both the Senate and the House of Representatives passed differing versions of the "Bipartisan Patient Protection Act" as S. 1052 and H.R. 2563, respectively.  These bills would establish new federal standards governing the provision of medical benefits in health insurance plans.  Both bills would also provide legal recourse for damage claims for injuries resulting from the denial by a health plan of a

medical benefit.  They differ, however, in their allocation of jurisdiction to the state and federal courts and in the type of action permitted.[8]

S. 1052 would create a new federal cause of action, with exclusive federal court jurisdiction, for personal injuries arising from a failure to exercise ordinary care in making a decision regarding an individual's coverage under a health benefit plan.  S. 1052 would also lift the preemption bar in the Employee Retirement Income Security Act of 1974 (ERISA) to permit suits for personal injuries arising from "medically reviewable determinations" (*e.g.*, decisions based on the necessity or appropriateness of a treatment) to go forward in state courts in accordance with otherwise applicable state law.  H.R. 2563 would create a single federal cause of action for damages that result from negligent coverage decisions, as well as medically reviewable decisions.  State and federal courts would be given concurrent jurisdiction.  Although H.R. 2563 precludes removal of claims arising from a medically reviewable determination, it permits removal if the action is against certain parties.  The two bills would also provide for access to a court when a benefit has been denied and the patient believes that exhaustion of internal and external review processes would result in irreparable injury to the patient's health.  S. 1052 would make federal court the exclusive forum for the adjudication of such exigent benefit claims, while H.R. 2563 would provide for concurrent jurisdiction in the state and federal courts and would make no provision to bar removal.

In February 2000, during the 106th Congress, the Executive Committee, on behalf of the Judicial Conference, adopted a recommendation of the Committee on Federal-State Jurisdiction urging Congress to provide that in any managed care legislation, the state courts be the primary fora for the resolution of personal injury claims arising from the denial of health care benefits, should Congress determine that such legal recourse is warranted.  The Executive Committee recognized that personal injury claims arising from the provision or denial of medical treatment have historically been governed by state tort law, and suits on such claims have traditionally and satisfactorily been resolved primarily in the state court system.  JCUS-MAR 00, pp. 7-8.  After reviewing the legal recourse provisions of S. 1052 and H.R. 2563, and in light of

---

[8]Presently, suits for personal injury damages against health insurance plans governed by the Employee Retirement Income Security Act of 1974 are generally barred, and only a claim for the actual benefit or service is permitted in federal, as well as state, court.  29 U.S.C. § 1132(a).

*Judicial Conference of the United States*

previous Conference action, the Committee on Federal-State Jurisdiction recommended that the Conference—

a.   Continue to recognize that state courts should be the primary fora for the resolution of personal injury claims arising from the denial of health care benefits;

b.   Express concern with any provision in patients' rights legislation that would create a new cause of action in federal court for personal injury claims arising from medically reviewable (*e.g.*, necessity of treatment) benefit decisions; and

c.   Encourage Congress, in any such legislation, to provide state courts with jurisdiction (concurrent or otherwise) over any suits to compel insurance plans to provide interim medical benefits on an emergency basis and to bar removal of such suits.

By mail ballot concluded on October 1, 2001, the Conference adopted the Committee's recommendations.

## DNA AND COMPETENCY OF COUNSEL LEGISLATION

Legislation pending in the 107th Congress on improving the availability of post-conviction forensic DNA testing in federal and state criminal justice systems and on ensuring competent counsel in state capital cases was considered by the Committees on Criminal Law, Defender Services, and Federal-State Jurisdiction, each with regard to those provisions falling within its jurisdiction.  The recommendations of those committees were presented to the Conference in one consolidated report and are discussed *infra,* "Consolidated Report on DNA and Competency of Counsel Legislation," pp. 72-75.

## COMMITTEE ACTIVITIES

The Committee on Federal-State Jurisdiction reported that it was briefed on a number of issues related to mass torts and class actions, including proposed amendments to Rule 23 of the Federal Rules of Civil Procedure regarding duplicative and competing class actions.   In addition, the Committee formed a Subcommittee on Federal-State Interaction, which is tasked with

making suggestions as to how the Committee can better foster state-federal relations and educational initiatives.  Other topics discussed by the Committee included the work of the Ninth Circuit's Pacific Islands Committee, the status of asbestos litigation, legislative language to make orders of the National Labor Relations Board self-enforcing, and a proposal by administrative law judges to restructure the appellate administrative review of Social Security claims.

## COMMITTEE ON FINANCIAL DISCLOSURE

### FINANCIAL DISCLOSURE REPORT PREPARATION

        On recommendation of the Committee on Financial Disclosure, the Judicial Conference agreed (by mail ballot concluded on October 1, 2001) to authorize the reimbursement of judges and judiciary employees for the cost of professional fees, not to exceed $1000, for the preparation of annual financial disclosure reports.  Reimbursement of this expense is appropriate because preparation of a financial disclosure report is a part of a filer's official duties and imparts no personal benefit; rather it satisfies an official government need.

### COMMITTEE ACTIVITIES

        As of July 1, 2001, the Committee had received 3,231 financial disclosure reports and certifications for the calendar year 2000, including 1,174 reports and certifications from Supreme Court justices, Article III judges, and judicial officers of special courts; 320 from bankruptcy judges; 488 from magistrate judges; and 1,249 from judicial employees.

## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### COMMITTEE ACTIVITIES

        The Committee on Intercircuit Assignments reported that during the period from January 1, 2001, to June 30, 2001, a total of 90 intercircuit assignments, undertaken by 58 Article III judges, were processed and recommended by the Committee on Intercircuit Assignments and approved by the Chief Justice.  In addition, the Committee aided courts requesting assistance by both identifying and obtaining judges willing to take assignments.

*Judicial Conference of the United States*

## COMMITTEE ON INTERNATIONAL JUDICIAL RELATIONS

### COMMITTEE ACTIVITIES

The Committee on International Judicial Relations reported that seven delegations of Russian judges have participated in a Library of Congress Russian Leadership Program rule-of-law component that has been established with Committee assistance.  The program includes visits to the federal and state courts in a local community in the United States.  The Committee also reported on its involvement in rule-of-law and judicial reform activities relating to Africa, Asia, Europe, and Latin America, including work with the Russian and Venezuelan judiciaries funded through the United States Agency for International Development.

## COMMITTEE ON THE JUDICIAL BRANCH

### GOVERNMENT MANAGEMENT REFORM ACT OF 1994

Section 101 of the Government Management Reform Act of 1994, Public Law No. 103-356, amended the Ethics Reform Act of 1989 to provide that an annual Employment Cost Index (ECI) adjustment for judges, members of Congress, and Executive Schedule officials can be no higher than a comparable pay adjustment for General Schedule employees.  The effect of this provision has been that judges and other high-level federal officials have lost 2.8 percent of their annual ECI adjustments cumulatively, resulting in a loss of about $4,000 annually.  After considering the legislative histories of the Ethics Reform Act and section 101 of the Government Management Reform Act, the Committee concluded that section 101 is contrary to the intent of Congress and the President in enacting the Ethics Reform Act (which was to make annual pay adjustments for high-level officials independent of those for other federal employees) and is unfair in its application to judges.  On recommendation of the Judicial Branch Committee, the Judicial Conference agreed to seek repeal of section 101 of the Government Management Reform Act of 1994, as it operates on judges, members of Congress, and Executive Schedule officials.

## TRAVEL REGULATIONS FOR UNITED STATES JUSTICES AND JUDGES

On recommendation of the Judicial Branch Committee, the Judicial Conference agreed to amend the Travel Regulations for United States Justices and Judges to clarify the Director's authority with regard to reimbursement for travel and subsistence expenses for judges with special needs. The amendments provide that (a) the Director may authorize a judge with a special need (*e.g.*, physical disability) transportation and per diem expenses incurred by a family member or other attendant who must travel with the judge to make the trip possible; (b) a judge with a special need is authorized services (*e.g.*, renting and/or transporting a wheelchair) to enable the judge to accomplish successfully the purpose of the travel; and (c) the Director may authorize an actual subsistence expense reimbursement not to exceed 300 percent of the applicable maximum per diem rate, where the daily subsistence allowance for judges who itemize is inadequate to cover the cost of a hotel room that is accessible or otherwise equipped for physically disabled persons.

## COMMITTEE ACTIVITIES

The Committee on the Judicial Branch reported that it has continued to give high priority to the problem of judicial compensation. The Committee also devoted considerable time and attention to benefits matters and received an update on the status of two cases raising issues concerning taxation of judicial compensation.

# COMMITTEE ON JUDICIAL RESOURCES

## COURT INTERPRETER POSITIONS

Based on established criteria, the Committee on Judicial Resources recommended, and the Judicial Conference approved, ten additional court interpreter positions for fiscal year 2003: six positions for the District of Arizona, including the conversion of three temporary positions to permanent; three positions for the Southern District of California; and one position for the Northern District of California. Four of these positions (three in the District of Arizona and one in the Southern District of California) were approved for accelerated funding in fiscal year 2002. On recommendation of the Committee,

*Judicial Conference of the United States*

the Conference declined to approve additional court interpreter positions for the Districts of Massachusetts, Nebraska, New Jersey, and Puerto Rico.

## BANKRUPTCY ADMINISTRATOR STAFF

The bankruptcy administrator for the Northern District of Alabama requested authority to have a "type II" chief deputy bankruptcy administrator position, citing the size, geographic distribution and level of responsibilities of that office. This request was supported by the chief judge of the Eleventh Circuit Court of Appeals, and the chief judges of the district and bankruptcy courts of the Northern District of Alabama. On recommendation of the Committee, which determined that the bankruptcy administrator for that district would use a second-in-command type II chief deputy in a manner consistent with the position description set forth in the Judiciary Salary Plan, the Conference approved the bankruptcy administrator's request.

## PHYSICAL FITNESS CENTERS

Physical fitness programs have been promoted by both the private and federal sectors as a means to improve employee productivity, reduce absenteeism, lessen employee turnover, and decrease health care costs. Judiciary staff have used on-site and shared fitness centers for several years. At the request of the Committee on Security and Facilities, the Committee on Judicial Resources developed a judiciary policy on physical fitness centers to give guidance on such matters as liability, safety, and space concerns, and recommended its adoption by the Conference. Among other things, the policy authorizes local funds to be expended to allow court staff to participate in fitness center activities. The Conference adopted the policy on physical fitness centers proposed by the Committee.

## BANKRUPTCY APPELLATE PANEL LAW CLERKS

In order to develop a methodology for allocating bankruptcy appellate panel law clerks, the Judicial Resources Committee considered the caseloads and resources of bankruptcy appellate panel judges, recommendations made by chief bankruptcy appellate panel judges and bankruptcy appellate panel clerks, and other detailed alternatives. On recommendation of the Committee, the Conference agreed to take the following actions:

*September/October 2001*

a.     Adopt a national staffing allocation formula for bankruptcy appellate panel law clerks of one law clerk for every 100 bankruptcy appellate panel annual case participations on a circuit-wide basis, not to exceed one law clerk per bankruptcy appellate panel judge;

b.     Define bankruptcy appellate panel case participations for the bankruptcy appellate panel law clerk formula as including (1) case terminations on the merits following oral hearing or submission on the briefs and (2) case procedural terminations ruled on by a judge;

c.     Approve a rounding factor of 75 bankruptcy appellate panel case participations for all filings above the initial base of 100 case participations for receiving a second or subsequent law clerk;

d.     Approve a stability factor that would reduce the number of allocated positions only if the bankruptcy appellate panel does not meet the formula standard with the rounding factor for two years in a row; and

e.     Authorize the Director of the Administrative Office to approve requests for bankruptcy appellate panel law clerk extensions for compelling reasons.

---

## DISTRICT CLERKS' OFFICES STAFFING FORMULA

In September 2000, the Judicial Conference approved a new staffing formula for the district clerks' offices (JCUS-SEP 00, pp. 56-57). Subsequently, in order to take into consideration the impact of new technologies, the Committee recommended that the Conference revise the formula to include a new "automation" factor and to remove the automation component from the existing "organizational" factor. In addition, the Committee recommended a technical amendment to the "judge support" staffing factor to reflect that this factor was intended to be based on "judges authorized," not "judges present," since the former is a more accurate indicator of workload. The Conference adopted the proposed automation, organizational, and judge support staffing factors as part of the staffing formula for the United States district court clerks' offices to be implemented in fiscal year 2002.

*Judicial Conference of the United States*

## ALTERNATIVE DISPUTE RESOLUTION STAFFING FACTOR

In March 1998, the Judicial Conference approved a "basic" and a "robust" staffing factor for clerk's office positions performing duties related to alternative dispute resolution (JCUS-MAR 98, pp. 20-21). The basic staffing factor was intended to apply to most district courts' alternate dispute resolution (ADR) programs, while the robust factor was intended for a limited number of courts with extensive ADR programs. The District of South Carolina, heretofore funded using the basic staffing factor, requested application of the robust factor, citing significant growth in its program. Based on the number of cases reported as participating in the District of South Carolina's ADR program, and the number of hours spent processing those cases for the 12-month reporting period ending June 2000, the Committee on Judicial Resources recommended that the Judicial Conference approve that district's request. The Conference adopted the Committee's recommendation.

## QUALIFICATIONS STANDARDS FOR CHIEF PROBATION AND CHIEF PRETRIAL SERVICES OFFICERS

The Judicial Conference approved a recommendation of the Committee on Judicial Resources that it adopt revised qualifications standards for chief probation officers and chief pretrial services officers in order to modernize and enhance those standards. The new standards retain requirements for a bachelor's degree before specialized experience is credited and for three years of technical experience for continued law enforcement officer retirement system coverage, but they eliminate credit for graduate-level education and allow substitution of three years of successful experience as a supervisor or a manager for the requirement of a year at the next lower level of specialized experience.

## COMMITTEE ACTIVITIES

The Committee on Judicial Resources reported that it encouraged the Director of the Administrative Office to increase the health care flexible spending account cap from $5,000 to a maximum of $10,000. The Committee took no action on special rates proposed by the Office of Personnel Management for information technology personnel because a survey of all

*September/October 2001*

court units conducted by the Administrative Office in March 2001 showed no apparent nationwide problem with information technology recruitment and retention in the judiciary (although the data indicated problems in certain locality pay areas). The Committee asked the Administrative Office to provide an update if the situation changes and to develop educational materials that encourage courts to use the full range of Court Personnel System flexibilities and monetary and non-monetary incentives to attract and retain information technology employees.

## COMMITTEE ON THE ADMINISTRATION
## OF THE MAGISTRATE JUDGES SYSTEM

### SELECTION AND APPOINTMENT REGULATIONS

On recommendation of the Committee on the Administration of the Magistrate Judges System, the Judicial Conference approved technical and clarifying changes to the Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges. Among other things, the changes add the Territory of Guam and the Commonwealth of the Northern Mariana Islands as locations where a person may be a member of the bar to be qualified for appointment as a magistrate judge, and clarify that any additional qualification standard that a court may wish to impose, beyond those in the selection and appointment regulations, may not be inconsistent with the court's policy as an equal opportunity employer.

### CHANGES IN MAGISTRATE JUDGE POSITIONS

After consideration of the report of the Committee and the recommendations of the Director of the Administrative Office, the district courts, and the judicial councils of the circuits, the Judicial Conference approved the following changes in positions, locations, salaries, and arrangements for full-time and part-time magistrate judge positions. Changes with a budgetary impact are to be effective when appropriated funds are available.

65

*Judicial Conference of the United States*

### THIRD CIRCUIT

Eastern District of Pennsylvania

> Made no change in the number, locations, or arrangements of the magistrate judge positions in the district.

Middle District of Pennsylvania

> Increased the salary of the part-time magistrate judge position at Williamsport from Level 7 ($5,605 per annum) to Level 6 ($11,211 per annum).

### FOURTH CIRCUIT

District of South Carolina

1.    Authorized an additional full-time magistrate judge position in Charleston; and

2.    Made no change in the number, locations, salaries, or arrangements of the other magistrate judge positions in the district.

### FIFTH CIRCUIT

Middle District of Louisiana

> Made no change in the number or arrangements of the magistrate judge positions in the district.

Northern District of Texas

> Increased the salary of the part-time magistrate judge position at Abilene from Level 5 ($22,422 per annum) to Level 4 ($33,633 per annum).

Western District of Texas

> Redesignated the full-time magistrate judge position currently designated as Austin or Waco as Austin.

### SIXTH CIRCUIT

Eastern District of Michigan

> Made no change in the number, locations, or arrangements of the magistrate judge positions in the district.

### NINTH CIRCUIT

District of Idaho

> Made no change in the number, location, or arrangements of the magistrate judge positions in the district.

District of Oregon

> Made no change in the number, locations, salaries, or arrangements of the magistrate judge positions in the district.

### ELEVENTH CIRCUIT

Northern District of Alabama

> Made no change in the number, locations, or arrangements of the magistrate judge positions in the district.

---

### ACCELERATED FUNDING

On recommendation of the Committee, the Judicial Conference agreed to designate the new full-time magistrate judge position at Charleston, South Carolina, for accelerated funding in fiscal year 2002.

---

### COMMITTEE ACTIVITIES

The Committee considered two issues concerning the selection and appointment regulations for magistrate judge positions. First, the Committee discussed a judge's suggestion that the regulations be amended to provide that if an applicant for a magistrate judge position is a member of the same law firm as a member of the merit selection panel, the panel member must step down.

*Judicial Conference of the United States*

The Committee determined not to seek a change to the regulations to address the issue, but instead to add language to the selection and appointment pamphlet that each panel member must disclose to all other panel members any personal or professional relationships with any applicants for the position. The Committee also declined to adopt a judge's suggestion that the regulations be modified to allow career law clerks with at least five years of clerkship experience to have that clerkship time considered in computing the five-year active practice of law requirement.

# COMMITTEE TO REVIEW CIRCUIT COUNCIL CONDUCT AND DISABILITY ORDERS

## COMMITTEE ACTIVITIES

The Committee to Review Circuit Council Conduct and Disability Orders reported that it met in August 2001 to consider a petition for review of an order entered by the Judicial Council of the District of Columbia Circuit in proceedings conducted under the Judicial Conduct and Disability Act, 28 U.S.C. § 372(c). The petition, filed in April 2001, was taken under advisement.

# COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

## FEDERAL RULES OF APPELLATE PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Appellate Rules 1 (Scope of Rules; Title), 4 (Appeal as of Right -- When Taken), 5 (Appeal by Permission), 21 (Writs of Mandamus and Prohibition, and Other Extraordinary Writs), 24 (Proceeding in Forma Pauperis), 25 (Filing and Service), 26 (Computing and Extending Time), 26.1 (Corporate Disclosure Statement), 27 (Motions), 28 (Briefs), 31 (Serving and Filing Briefs), 32 (Form of Briefs, Appendices, and Other Papers), 36 (Entry of Judgment; Notice), 41 (Mandate: Contents; Issuance and Effective Date; Stay), 44 (Case Involving a Constitutional Question When the United States Is Not a Party) and 45 (Clerk's Duties), and new Form 6 (Certificate of Compliance With Rule 32(a)), together with Committee notes explaining their purpose and intent. The Judicial Conference approved the amendments and new form and authorized their transmittal to the

68

*September/October 2001*

Supreme Court for its consideration with the recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Bankruptcy Rules 1004 (Partnership Petition), 2004 (Examination), 2015 (Duty to Keep Records, Make Reports, and Give Notice of Case), 4004 (Grant or Denial of Discharge), 9014 (Contested Matters), and 9027 (Removal), and new Rule 1004.1 (Petition for an Infant or Incompetent Person), together with Committee notes explaining their purpose and intent.[9] The Judicial Conference approved the amendments and the new rule and authorized their transmittal to the Supreme Court for its consideration with the recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law. The Committee also proposed, and the Conference approved, amendments to Official Forms 1 (Voluntary Petition) and 15 (Order Confirming Plan).  The revisions to the forms will take effect December 1, 2001.

## FEDERAL RULES OF CIVIL PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Civil Rules 54 (Judgments; Costs), 58 (Entry of Judgment), and 81 (Applicability in General), and to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims (In Rem Actions: Special Provisions), as well as a new Civil Rule 7.1 (Disclosure Statement), together with Committee notes explaining their purpose and intent. The Judicial Conference approved the amendments and the new rule and authorized their transmittal to the Supreme Court for its consideration with the recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

---

[9]The proposed amendments originally included revisions to Bankruptcy Rule 2014 (Employment of a Professional Person); however, prior to the Conference session, this proposal was withdrawn by the Committee for further consideration.

69

*Judicial Conference of the United States*

## FEDERAL RULES OF CRIMINAL PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Conference a comprehensive "style" revision of Criminal Rules 1-60. This revision is part of a larger effort to clarify, simplify, and standardize the language of the procedural rules.[10] The Committee also submitted to the Conference proposed "substantive" revisions to Criminal Rules 5 (Initial Appearance Before the Magistrate Judge), 5.1 (Preliminary Examination), 10 (Arraignment), 12.2 (Notice of Insanity Defense or Expert Testimony of Defendant's Mental Condition), 26 (Taking of Testimony), 30 (Instructions), 35 (Correction or Reduction of Sentence), and 43 (Presence of the Defendant), and a proposed new Rule 12.4 (Disclosure Statement). These revisions had been under consideration apart from the "style" project. The Conference first approved the style amendments, then the substantive amendments,[11] and then directed that the substantive amendments be substituted for the corresponding rules contained in the style amendments, inserting new Rule 12.4 as well. The Conference agreed to transmit these changes as a single set of proposals to the Supreme Court for its consideration with the recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

## COMMITTEE ACTIVITIES

The Committee on Rules of Practice and Procedure approved the recommendations of its advisory committees to publish for public comment proposed amendments to the Bankruptcy, Civil, Criminal, and Evidence Rules. The Committee was advised of the status of its local rules project, which entails reviewing all local rules of courts for consistency and duplication. An extensive report on this project will be presented at the Committee's January 2002 meeting and will be shared with the courts.

---

[10]The Federal Rules of Appellate Procedure were similarly revised in 1997 (JCUS-SEP 97, p. 82).

[11]The substantive amendments to Criminal Rules 5, 10, and 43 were approved by mail ballot concluded on October 1, 2001.

70

*September/October 2001*

## COMMITTEE ON SECURITY AND FACILITIES

### *U.S. COURTS DESIGN GUIDE*

In order to accommodate the unique space requirements of individual courts, the *U.S. Courts Design Guide* includes a provision allowing for "departures" from the *Design Guide*, which must be approved by the appropriate circuit judicial council. (Such "departures" have also been referred to at various times as "exceptions," "deviations," and "waivers.") To reflect more accurately that the *Design Guide* contemplates that some courts would have special needs, the Committee on Security and Facilities recommended, and the Conference agreed, that the word "departures" should be replaced with the words "special requirements" throughout the *Design Guide.* The approval process for such "special requirements" will not change. (Grammatical revisions necessitated by this action may be made without further Conference approval.)

### DELEGATION OF CONSTRUCTION AUTHORITY

Section 614 of title 40, United States Code, authorizes General Services Administration (GSA) delegation of construction authority to executive branch agencies. Prompted by experience that shows higher costs for the judiciary when it obtains alterations services through GSA than when it contracts directly with commercial vendors, the Committee recommended that the Judicial Conference seek legislation that would expressly permit GSA to delegate construction and alteration authority to the judiciary to the same extent that it may do so to executive branch agencies. The Conference adopted the Committee's recommendation.

### CONGRESSIONAL REVIEW OF COURTHOUSE CONSTRUCTION

On recommendation of the Committee, the Judicial Conference agreed to oppose legislation pending before the 107th Congress (H.R. 254) that would provide for more detailed congressional review of all court alteration and construction projects. The bill would require the AO to submit all planned projects in court space to Congress and would allow 30 days for any member of Congress to disapprove a project. Currently, Congress only considers

*Judicial Conference of the United States*

individual prospectus-level (exceeding $1.99 million) court construction and repair and alteration projects for authorization and appropriations.  H.R. 254 could require time-consuming documentation of even a small project.

## COURTROOM INFORMATION PROJECT

On recommendation of the Committee, the Judicial Conference endorsed voluntary participation by federal courts in the "Courtroom Information Project" of the National Center for State Courts, a program to share information with members of the bar about the size, shape, lighting, wiring, and lines of sight in federal and state courtrooms.  The Committee determined that participation would cause minimal risk to the security of a court, and cooperative projects with state courts are worthwhile.

## COMMITTEE ACTIVITIES

The Committee on Security and Facilities reported that in response to questions about firearms standards for court security officers, it resolved that the United States Marshals Service is best qualified to determine the types of weapons necessary to protect the judiciary.[12]  The Committee made technical revisions to update the Space Acquisition Guidelines, which had been approved by the Judicial Conference in March 1997 (JCUS-MAR 97, p. 41) and last updated February 25, 1999.  The Guidelines provide a process for managing and evaluating non-prospectus space projects.  The Committee referred the updated Guidelines to the Administrative Office Director for implementation.

# COMMITTEES ON CRIMINAL LAW, DEFENDER SERVICES, AND FEDERAL-STATE JURISDICTION

## CONSOLIDATED REPORT ON DNA AND COMPETENCY OF COUNSEL LEGISLATION

Three bills pending in the 107th Congress, the "Innocence Protection Act of 2001" (S. 486 and H.R. 912) and the "Criminal Justice Integrity and

[12]A Conference member identified this matter for the discussion calendar, but when the Conference session was canceled, the item was deferred.

Innocence Protection Act of 2001" (S. 800), have the dual goals of improving the availability of post-conviction forensic DNA testing in federal and state criminal justice systems and ensuring competent counsel in state capital cases. Responsibility for considering these legislative proposals was divided among three Conference committees. The Committee on Defender Services reviewed those sections addressing the assignment of counsel, the Committee on Criminal Law examined provisions directed to DNA testing in the federal criminal justice system, and the Committee on Federal-State Jurisdiction reviewed those provisions affecting state criminal justice systems. At the request of the Executive Committee, the three committees submitted their recommendations in one consolidated report. These recommendations were approved by the Judicial Conference by mail ballot concluded on October 1, 2001, as follows:

With respect to legislation pending in the 107th Congress to enhance the availability of post-conviction DNA testing in federal and state criminal justice systems and to ensure competent counsel in state capital proceedings (*e.g.,* S. 486 and H.R. 912, "The Innocence Protection Act of 2001," and S. 800, the "Criminal Justice Integrity and Innocence Protection Act of 2001"), and similar legislation that might be introduced in the future, that the Judicial Conference:

a.    Support the goal of establishing fair and uniform standards for post-conviction forensic DNA testing in the federal criminal justice system. *(Committee on Criminal Law)*

b.    Support the goal of affording innocent people wrongly convicted the opportunity to obtain DNA testing relevant to their claim of innocence, but oppose provisions that would entitle a person convicted of a non-capital federal crime the right to apply to the sentencing court for DNA testing in connection with an offense used for sentencing purposes. *(Committee on Defender Services)*

c.    Support provisions that would give federal courts discretion to appoint counsel for a financially eligible person who is convicted of a federal crime and is applying to the federal court for DNA testing in connection with that conviction. *(Committee on Defender Services)*

d.    Support the goal of ensuring that capital defendants have competent legal representation in both state and federal capital proceedings at every stage of their cases. *(Committee on Defender Services)*

*Judicial Conference of the United States*

e.      Support giving the Judicial Conference the opportunity to provide input to any national commission established to set standards specifying the elements of an effective system for providing adequate representation to indigent persons facing the death penalty, but oppose requiring members of the federal judiciary to serve as members of the commission.  *(Committee on Defender Services)*

f.      Support the award of grants for the purpose of providing defense services in connection with representation both in state capital trials and appeals and in state and federal post-conviction proceedings, except that, with regard to funds to be used in state court, support the federal judiciary's providing input into, but oppose the federal judiciary's being responsible for, the administration of such funds.  *(Committee on Defender Services)*

g.      With regard to provisions affecting state criminal justice systems that raise issues of federalism and resources burdens:

   1.      Oppose provisions that would entitle individuals not in custody to seek post-conviction DNA testing to challenge a state criminal conviction;

   2.      Express concerns with provisions that would displace state time limits and procedural default rules as applicable to individuals convicted after DNA testing became a routine feature of the state's criminal justice system;

   3.      Encourage Congress, to the extent it conditions the receipt of federal funds on a state's certification that it will provide DNA testing, to limit such conditions to those grants that relate directly to developing or improving a state's DNA analysis capability or to collecting, analyzing, or indexing DNA material for law enforcement identification purposes;

   4.      Oppose provisions that would permit the routine naming of state judges as defendants in any new federal cause of action to obtain DNA testing or evidence;

74

5.      Encourage Congress, in addressing the consequences of a state's failure to provide appropriate post-conviction DNA testing, to consider making any federal judicial remedy available only where the state judicial system fails to provide an adequate and effective remedy;

6.      Oppose provisions that would require the Attorney General to withhold certain prison funding to a state if that state permits the death penalty but does not meet the national standards specifying the elements of an effective system for providing adequate representation in state capital cases as established by a national commission described above; and

7.      Oppose provisions that would require states to certify that, as a condition for receiving certain federal grants, juries having a role in determining the sentence in a capital proceeding are instructed as to all statutorily authorized sentencing options, including parole eligibility rules, if a defendant so requests. *(Committee on Federal-State Jurisdiction)*

h.      Authorize the Director of the Administrative Office of the U.S. Courts to work with chairs of the respective Judicial Conference committees to suggest to Congress modifications of the relevant legislation that address the concerns of the Conference. *(Committees on Criminal Law, Defender Services, and Federal-State Jurisdiction)*

## FUNDING

All of the foregoing recommendations that require the expenditure of funds for implementation were approved by the Judicial Conference subject to the availability of funds and to whatever priorities the Conference might establish for the use of available resources.

Chief Justice of the United States
Presiding

*September/October 2001*

# INDEX

**Administrative Office, Committee on the**, 41-42

**Administrative Office of the United States Courts**
      bankruptcy appellate panel law clerks, 63
      certifying officers, 47
      changes in magistrate judge positions, 65
      cost control monitoring system, 40-41
      courthouse construction projects, 71-72
      data communications network, 41-42, 43-44
      DNA/competency of counsel legislation, 75
      Federal Law Clerk Information System, 41
      financial plans, FY 2002, 40
      firearms, probation and pretrial services officers, 54
      frequent flier mileage, 40
      funding court positions, 40-41
      information technology security, 39-40, 41, 43-44
      Internet usage, 39-40, 41, 43-44
      prisoner reentry programs, 41
      reports required by law, 41

**ADR** (*see* alternative dispute resolution)

**Alternative dispute resolution**
      staffing factor, 64

**American Law Institute**, 56

**Amon, Carol Bagley**, 38

**Appellate rules** (*see* rules of practice and procedure)

**Appropriations**
      budget request, FY 2003, 46
      Court Security account, 40
      Criminal Justice Act panel attorney compensation, 55-56
      defender organization funding, 55
      Defender Services account, 40
      Fees of Jurors and Commissioners account, 40
      financial plans, interim, FY 2002, 40
      Salaries and Expenses account, 40

i

*Judicial Conference of the United States*

**Attorney General of the United States**, 75

**Automation** (*see* information technology)

**Automation and Technology, Committee on,** 39-40, 42-45, 47, 48, 50

**Bankruptcy administrators**
     certifying officers, 47
     chapter 11 quarterly fees, 45-46,
     chief deputy position, 62

**Bankruptcy appellate panels**
     certifying officers, 47
     law clerk allocation, 62-63

**Bankruptcy judges** (*see* judges, bankruptcy)

**Bankruptcy rules** (*see* rules of practice and procedure)

**Bankruptcy system** (*see also* judges, bankruptcy)
     bankruptcy administrator program, 45-46, 47, 62
     bankruptcy appellate panel law clerk allocation, 62-63
     bankruptcy appellate panels, 47, 62-63
     bankruptcy court miscellaneous fee schedule, 51
     certifying officers, 46, 47
     chapter 11 quarterly fees, 45-46
     chief deputy bankruptcy administrator, 62
     electronic case filing, model local rules, 50
     fees
        appeals, 51
        chapter 11 quarterly, 45-46
     privacy/public access to electronic case files, 41, 46, 48-50, 52-53
     public access to court information, 48-50, 50, 52-53
     trustee retention of professionals, 45
     venue, 46
     websites, court, 52-53

**Bankruptcy System, Committee on the Administration
of the,** 45-46, 47, 48, 51

**Budget** (*see* appropriations)

*September/October 2001*

**Budget, Committee on the**, 40-41, 46, 46-48

**Case management** (*see* court administration)

**Case management/electronic case files (CM/ECF)**, 52

**Certifying officers**, 47

**Chief Information Officers Council**, 44

**Chief judges** (*see* judges, chief)

**Circuit councils** (*see* circuit judicial councils)

**Circuit judges** (*see* judges, circuit)

**Circuit judicial councils**
 changes in magistrate judge positions, 65
 information technology security, 39-40
 *U. S. Courts Design Guide*, 71

**Civil rules** (*see* rules of practice and procedure)

**Clerks of court**
 district staffing formula, 63, 64

**CM/ECF** (*see* case management/electronic case files)

**Codes of Conduct, Committee on**, 40, 48

**Community defender organizations** (*see* defender services)

**Compensation**
 Criminal Justice Act panel attorneys, 55-56
 Employment Cost Index adjustments, 60
 judicial, 60

**Competency of counsel, capital cases**, 54, 55, 58, 72-75

**Conduct and Disability Orders, Committee to Review
Circuit Council**, 68

iii

*Judicial Conference of the United States*

**Congress** (*see also* legislation, pending)
>    courthouse construction oversight, 71-72
>    DNA/competency of counsel legislation, 54, 55, 58, 72-75
>    E-Government Act of 2001, proposed, 52-53
>    Employment Cost Index (ECI) pay adjustments, 60
>    House Government Reform Committee, 52
>    judicial compensation, 60
>    managed care legislation, 56-58
>    patients' rights legislation, 56-58
>    prisoner reentry programs, 41
>    relationship with the judiciary, 47
>    Senate Governmental Affairs Committee, 52

**Consolidated Report on DNA and Competency of Counsel Legislation**, 54, 55, 58, 72-75

**Cost control monitoring system**, 40-41

**Court administration**
>    case management/electronic case files systems, 52
>    certifying officers, 47
>    E-Government Act of 2001, proposed, 52-53
>    electronic case filing, model local rules, 50
>    electronic public access, 41, 46, 48-50, 50, 52-53
>    fees
>>        access to court information, 52-53
>>        chapter 11 quarterly, 45-46
>>        courtroom technologies, 40
>>        juror attendance, 52
>>        miscellaneous, 50-51
>    information technology security, 39-40, 43-44
>    Internet, appropriate use, 39-40, 43-44, 47-48
>    miscellaneous fees, 50-51
>    privacy
>>        electronic access to case files, 41, 46, 48-50, 52-53
>>        Internet use, 39-40, 43-44
>>        judicial communication/work product, 39-40, 43-44
>>        Report on Privacy and Access to Electronic Case Files, 41, 46, 48-50, 52-53
>    websites, court, 52-53

**Court Administration and Case Management, Committee on**, 40, 41, 46, 47, 48-53

iv

**Court interpreters**, 61

**Courthouses** (*see* space and facilities)

**Courtroom Information Project**, 72

**Courtrooms** (*see* space and facilities)

**Courts of appeals** (*see also* court administration)
    certifying officers, 47
    court of appeals miscellaneous fee schedule, 51
    electronic public access to court information, 48-50, 50, 52-53
    fees, federal agency exemption, 51
    rules of practice and procedure, 68-69, 70
    websites, court, 52-53

**Criminal Justice Act (CJA)** (*see also* defender services; federal defenders)
    Guidelines for the Administration of the Criminal Justice Act, 55
    panel attorneys
        compensation, 55-56
        malpractice claims, 54-55
        support/training, 55

**Criminal law** (*see also* probation and pretrial services system)
    competency of counsel, capital cases, 54, 55, 58, 72-85
    DNA testing, 72-75
    DNA/competency of counsel legislation, 54, 55, 58, 72-75
    electronic public access to court information, 48-50, 50, 52-53
    prisoner reentry programs, 41
    privacy, electronic case files, 41, 46, 48-50, 52-53
    rules of practice and procedure, 70

**Criminal Law, Committee on**, 41, 47, 48, 54, 55, 58, 72-75

**Criminal rules** (*see* rules of practice and procedure)

**Data communications network (DCN),** 41-42, 43-44

**Davis, W. Eugene**, 38

*Judicial Conference of the United States*

**Defender services** *(see also* Criminal Justice Act; federal defenders)
      capital resource counsel positions, 55
      certifying officers, 47
      competency of counsel, capital cases, 55, 72-75
      defender organization funding, 55
      DNA testing, 55, 72-75
      grant awards for defense services, capital cases, 74
      panel attorney reimbursement, malpractice claims, 54-55

**Defender Services, Committee on**, 47, 54, 54-56, 58, 72-75

**Department of Justice**
      Attorney General of the United States, 75
      United States Marshals Service, 72
      United States trustees, 46

**Design Guide** (*see U. S. Courts Design Guide*)

**District courts** (*see also* bankruptcy system; court administration; magistrate judges system; probation and pretrial services system)
      alternative dispute resolution staffing factor, 64
      certifying officers, 47
      changes in magistrate judge positions, 65-67
      clerks' offices staffing formula, 63, 64
      court interpreter positions, 61
      Courtroom Information Project, 72
      electronic case filing, model local rules, 50
      electronic public access to court information, 48-50, 50, 52-53
      fees
          court information, 52-53
          juror attendance, 52
      websites, 52-53

**District judges** (*see* judges, district)

**Diversity jurisdiction**, 56

**DNA testing**, 54, 55, 58, 72-75

**DNA/competency of counsel legislation**, 54, 55, 58, 72-75

**Electronic case filing** (*see also* electronic public access

*September/October 2001*

model local rules, 50

**Electronic public access (EPA)** (*see also* Internet)
    access to case files, 48-50, 50, 52-53
    access to court information, official websites, 52-53
    case management/electronic case files (CM/ECF), 52
    fees, 52-53
    privacy, 41, 46, 48-50, 52-53
    Report on Privacy and Public Access to Electronic Case Files, 41, 46, 48-50, 52

**Employee Retirement Income Security Act of 1974 (ERISA)**, 57

**Employment Cost Index (ECI) pay adjustment**, 60

**Ethics Reform Act of 1989**, 60

**Executive branch**
    Department of Justice
        Attorney General of the United States, 75
        United States Marshals Service, 72
        United States trustees, 46
    Employment Cost Index pay adjustment, 60
    General Services Administration, 71
    President of the United States, 60
    United States Agency for International Development, 60

**Executive Committee**, 37-41, 42, 43, 46, 57, 73

**Federal Courts Improvement Act of 2000**, 46, 47, 50, 54-55

**Federal defenders** (*see also* Criminal Justice Act, defender services)
    certifying officers, 47

**Federal Law Clerk Information System**, 41

**Federal public defender organizations** (*see* defender services)

**Federal rules** (*see* rules of practice and procedure)

**Federalization**
    denial of health benefits, personal injury claims, 56-58

*Judicial Conference of the United States*

**Federal-State Jurisdiction, Committee on**, 54, 55, 56-59, 72-75

**Federal-state relations**
        Courtroom Information Project, 72
        denial of health benefits, personal injury claims, 56-58
        DNA/competency of counsel legislation, 72-75
        patients' rights legislation, 56-58
        Subcommittee on Federal-State Interaction, 58-59

**Fees**
        bankruptcy appeals, 51
        courtroom technologies, 40
        electronic access, 51, 52-53
        federal agency exemption, 51
        juror attendance, 52
        miscellaneous fee schedules
            bankruptcy, 51
            court of appeals, 51
            Judicial Panel on Multidistrict Litigation, 50-51

**Financial Disclosure, Committee on**, 59

**Financial disclosure reports**
        filed, 59
        reimbursement of preparation fees, 59

**Firearms**
        court security officers, 72
        probation and pretrial services officers, 54
        regulations, 54

**Garwood, Will L.**, 38

**General Services Administration**
        delegation of construction authority, 71

**Government Management Reform Act of 1994**, 60

**Guam, Territory of**, 65

***Guide to Judiciary Policies and Procedures***, 55

**Guidelines for the Administration of the Criminal Justice Act and Related Statutes**, 54-55

**Hansen, David R**., 38

***In re Aguinda***, 40

**Information technology** (*see also* Internet)
      access to court information, official websites, 52-53
      appropriate use, 39-40, 41-42, 43-44, 47-48
      E-Government Act of 2001, proposed, 52-53
      Federal Law Clerk Information System, 41
      fees
          courtroom technologies, 40
          electronic access, 51, 52-53
      lawbooks and library program, study, 42-43
      security, 39-40, 43-44
      websites, official court, 52-53

**Intercircuit assignments**, 59

**Intercircuit Assignments, Committee on**, 59

**International Judicial Relations, Committee on**, 60

**Internet** (*see also* information technology)
      appropriate use policies, 39-40, 41-42, 43-44, 47-48
      case management/electronic case files systems, 52
      intrusion detection software, 39-40
      model use policy, 43-44
      privacy, 41, 43-44, 46, 48-50, 52-53
      public access to court information, 48-50, 52-53
      security, 39-40, 43-44
      usage, 39-40, 41-42, 43-44

**Judges, Article III** (*see also* judges, federal)
      intercircuit assignments, 59

**Judges, bankruptcy** (*see also* bankruptcy system; judges, chief; judges, federal)
      bankruptcy appellate panel law clerk allocation, 62-63

*Judicial Conference of the United States*

chief, court websites, 53

**Judges, chief**
    bankruptcy, court websites, 52-53
    certifying officers, 47
    Internet, inappropriate use, 39, 43

**Judges, circuit** (*see* judges, Article III; judges, chief; judges, federal)

**Judges, Court of Federal Claims** (*see* judges, federal)

**Judges, district** (*see* judges, Article III; judges, chief; judges, federal)

**Judges, federal** (*see also* judges, Article III; judges, bankruptcy; judges, chief; judges, magistrate)
    compensation, 60
    Employment Cost Index pay adjustments, 60
    Federal Law Clerk Information System, 41
    financial disclosure reports
      filed, 59
      reimbursement of preparation fees, 59
    frequent flier mileage, 40
    private educational seminars, 40
    travel reimbursement, judges with special needs, 61

**Judges, magistrate** (*see also* judges, federal; magistrate judges system)
    accelerated funding, 67
    changes in positions, 65-67
    Guam, Territory of, 65
    Northern Mariana Islands, Commonwealth of the, 65
    qualifications for appointment, 65
    selection and appointment regulations, 65

**Judicial Branch, Committee on the**, 40, 60-61

**Judicial Conference of the United States**
    funding of actions, 75
    mail ballots, 37, 58, 59, 70, 73

**Judicial Panel on Multidistrict Litigation**
    fees, miscellaneous, 50-51

*September/October 2001*

**Judicial Resources, Committee on**, 61-65

**Judicial space emergency**, 41

**Judiciary Salary Plan** (*see* personnel, judiciary)

**Jurisdiction**,
     diversity, 56
     patients' rights legislation, 56-58

**Jury administration**
     juror attendance fee, 52

**Jury Selection and Service Act**, 52

**Law clerks**
     bankruptcy appellate panel, 62-63
     Federal Law Clerk Information System, 41

**Lawbooks** (*see* library program)

**Lawbooks and Libraries Study Report**, 42-43

**Legislation, pending (107th Congress)**
     Bipartisan Patient Protection Act (S. 1052 and H.R. 2563), 56-58
     congressional review of courthouse construction (H.R. 254), 71-72
     Criminal Justice Integrity and Innocence Protection Act of 2001 (S. 800), 72-75
     DNA/ competency of counsel legislation (S. 486 and H.R. 912; S. 800), 54, 55, 58, 72-75
     E-Government Act of 2001 (S. 803 and H.R. 2458), 52-53
     Innocence Protection Act of 2001 (S. 486 and H.R. 912), 72-75

**Legislative branch** (*see* Congress)

**Library of Congress Russian Leadership Program**, 60

**Library program**, 42-43

**Local rules**, **model electronic public access**, 50
**Magistrate judges** (*see* judges, magistrate)

xi

*Judicial Conference of the United States*

**Magistrate judges system** (*see also* judges, magistrate)
    accelerated funding, 67
    changes in positions, 65-67
    qualifications for appointment, 65
    selection and appointment regulations, 65

**Magistrate Judges System, Committee on the Administration of the**, 65-68

**Mail ballots of the Judicial Conference**, 37, 58, 59, 70, 73

**Miscellaneous fee schedules** (*see* fees)

**National Center for State Courts**, 72

**PACERNet**, 49

**Panel attorneys** (*see* Criminal Justice Act)

**Patients' rights legislation**, 56-58

**Personnel, judiciary** (*see also* staffing resources)
    chief deputy bankruptcy administrator, 62
    Federal Law Clerk Information System, 41
    financial disclosure reports
      filed, 59
      reimbursement of preparation fees, 59
    frequent flier mileage, 40
    Internet usage, 39-40, 43-44
    Judiciary Salary Plan, 62, 64
    physical fitness centers, 62
    qualification standards, chief probation and chief pretrial services officers, 64

**Physical fitness centers**, 62

**President of the United States**, 60

**Pretrial services system** (*see* probation and pretrial services system)

**Privacy**
    access to electronic case files, 41, 46, 48-50, 52-53

court websites, 52-53
E-Government Act of 2001, proposed, 52-53
Internet use, 39-40, 43-44
judicial communications/work product, 39-40, 43-44
Report on Privacy and Access to Electronic Case Files, 41, 46, 48-50, 52

**Probation and pretrial services officers** (*see also* personnel, judiciary)
chief, qualification standards, 64
firearms, 54

**Probation and pretrial services system** (*see* probation and pretrial services officers)

**Public Access to Court Electronic Records (PACER)**, 49

**Records**
access to electronic, 48-50
electronic filing, model local rules, 50
electronic, privacy, 41, 46, 48-50, 52-53

**Regulations of the Director of the Administrative Office Concerning the Carrying and Use of Firearms by U.S. Probation and Pretrial Services Officers**, 54

**Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges**, 65

**Report on Privacy and Public Access to Electronic Case Files**, 41, 46,  48-50, 52

**Resolutions**
Amon, Carol Bagley, 37-38
Davis, W. Eugene, 37-38
Garwood, Will L., 37-38
Hansen, David R., 37-38
Stapleton, Walter K., 37-38
Zloch, William J., 37-38

**Rule of law programs**, 60

*Judicial Conference of the United States*

**Rules of practice and procedure**
    appellate rules, 68-69, 70
    bankruptcy rules, 69, 70
    civil rules, 69, 70
    criminal rules, 70
    evidence rules, 70
    model local rules, electronic case filing, 50

**Rules of Practice and Procedure, Committee on**, 48, 50, 68-70

**Salaries** (*see* compensation)

**Security**
    courtroom information sharing, 72
    information technology, 39-40, 43-44

**Security and Facilities, Committee on**, 41, 42, 62, 71-72

**Space Acquisition Guidelines**, 72

**Space and facilities**
    construction authority, 71
    courthouse construction, congressional review, 71-72
    Courtroom Information Project, 72
    judicial space emergency, 41
    physical fitness centers, 62
    Space Acquisition Guidelines, 72
    *U. S. Courts Design Guide*, special requirements, 71

**Staffing formulae** (*see* staffing resources)

**Staffing resources** (*see also* personnel, judiciary)
    alternative dispute resolution staffing factor, 64
    bankruptcy administrator chief deputy position, 62
    bankruptcy appellate panel law clerks, 62-63
    cost control monitoring system, 40-41
    court interpreter positions, 61
    district clerks' offices staffing formula, 63, 64
    funding court positions, 40-41

**Stapleton, Walter K.**, 38

**Supporting personnel** (*see* personnel, judiciary)

**Technology** (*see* information technology)

**Travel, judges'**
>frequent flier mileage, 40
>judges with special needs, 61

**Travel Regulations for United States Justices and Judges**, 61

**United States Agency for International Development**, 60

**United States Marshals Service**, 72

**United States Sentencing Commission**, 39

**United States trustees**, 46

***U. S. Courts Design Guide***, 71

**Zloch, William J**., 38



**ADMINISTRATIVE OFFICE OF THE U.S. COURTS**
THURGOOD MARSHALL FEDERAL JUDICIARY BUILDING
WASHINGTON, D.C. 20544