# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# HARTFORD DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CLINTON NURSERIES, INC., | : | Case No. 17-31897(JJT) |
| CLINTON NURSERIES OF MARYLAND, INC., | : | Case No. 17-31898(JJT) |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | Case No. 17-31899(JJT) |
| TRIEM LLC, | : | Case No. 17-31900(JJT) |
| | : | (Jointly Administered Under |
| Debtors. | : | Case No. 17-31897(JJT)) |
| CLINTON NURSERIES, INC., | : | |
| CLINTON NURSERIES OF MARYLAND, INC., | : | |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | |
| TRIEM LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Adv. No. 19-03014 |
| | : | |
| WILLIAM K. HARRINGTON, | : | |
| UNITED STATES TRUSTEE, REGION 2, | : | |
| | : | RE: ECF No. 14 |
| Defendant. | : | |

## ORDER APPROVING ESCROW AGREEMENT

WHEREAS, on April 17, 2019, the Debtors filed their Motion to Determine Amount of United States Trustee Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 672, the "Motion to Determine"); and

WHEREAS, on May 30, 2019, the Bankruptcy Court entered a Scheduling and Briefing Order Pertaining to the Hearing on the Debtors' Motion to Determine Amount of Chapter 11 Quarterly Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 711, the "Scheduling Order"). The Scheduling Order provides, among other things: "The Debtors and William K. Harrington, the United States Trustee for Region 2 (the 'United States Trustee'), each through their respective counsel, hav[e] agreed that the United States Trustee

would not file a motion to dismiss or convert the Debtors' cases based on non-payment of United States Trustee fees, or otherwise seek to compel the Debtors [to] pay any United States Trustee fees, during the pendency of the Debtors' Motion … ."; and

WHEREAS, on August 28, 2019, the Bankruptcy Court entered its Ruling and Order Converting Contested Motion to Adversary Proceeding and Memorandum of Decision Dismissing Adversary Proceeding for Failure to State Claims Upon Which Relief can be Granted (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 835, the "Subject Ruling"), dismissing the Motion to Determine;[1] and

WHEREAS, on September 11, 2019, the Debtors timely filed a notice of appeal of the Subject Ruling (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 857; such appeal, the "Subject Appeal"); and

WHEREAS, on November 8, 2019, the United States District Court for the District of Connecticut certified the Subject Appeal for direct appeal to the United States Court of Appeals for the Second Circuit Court under 28 U.S.C. § 158(d)(2) (D. Conn. Case No. 3:19-cv-01428-MPS, ECF Doc. No. 14); and

WHEREAS, on December 18, 2019, the Debtors filed their Debtors' Second Modified First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 1045, the "Plan"); and

WHEREAS, the Plan provides that all fees due and payable under 28 U.S.C. § 1930 ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors when due and payable;

---

[1] The Bankruptcy Court converted the Motion to Determine to an adversary proceeding under the Federal Rules of Bankruptcy Procedure and treated the US Trustee's objection to the Motion to Determine as a motion to dismiss the adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012. Subject Ruling at 5-11.

that on and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the United States Trustee ("US Trustee"); and that each Debtor shall remain obligated to pay quarterly fees to the US Trustee until the earliest of that particular Debtor's Case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code; and

WHEREAS, on December 12, 2019, the Debtors filed their Motion For Stay Pending Appeal (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 14, the "Stay Motion"), requesting that the Bankruptcy Court enter a stay of the Subject Ruling and that they not be required to pay any unpaid Quarterly Fees based on the confirmation of the Plan pending a decision on their appeal of the Subject Ruling; and

WHEREAS, on December 27, 2019, the US Trustee filed its objection to the Stay Motion (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 18); and

WHEREAS, on January 9, 2020, the Bankruptcy Court entered an order confirming the Plan (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 1094); and

WHEREAS, on January 9, 2019, the Bankruptcy Court entered an order (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 28, the "Stay Order") granting the Stay Motion for the lesser of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals, or the U.S. District Court in the event certification of the direct appeal to the Second Circuit is denied, on the condition that the Debtors establish a reserve to be held in escrow for the purpose of paying any Quarterly Fees that are due if the Debtors are not successful on the Subject Appeal; now, therefore, it is

ORDERED, that the Escrow Agreement annexed hereto as Exhibit A is hereby approved for purposes of establishing the escrow provided for herein.

Dated at Hartford, Connecticut this 24th day of January, 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

# **EXHIBIT A**

# ESCROW AGREEMENT

This Escrow Agreement (as the same may be amended or modified from time to time pursuant hereto, this "Agreement"), dated as of January [ ], 2020, among Clinton Nurseries, Inc. ("CNI"), Clinton Nurseries of Maryland, Inc. ("CNM"), Clinton Nurseries of Florida, Inc. ("CNF"), and Triem LLC (together with CNI, CNM and CNF, and their successors, the "Debtors"), and Zeisler & Zeisler, P.C. and its successors (the "Escrow Agent").

WHEREAS, on December 18, 2017, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (collectively, the "Cases") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"). The Cases are being jointly administered under Case No. 17-31897; and

WHEREAS, on April 17, 2019, the Debtors filed their Motion to Determine Amount of United States Trustee Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 672, the "Motion to Determine"); and

WHEREAS, on May 30, 2019, the Bankruptcy Court entered a Scheduling and Briefing Order Pertaining to the Hearing on the Debtors' Motion to Determine Amount of Chapter 11 Quarterly Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 711, the "Scheduling Order"). The Scheduling Order provides, among other things: "The Debtors and William K. Harrington, the United States Trustee for Region 2 (the 'United States Trustee'), each through their respective counsel, hav[e] agreed that the United States Trustee would not file a motion to dismiss or convert the Debtors' cases based on non-payment of United States Trustee fees, or otherwise seek to compel the Debtors [to] pay any United States Trustee fees, during the pendency of the Debtors' Motion … ."; and

WHEREAS, on August 28, 2019, the Bankruptcy Court entered its Ruling and Order Converting Contested Motion to Adversary Proceeding and Memorandum of Decision Dismissing Adversary Proceeding for Failure to State Claims Upon Which Relief can be Granted (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 835, the "Subject Ruling"), dismissing the Motion to Determine;[1] and

WHEREAS, on September 11, 2019, the Debtors timely filed a notice of appeal of the Subject Ruling (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 857; such appeal, the "Subject Appeal"); and

WHEREAS, on November 8, 2019, the United States District Court for the District of Connecticut certified the Subject Appeal for direct appeal to the United States Court of Appeals for the Second Circuit Court under 28 U.S.C. § 158(d)(2) (D. Conn. Case No. 3:19-cv-01428-MPS, ECF Doc. No. 14); and

---

[1] The Bankruptcy Court converted the Motion to Determine to an adversary proceeding under the Federal Rules of Bankruptcy Procedure and treated the US Trustee's objection to the Motion to Determine as a motion to dismiss the adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012. Subject Ruling at 5-11.

1

WHEREAS, on December 18, 2019, the Debtors filed their Debtors' Second Modified First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 1045, the "Plan"); and

WHEREAS, the Plan provides that all fees due and payable under 28 U.S.C. § 1930 ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors when due and payable; that on and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the United States Trustee ("US Trustee"); and that each Debtor shall remain obligated to pay quarterly fees to the US Trustee until the earliest of that particular Debtor's Case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code; and

WHEREAS, for purposes of this Agreement, the term "Debtors" includes the "Reorganized Debtors," as that term is defined by the Plan.

WHEREAS, according to the US Trustee, through the third quarter of 2019 there was a total of $277,235.87 (such amount, the "Initial Deposit") of unpaid Quarterly Fees due under 28 U.S.C. § 1930(a)(6)(B) plus interest; and

WHEREAS, on December 12, 2019, the Debtors filed their Motion For Stay Pending Appeal (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 14, the "Stay Motion"), requesting that the Bankruptcy Court enter a stay of the Subject Ruling and that they not be required to pay any unpaid Quarterly Fees based on the confirmation of the Plan pending a decision on their appeal of the Subject Ruling; and

WHEREAS, on December 27, 2019, the US Trustee filed its objection to the Stay Motion (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 18); and

WHEREAS, on January 9, 2020, the Bankruptcy Court entered an order confirming the Plan (Bankr. D. Conn. Case No. 17-31897, ECF Doc. No. 1094); and

WHEREAS, on January 9, 2019, the Bankruptcy Court entered an order (Bankr. D. Conn. Adv. Pro No. 19-03014, ECF No. 28, the "Stay Order") granting the Stay Motion for the lesser of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals, or the U.S. District Court in the event certification of the direct appeal to the Second Circuit is denied, on the condition that the Debtors establish a reserve to be held in escrow for the purpose of paying any Quarterly Fees that are due if the Debtors are not successful on the Subject Appeal; and

WHEREAS, the Debtors wish to engage the Escrow Agent to act, and the Escrow Agent is willing to act, as escrow agent in conformity with all orders of the Court and with this Escrow Agreement in connection with the escrow established under this Agreement, and to hold, administer and distribute the amounts deposited in escrow hereunder in accordance with, and subject to, the terms of applicable federal law, the orders of this Court, this Agreement and the Plan;

NOW, THEREFORE, in order to establish the escrow of funds and to effect the provisions of the Plan, the parties hereto have entered into this Agreement. The parties, intending to be legally bound, hereby agree as follows:

1. APPOINTMENT OF AND ACCEPTANCE BY ESCROW AGENT. Effective as of the Effective Date (as defined in the Plan), the parties hereto hereby appoint the Escrow Agent to serve as escrow agent hereunder. Effective as of the Effective Date, the Escrow Agent hereby accepts such appointment and, upon receipt of the Escrow Funds in accordance with Section 3 below, agrees to hold, invest and disburse the Escrow Funds in accordance with this Agreement.

2. ESTABLISHMENT OF ESCROW. (a) On the Effective Date the Debtors shall deposit with the Escrow Agent the Initial Deposit. (b) For periods after the third quarter of 2019, within fifteen days after receipt of a billing statement from the US Trustee, the Debtors shall deposit with the Escrow Agent the estimated amount of Quarterly Fees due plus interest as set forth in the billing statement from the US Trustee (together with the Initial Deposit, the "Escrow Funds"). (c) The parties hereto acknowledge and agree that the Escrow Funds shall remain property of the Debtors until such time as such Escrow Funds are disbursed in accordance with this Agreement. For the avoidance of doubt, none of the Escrow Funds shall be property of the Escrow Agent. (d) The Escrow Agent shall hold the Escrow Funds in an interest bearing bank account at Peoples Bank, 850 Main Street, Bridgeport, CT 06604, which account shall be (i) separate and apart from the Escrow Agent's general operating funds and from any other funds subject to any lien or any cash collateral arrangements and (ii) maintained for the sole purpose of holding the Escrow Funds.

3. DISBURSEMENT. The Escrow Agent shall transfer the Escrow Funds to either the Debtors or the US Trustee, or a portion to each, as directed by the Bankruptcy Court or as agreed by the Debtors and the US Trustee as soon as practicable after the Debtors deliver (which may be via e-mail) to the Escrow Agent, with a copy to the US Trustee, (a) a notice signed by the Debtors and acknowledged by the US Trustee stating to whom the Escrow Funds should be disbursed, and (b) a copy of either the order of the Bankruptcy Court or the agreement between Debtors and the US Trustee containing the directions regarding how to distribute the Escrow Funds.

4. DUTIES OF THE ESCROW AGENT. (a) At the request of the Debtors or the US Trustee, the Escrow Agent shall provide statements to the Debtors and the US Trustee of the total balance of Escrow Funds held by the Escrow Agent and a listing of the date, amount and type of any activity in the account holding the Escrow Funds (such as deposits or disbursements). (b) The Escrow Agent shall give the Escrow Funds held by it hereunder the degree of care that it gives its own similar property.

5. THE ESCROW AGENT'S LIABILITY. The Escrow Agent shall not be liable to the Debtors for actions or omissions hereunder, except to the extent that a court of competent jurisdiction determines in a final, non-appealable judgment that the Escrow Agent's bad faith, fraud, gross negligence, negligence or willful misconduct was the proximate cause of any liability or loss to the Escrow Agent. In no event shall the Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages (including, but not limited to lost profits).

6. INDEMNIFICATION. From and at all times after the date of this Agreement, the Debtors, shall, to the fullest extent permitted by law, defend, indemnify and hold harmless the

Escrow Agent and its directors, officers, employees, attorneys, agents and affiliates (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including without limitation reasonable and documented attorneys' fees, costs and expenses) incurred by or asserted against any of the Indemnified Parties from and after the date hereof, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation the Debtors, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance of this Agreement or any transactions contemplated hereby, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the bad faith, fraud, gross negligence or willful misconduct of an Indemnified Party.

    7.  RELIANCE. (a) The Escrow Agent shall be entitled to rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity of the service thereof. The Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that the person purporting to give receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so. The Escrow Agent may conclusively presume that the undersigned representative of any party hereto which is an entity other than a natural person has full power and authority to instruct Escrow Agent on behalf of that party unless written notice to the contrary is delivered to the Escrow Agent. (b) The Escrow Agent may act pursuant to the advice of counsel with respect to any matter relating to this Agreement and shall not be liable for any action taken or omitted by it in good faith in accordance with such advice.

    8.  RESIGNATION. The Escrow Agent (and any successor Escrow Agent) may at any time resign as such by delivering the Escrow Funds to any successor Escrow Agent jointly designated in writing by the Debtors and the US Trustee, or to the Bankruptcy Court, whereupon the Escrow Agent shall be discharged of and from any and all further obligations arising in connection with this Agreement. The resignation of the Escrow Agent will take effect on the earlier of (a) the appointment of a successor (including the Bankruptcy Court) or (b) the day which is thirty (30) days after the date of delivery of its written notice of resignation to the other parties hereto. If, at that time, the Escrow Agent has not received a designation of a successor Escrow Agent, the Escrow Agent's sole responsibility after that time shall be to retain the Escrow Funds until receipt of a designation of a successor Escrow Agent. The Debtors with the written consent of the US Trustee, shall appoint a successor Escrow Agent hereunder prior to the effective date of such resignation and shall cause such successor Escrow Agent to execute and deliver an instrument accepting such appointment. The retiring Escrow Agent shall transmit all records pertaining to

the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent. If the parties hereto (other than the Escrow Agent) have failed to appoint a successor Escrow Agent prior to the expiration of thirty (30) days following receipt of the notice of resignation, the Escrow Agent may petition the Bankruptcy Court for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. After any retiring Escrow Agent's resignation, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement. Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all of the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be Escrow Agent under this Escrow Agreement without further act.

9. LIMITED RESPONSIBILITY. Subject to applicable federal law and orders of the Bankruptcy Court, this Agreement expressly sets forth all the duties of the Escrow Agent with respect to any and all matters pertinent hereto. No implied duties or obligations shall be read into this Agreement against the Escrow Agent and the Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. The Escrow Agent shall not be bound by the provisions of any agreement among the other parties hereto except this Agreement and the Escrow Agent shall have no liability under, and no duty to inquire as to, the provisions of any agreement other than this Agreement.

10. NOTICES. All notices, consents, waivers and other communications required or permitted under this Agreement shall be in writing and shall be deemed given to a party or the US Trustee, as applicable, when (a) delivered to the appropriate address by hand or by a nationally recognized overnight courier service (costs prepaid); (b) sent by facsimile or e-mail (with confirmation by the transmitting equipment); or (c) received by the addressee, if sent by certified mail, return receipt requested, in each case to the following addresses and facsimile numbers and marked to the attention of the person (by name or title) designated below (or to such other address, facsimile number or person as a party may designate by notice to the other parties):

(x) If to the Debtors, to:

CLINTON NURSERIES, INC.; CLINTON NURSERIES OF FLORIDA, INC.; CLINTON NURSERIES OF MARYLAND, INC.; TRIEM LLC

c/o Clinton Nurseries, Inc.

517 Pond Meadow Road

Westbrook, Connecticut  06498

Attn: David Richards, President

DERichards@cngrp.com

5

    Eric Henzy, Esq.

    Zeisler & Zeisler, P.C.

    10 Middle St, 15th Floor

    Bridgeport, CT 06604

(y) If to the United States Trustee, to:

    William K. Harrington
    United States Trustee for Region 2
    U.S. Department of Justice
    Office of the United States Trustee
    Giaimo Federal Building
    150 Court Street, Room 302
    New Haven, CT 06510
    William.K.Harrington@usdoj.gov

    and

    P. Matthew Sutko
    Associate General Counsel
    U.S. Department of Justice
    Executive Office for United States Trustees
    441 G Street, NW, Suite 6150
    P.Matthew.Sutko@usdoj.gov.

(z) If to the Escrow Agent, to:

    Zeisler & Zeisler, P.C.

    10 Middle Street, Bridgeport, CT 06604

    Attention: Eric Henzy

    or to such person or address as the Escrow Agent shall furnish to the Debtors and the US Trustee.

    11.    DISPUTES AND JURISDICTION.  Any proceeding arising from a dispute regarding this Agreement, including the Escrow Agent's disbursement obligations or the Debtors' obligations to make deposits with the Escrow Agent, shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to hear any such proceeding notwithstanding the entry of an Order closing the Cases, and each of the parties irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court in any such proceeding and waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding shall be heard and determined only in the Bankruptcy Court and agrees not to bring any proceeding arising out of or relating to this Agreement in any other court.  For the avoidance

of doubt, nothing in this paragraph waives any rights of the United States to pursue collection in any forum of statutory amounts due from Debtors in accordance with applicable law (including the Stay Order if it is still in effect). In addition, nothing contained in this Agreement including, but not limited to, anything related to the calculation of the estimated Quarterly Fees or the entitlement to interest shall constitute an admission or be binding on or in any way limit the rights of the US Trustee or the Debtor with respect to any issue.

12. EXECUTION OF AGREEMENT. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile or electronic transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Escrow Agreement for all purposes. Signatures of the parties transmitted by facsimile or electronic transmission shall be deemed to be their original signatures for any purposes whatsoever.

13. SECTION HEADINGS, CONSTRUCTION. The headings of sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.

14. WAIVER. The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither the failure nor any delay by any party in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

15. ENTIRE AGREEMENT AND MODIFICATION. This Agreement supersedes all prior agreements among the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended except by a written agreement executed by the Debtors and the Escrow Agent, and with approval of the Bankruptcy Court.

16. GOVERNING LAW. This Agreement shall be governed by the laws of the State of Connecticut without regard to conflicts of law principles thereof, however, notwithstanding this choice of law provision governing the relations between the Debtors and the Escrow Agent, the United States' rights as a beneficiary of this Escrow Agreement shall be determined under federal law.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first written above.

| | |
|---|---|
| CLINTON NURSERIES, INC. | ZEISLER & ZEISLER, P.C., as Escrow Agent |
| By: _____ | By _____ |
| David Richards | Eric Henzy |
| Its:    President | Partner |

CLINTON NURSERIES OF MARYLAND, INC.

By: _____

Its:    President

CLINTON NURSERIES OF FLORIDA, INC.

By: _____

David Richards

Its:    President

TRIEM LLC

By: _____

David Richards

Its:    Managing Member

8