**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 17-31897 (JJT) |
| | ) | Case No. 17-31898 (JJT) |
| CLINTON NURSERIES, INC, | ) | Case No. 17-31899 (JJT) |
| CLINTON NURSERIES OF MARYLAND, INC., | ) | Case No. 17-31900 (JJT) |
| CLINTON NURSERIES OF FLORIDA, INC., and | ) | Jointly Administered Under |
| TRIEM LLC, | ) | Case No. 17-31897 (JJT) |
| Debtors. | ) | |
| | ) | |
| CLINTON NURSERIES, INC, | ) | Chapter 11 |
| CLINTON NURSERIES OF MARYLAND, INC., | ) | |
| CLINTON NURSERIES OF FLORIDA, INC., and | ) | |
| TRIEM LLC, | ) | |
| Plaintiffs, | ) | Adv. Pro. Case No. 19-03014 (JJT) |
| | ) | |
| v. | ) | |
| | ) | RE: ECF No. 67 |
| WILLIAM K. HARRINGTON, | ) | |
| UNITED STATES TRUSTEE, REGION 2 | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON DEBTORS'**
**MOTION FOR ORDER DIRECTING RELEASE OF ESCROW FUNDS**

Before the Court is a Motion for Order Directing Release of Escrow Funds (ECF No. 67,

the "Motion") filed by Clinton Nurseries, Inc ("CNI"), Clinton Nurseries of Maryland, Inc.

("CNM"), and Clinton Nurseries of Florida, Inc. (together with CNI and CNM, the "Debtors")

related to their appeal of the decision of this Court regarding the constitutionality of the statutory

fees under 28 U.S.C. § 1930(a)(6) payable by the Debtors to the United States Trustee in their

Chapter 11 cases.

I.    **FINDINGS OF FACT[1] FROM THE PERTINENT HISTORY AND POSTURE OF THIS MATTER**

The following facts are not in dispute:

1.    On December 18, 2017, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. On January 9, 2020, the Court entered an order (Case No. 17-31897, ECF No. 1094) confirming the Debtors' Second Modified First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 18, 2019 (Case No. 31897, ECF No. 1045; the "Plan"). On March 5, 2020, the Court entered its Final Decree and Order Closing Cases (Case No. 31897, ECF No. 1187), but retaining jurisdiction for certain limited purposes.

2.    The Debtors timely paid the U.S. Trustee a total of $299,799.19 in quarterly fees for the fourth quarter of 2017 and the four quarters in 2018, with amounts paid for 2018 based on the U.S. Trustee fee schedule that became effective on January 1, 2018, pursuant to an amendment to 28 U.S.C. § 1930(a)(6) that became effective on October 27, 2017. *See* Pub. L. 115-72, Div. B, 131 Stat. 1229 (the "2017 Act").

3.    Under the 2017 Act, "Congress enacted a temporary, but significant, increase in the fee rates applicable to large Chapter 11 cases." *Siegel v. Fitzgerald (In re Circuit City Stores)*, 142 S.Ct. 1770, 1777 (2022).

> [T]he six districts in the two States participating in the [Bankruptcy] Administrator Program did not immediately adopt the 2017 fee increase. Only in September 2018 did the Judicial Conference order the Administrator Program districts to implement the amended fee schedule. Even then, however, two key differences remained between the fee increase faced by debtors in Trustee Program districts as opposed to those faced by

---

[1] The Court has taken judicial notice of the docket and rulings of this Court, the Second Circuit Court of Appeals, and the United States Supreme Court related to this case. The Court also takes judicial notice of the docket and rulings of the Eastern District of Virginia, the Fourth Circuit, and the United States Supreme Court related to the Circuit City bankruptcy and the Supreme Court's related decision in *Siegel v. Fitzgerald (In re Circuit City Stores)*, 142 S.Ct. 1770, 1777 (2022), including Judge Huennekens decision from the Eastern District of Virginia, referenced herein, that followed the Supreme Court's decision in *Siegel*. *See In re Cir. City Stores, Inc.*, No. 08-35653-KRH, 2022 WL 17722849 (Bankr. E.D. Va. Dec. 15, 2022).

debtors in Administrator Program districts. First, the fee increase took effect for the six Administrator Program districts as of October 1, 2018, while the increase took effect for the Trustee Program districts as of the first quarter of 2018. Second, in Administrator Program districts, the fee increase applied only to newly filed cases, while in Trustee Program districts, the increase applied to all pending cases.

*Id.*

4.      On April 17, 2019, the Debtors filed their Motion to Determine Amount of United States Trustee Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Case No. 17-31897, ECF No. 672; Adv. Pro. No. 19-03014, ECF No. 1; the "Complaint"). In the Adversary Proceeding, the Debtors argued, among other things, that based on the disparity between the Trustee Program districts and the Administrator Program districts the "amendment to 28 U.S.C. § 1930(a)(6) as applied to any debtor filing a case [in a Trustee Program district] prior to September 30, 2018, created a non-uniform bankruptcy law and is unconstitutional. U.S. Trustee fees in these cases should be calculated at rates set forth in pre-amendment 28 U.S.C. § 1930(a)(6)." Complaint ¶ 29. The Debtors requested that the Court "enter an order determining that U.S. Trustee fees payable by the Debtors in these cases will be calculated based on the pre-amendment 28 U.S.C. § 1930(a)(6) fee schedule, [and] ordering the US Trustee to refund to the Debtors payments made in excess of the fees calculated on the foregoing basis . . . ." Complaint at p. 18.

5.      On May 30, 2019, the Court entered a Scheduling and Briefing Order Pertaining to The Hearing on The Debtors' Motion to Determine Amount of Chapter 11 Quarterly Fees Pursuant to 28 U.S.C. § 1930(a)(6) (Case No. 17-31897, ECF No. 711; the "Scheduling Order"). The Scheduling Order provides, among other things: "The Debtors and William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), each through their respective counsel, hav[e] agreed that the United States Trustee would not file a motion to dismiss or convert the Debtors' cases based on non-payment of United States Trustee fees, or

otherwise seek to compel the Debtors [to] pay any United States Trustee fees, during the pendency of the Debtors' Motion . . . ." Scheduling Order at 1. The Debtors did not pay quarterly fees to the U.S. Trustee for the four quarters in 2019 and the first quarter of 2020.

6.      On August 28, 2019, the Bankruptcy Court entered its Ruling and Order Converting Contested Motion to Adversary Proceeding and Memorandum of Decision Dismissing Adversary Proceeding for Failure to State Claims Upon Which Relief Can Be Granted (Case No. 17-31897, ECF No. 835; Adv. Pro. No. 19-03014, ECF No. 2; the "Bankruptcy Court Judgment"). In the Bankruptcy Court Judgment, this Court held that the 2017 Act was a "facially valid 'uniform law[] on the subject of Bankruptcies.' The Court also [held] that any 'as-applied' challenge fails as a matter of law." *Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries, Inc.)*, 608 B.R. 96, 121 (Bankr. D. Conn. 2019). The Court dismissed the uniformity count of the Complaint with prejudice. *Id.*

7.      On September 11, 2019, the Debtors timely filed a notice of appeal of the Bankruptcy Court Judgment (Case No. 17-31897, ECF No. 857; Adv. Pro. No. 19-03014, ECF No. 7), with the United States District Court for the District of Connecticut (the "District Court") (District Court Case No. 3:19-cv-01428-MPS, ECF No. 11). The issue presented for review by the Debtors was as follows: Did the Bankruptcy Court err in dismissing with prejudice the Appellants' claim that the 2017 amendment to 28 U.S.C. § 1930 violates Article 1, § 8, cl. 4 of the United States Constitution? (District Court Case No. 3:19-cv-01428-MPS, ECF No. 14).

8.      On November 8, 2019, the District Court certified the appeal of the Bankruptcy Court Judgment for direct appeal to the United States Court of Appeals for the Second Circuit Court (the "Second Circuit") under 28 U.S.C. § 158(d)(2) (D. Conn. Case No. 3:19-cv-01428-MPS, ECF Doc. No. 14).

9.      On December 9, 2019, the Debtors filed with the Second Circuit their Petition for

Permission to Take a Direct Appeal to The United States Court of Appeals for The Second

Circuit of Order Issued by The United States Bankruptcy Court for The District of Connecticut

(Second Circuit Case No. 19-4067, ECF No. 1, the "Direct Appeal Petition").

10.     On December 12, 2019, the Debtors filed their Motion for Stay Pending Appeal

(Adv. Pro. No. 19-03014, ECF No. 14; the "Stay Motion"), requesting that this Court enter a stay

of the Bankruptcy Court Judgment providing that they not be required to pay to the U.S. Trustee

any unpaid U.S. Trustee quarterly fees required for confirmation of a Chapter 11 plan pending a

decision on their appeal of the Bankruptcy Court Judgment. Among other things, the Debtors

argued that, because they had "limited resources," they would suffer irreparable harm from

having to pay the amount due under this Court's judgment. *Id.* at 12.

11.     The U.S. Trustee opposed the Stay Motion, arguing *inter alia* that there was a

significant risk that the Debtors might transfer, distribute, or otherwise dissipate their assets

during the appellate process leaving the government without recourse, negatively impacting the

public fisc. (Adv. Pro. No. 19-03014, ECF No. 18 at 12–13).

12.     On January 3, 2020, the Court held a confirmation hearing on the Debtor's Plan.

(Case No. 17-31897, ECF No. 1078). The U.S. Trustee had objected to confirmation, arguing

that a stay was not warranted, that the Debtors had demonstrated through their monthly operating

reports that they had available funds to pay their U.S. Trustee fees, and that the Debtors could

not confirm a plan without payment of any outstanding U.S. Trustee fees. (Case No. 17-31897,

ECF No. 917). At the conclusion of the hearing, the Court directed the parties to submit an

escrow agreement for the Court's review in connection with confirmation of the Plan and the

Debtors' Motion to Stay. On January 8, 2020, after review of the proposed escrow agreement

(the "Escrow" or "Escrow Agreement"), the Court informed the parties during a hearing that the payment of funds into escrow would satisfy two of the four material factors in support of granting a stay and would satisfy the requirements of 11 U.S.C. § 1129(a)(12) in support of confirmation. On January 9, 2020, based in part on the provisions of the Escrow Agreement, this Court entered an order confirming the Debtors' Plan.[2] (Case No. 17-31897, ECF No. 1094, Confirmation Order).

13.     On January 9, 2020, the Court also entered a decision on the Debtors' Stay Motion (Adv. Pro. No. 19-03014, ECF No. 28; the "Stay Order"), granting the Stay Motion "*for the lesser period of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals . . . .*" Stay Order at 8 (emphasis added). The U.S. Trustee has not sought or obtained an extension of the stay granted in the Stay Order. The Stay Order provides that the Debtors were to escrow the disputed fees pursuant to Escrow Agreement.

14.     On January 24, 2020, the Court entered its Order Approving Escrow Agreement (Adv. Pro. No. 19-03014, ECF No. 38; the "Escrow Order"), reiterating that the Stay Order granted "the Stay Motion for the lesser period of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals," Escrow Order at 3, and approving the Escrow Agreement annexed as Exhibit A to the Escrow Order. Under the Escrow Agreement, the escrowed funds would be released "as directed by the Bankruptcy Court or agreed by the Debtors and the US Trustee." *Id.* at 8.

15.     To address the U.S. Trustee's legitimate concern that the contested amount due for quarterly fees under the 2017 amendment might be dissipated if not paid, the Court ordered those fees to be paid into the escrow account, instead of to the U.S. Trustee. Stay Order at 7–8.

---

[2] Neither the Plan nor the Disclosure Statement mention the Escrow Agreement. Plan at 12, ECF No. 1045; Fourth Amend. Discl. Statement at 20, ECF No. 93.

The Court found that "the escrow, once funded, is equivalent to a supersedeas bond as required by Fed. R. Bankr. P. 8007(a)(1)(B)." *Id.* at 8. The Court explained that the escrow was a "reserve . . . for the purpose of paying any Quarterly Fees that are due *if the Debtors are not successful on the Subject Appeal.*" Escrow Order at 3 (emphasis added).

16.    The Escrow Agreement provides, among other things, that Zeisler & Zeisler, P.C. is the escrow agent (the "Escrow Agent"). Pursuant to the Stay Order, the Escrow Order and the Escrow Agreement, the Debtors deposited $329,810.45 (together with interest earned thereon, the "Escrow Funds") with the Escrow Agent. This sum represented the U.S. Trustee quarterly fees that the Debtors and the U.S. Trustee agreed would otherwise be due under the New Fee Schedule for the four quarters in 2019. Paragraph 3 of the Escrow Agreement provides in relevant part that the "Escrow Agent shall transfer the Escrow Funds to either the Debtors or the U.S. Trustee, or a portion to each, as directed by the Bankruptcy Court . . . ." In the Court's view, the Escrow, not unlike a reserve established under a Chapter 11 plan for disputed administrative claims, also served to facilitate confirmation of the Debtors' Plan in lieu of payment of such U.S. Trustee fees upon confirmation.

17.    On April 14, 2020, the Second Circuit entered an order granting the Direct Appeal Petition (Second Circuit Case No. 19-4067, ECF No. 27). The issue presented by the Debtors, and accepted by the Second Circuit, for review was as follows: "Did the Bankruptcy Court err in dismissing with prejudice the Appellants' claim that the 2017 amendment to 28 U.S.C. § 1930 violates Article 1, § 8, cl. 4 of the United States Constitution?" (Second Circuit Case No. 20-1209, ECF No. 34). The Debtors' brief focused solely on this constitutional issue. In his response, the U.S. Trustee argued that, even if the Debtors could show a constitutional uniformity defect, they would not be entitled to a refund of any U.S. Trustee fees because "the

appropriate remedy for any disuniformity would be to require nationwide adherence to the statute as written—not to compel the U.S. Trustee to disregard a validly enacted statute." (Second Circuit Case No. 20-1209, ECF No. 56). No further briefing occurred on this question of the appropriate remedy, however.

18.     On May 24, 2021, the Second Circuit entered its opinion and order reversing the Bankruptcy Court Judgment, holding, among other things, that the 2017 Act "was unconstitutionally nonuniform on its face because it *mandated* a fee increase in UST Districts but only *permitted* a fee increase in BA Districts." *Clinton Nurseries of Md., Inc. v. Harrington (In re Clinton Nurseries, Inc.)*, 998 F.3d 56, 70 (2d Cir. 2021) (emphasis in original) (hereinafter, the "Second Circuit Decision"). The Second Circuit directed this Court to "provide Clinton with a refund of the amount of quarterly fees paid in excess of the amount Clinton would have paid in a BA District during the same time period." *Id*.

19.     On May 24, 2021, the Second Circuit also entered a judgment (Second Circuit Case No. 20-1209, ECF No. 115, the "Second Circuit Judgment") that provides:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the Bankruptcy Court is REVERSED. The Bankruptcy Court is directed to provide Appellants with a refund of the amount of quarterly fees paid in excess of the amount Appellants would have paid in a BA District during the same time period.

20.     On August 9, 2021, the U.S. Trustee filed a Petition for Rehearing or Rehearing En Banc (the "Rehearing Petition") seeking a rehearing on the constitutionality of 28 U.S.C. § 1930(a) as well as the issue of whether the Second Circuit's remedy in the form of a refund is appropriate (Second Circuit Case No. 20-1209, ECF No. 123). On August 31, 2021, the U.S. Trustee filed a supplement to its Rehearing Petition providing supplemental authority for its argument. (Second Circuit Case No. 20-1209, ECF No. 136).

21.     On September 17, 2021, the Second Circuit entered an order denying the U.S.

Trustee's petition for panel rehearing, or, in the alternative, for rehearing *en banc* (Second

Circuit Case No. 20-1209, ECF No. 141, the "Rehearing Order").

22.     On September 24, 2021, the Second Circuit issued the mandate that

communicated the Second Circuit Judgment to this Court. (Second Circuit Case No. 20-1209,

ECF No. 142, the "Mandate").

23.     On December 17, 2021, the U.S. Trustee filed a Motion to Recall and Stay the

Mandate Pending Disposition of Petition for Writ Certiorari (Second Circuit Case No. 20-1209,

ECF No. 147, the "Recall Motion") to allow this Court to continue the use of the Escrow

Agreement pending appellate review of this Court's decision.

24.     On January 14, 2022, after full briefing on the matter, the Second Circuit entered

an order granting the U.S. Trustee's Recall Motion in light of the Supreme Court's grant of

certiorari in *Siegel v. Fitzgerald (In re Circuit City Stores)*, 142 S.Ct. 1770, 1777 (2022).

(Second Circuit Case No. 20-1209, ECF No. 160, the "Recall Order").

25.     On February 14, 2022, after receiving two extensions of time, the Solicitor

General filed a Petition for a Writ of Certiorari from the Second Circuit Judgment (the

"Petition"), stating the questions presented as:

> 1. Whether Section 1004(a) of the Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, Div. B, 131 Stat. 1232 (28 U.S.C. 1930(a)(6)(B) (2018)), which amended the schedule of quarterly fees payable to the United States Trustee in certain pending bankruptcy cases, contravened Congress's constitutional authority to "establish * * * uniform Laws on the subject of Bankruptcies," U.S. Const. Art. I, § 8, Cl. 4, because it was initially applied only in the 88 federal judicial districts that have United States Trustees but not in the 6 districts that have Bankruptcy Administrators [the "Constitutional Question"].

> 2. Whether, if Section 1004(a) is found unconstitutional, the appropriate remedy is to require the United States Trustee to refund a portion of the quarterly fees paid by respondents in a United States Trustee district [the "Remedy Question"].

9

26.     In *Siegel*, the Solicitor General had argued that even if the 2017 amendment was unconstitutionally non-uniform, it would be constitutionally sufficient to remedy that disuniformity on a prospective basis only. Brief for the Respondent at *45–48, *Siegel v. Fitzgerald*, No. 21-441, 2022 WL 943378 (U.S. Mar. 1, 2022). Moreover, he argued that even if a retrospective remedy were required, Supreme Court precedent holds that equality may be restored either by extending or by eliminating favorable treatment, and that the selection of the appropriate remedy must turn on congressional intent. *Id.* at *43–44. He suggested that Congress's desire to avoid the burden of a looming shortfall in the U.S. Trustee System Fund and its subsequent clarifying legislation confirming the application of increased fees in the six BA districts demonstrates that the uniform remedy Congress would select would be an equal fee increase across all 94 districts, not a refund of fees in the 88 U.S. Trustee districts, which would effectively nullify the 2017 amendment. *Id.* at *44–48.

27.     This remedial question was actively debated by the Supreme Court at oral argument in *Siegel*. *See generally* Oral Arg't Tr. 29–45, 67–73, 78–85, 88, *Siegel v. Fitzgerald*, No. 21-441 (Apr. 18, 2022) (available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2021/21-441_cc8k.pdf).

28.     On June 6, 2022, the Supreme Court held in *Siegel* that the nonuniform fee increase provided for in the 2017 Act violated the uniformity requirement of the Bankruptcy Clause, *Siegel*, 142 S.Ct. at 1780–83 ("[T]he uniformity requirement of the Bankruptcy Clause prohibits Congress from arbitrarily burdening only one set of debtors with a more onerous funding mechanism than that which applies to debtors in other states."), thus resolving the Constitutional Question raised in the Petition. Although the Remedy Question was raised in the *Siegel* case, the Supreme Court declined to decide that question and remanded it to the Fourth

10

Circuit Court of Appeals for further consideration in light of the *Siegel* decision. *Id*. at 1783

("The parties dispute the appropriate remedy. Petitioner seeks a full refund of fees that it paid

during the nonuniform period. Respondent argues that any remedy should apply only

prospectively or should result in a fee increase for those debtors who paid less in the

Administrator Program districts.").

      29.     On June 16, 2022, the Second Circuit issued an Order to Show Cause why its

Mandate should not reissue in light of the Supreme Court's decision in *Siegel* and allowed

briefing on the matter. (Second Circuit Case No. 20-1209, ECF No. 166, the "Show Cause

Order").

      30.     On October 11, 2022, consistent with the *Siegel* decision, the Supreme Court

granted the Petition, vacated the Second Circuit Judgment, and remanded to the Second Circuit

for further consideration of the Remedy Question in light of the *Siegel* decision.

      31.     On November 10, 2022, the Second Circuit issued its opinion amending and

reinstating the Second Circuit Decision (Second Circuit Case No. 20-1209, ECF No. 176-1, the

"Amended Decision"). In the Amended Decision, the Second Circuit held, among other things:

> The Supreme Court did not discuss the appropriate remedy in *Siegel*. *Id*. at 1783. But the parties had an opportunity to brief that issue when this appeal initially came before us, and we decided the question. We see nothing in *Siegel* that calls into doubt our earlier holding, and so we reaffirm that, to the extent that Clinton has already paid the unconstitutional fee increase, it is entitled to a refund of the amount in excess of the fees it would have paid in a BA District during the same time period.

Amended Decision at 33–34. The U.S. Trustee had raised the Remedy Question in its brief

submitted to the Second Circuit on appeal, but the Debtor never responded to that argument and

the parties did not engage in further briefing on that issue (Second Circuit Case No. 20-1209,

ECF No. 34, 56).

32.     On November 10, 2022, the Second Circuit issued its Amended Judgment (Second Circuit Case No. 20-1209, ECF No. 183, the "Amended Judgment"), which provides:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the Bankruptcy Court is REVERSED and the Bankruptcy Court is directed to provide Clinton with a refund of the amount of quarterly fees paid in excess of the amount Clinton would have paid in a BA District during the same time period."

Amended Judgment at 2.

33.     On November 30, 2022, Debtors filed their Motion in this case seeking release of the Escrow Funds. Debtors argue that they are entitled to an immediate release of the Escrow Funds because the alleged purpose of the Escrow—to secure the U.S. Trustee from loss resulting from the stay—has ended, and that the Second Circuit has rendered a dispositive decision on the Constitutional Question. On December 12, 2022, the U.S. Trustee filed its Response to the Escrow Motion. (Adv. Pro. No. 19-03014, ECF No. 71; the "Response"). The U.S. Trustee argues that this Court should defer or deny ruling on the Escrow Motion because, despite the Second Circuit's decision, the Mandate has not issued yet.

34.     The Debtors have also emphasized that they are not seeking to have this Court address the Remedy Question as it pertains to a refund to be made by the U.S. Government. Presently, the Debtors are only seeking a remedy in the form of the release of the Escrow Funds for the aforesaid reasons. They are not seeking to have the U.S. Trustee (or any other arm of the federal government) pay a money judgment or direct a refund from the U.S. Trustee, as there is no dispute that the Escrow Funds were the property of the Debtors.

35.     On December 13, 2022, the U.S. Trustee filed with the Second Circuit a Consent Motion for 30-Day Extension of Time in Which to File Any Petition for Rehearing (Second Circuit Case No. 20-1209, ECF No. 188), requesting until January 26, 2023 to file any petition for rehearing under Fed. R. App. P. 35 or 40 with respect to the Second Circuit's Amended

Judgment and reinstated opinion. The U.S. Trustee's motion did not elaborate on what basis he might seek rehearing if he chooses to do so. On December 14, 2022, in the absence of any objection, the Second Circuit granted this motion. (Second Circuit Case No. 20-1209, ECF No. 192).

36.     On January 27, 2023, the U.S. Trustee filed a Petition for Panel Rehearing or Rehearing En Banc (Second Circuit Case No. 20-1209, ECF No. 194, the "Rehearing Petition") arguing that the Supreme Court's decision in *Siegel* impliedly left the Remedy Question for the Second Circuit to resolve after it vacated the Second Circuit's judgment and remanded for further consideration in light of *Siegel*, thus allowing the Second Circuit to fully consider the Remedy Question. Rehearing Petition at 1–4. The U.S. Trustee took issue with the Second Circuit's conclusion on remand that it had already decided the Remedy Question and "s[aw] nothing in *Siegel* that calls [that ruling] into doubt." The U.S. Trustee argues that the Second Circuit's original opinion never explained its ruling or even acknowledged that the Remedy Question was contested.

37.     As to the Remedy Question itself, the U.S. Trustee argues that the Debtors are not entitled to any refund. The U.S. Trustee acknowledges that prospective injunctive relief is ordinarily the appropriate remedy for unequal fees. The U.S. Trustee further asserts that Congress rendered injunctive relief unnecessary by amending the fee statute to correct the structural disuniformity, the U.S. Trustee argues. If the appropriate remedy is retrospective relief, the U.S. Trustee argues that BA districts must be required to pay the same increased fees as debtors in U.S. Trustee districts. Providing a refund to debtors in U.S. Trustee districts, the U.S. Trustee argues, would amount to windfall payments to those debtors that would be "demonstrably at odds with Congress's intent and thus unavailable as a matter of law." *Id.* at 5

(internal quotation marks omitted). The U.S. Trustee asks the Second Circuit, at a minimum, to render a second amended opinion explaining why it has rejected the U.S. Trustee's legal arguments concerning the Remedy Question.

38.    Now that the U.S. Trustee has filed its Rehearing Petition, the Second Circuit's Mandate will not issue until after the petition is either denied or, if granted, a new decision is rendered. Fed. R. App. P. 41(b). While the substantive, controlling decision on the Constitutional Question has now been issued by both the Supreme Court and the Second Circuit, a significant portion of the subject appeal clearly remains pending. The Remedy Question, in whole or in part, may not have yet been definitively decided in this Circuit.

39.    The Remedy Question is currently pending before several other courts of appeals and bankruptcy courts throughout the country.[3] Notably, the Eleventh Circuit requested briefs from the parties on the remedy issue and has scheduled oral argument for February 13, 2023. *See In re Mosaic Mgmt. Grp., Inc.,* No. 20-12547 (11th Cir.) On December 15, 2022, the Bankruptcy Court of the Eastern District of Virginia (J. Huennekens), upon remand from the Fourth Circuit in the Circuit City case, held that a refund of the overpaid fees was the appropriate remedy for the debtor in that case.[4] *In re Cir. City Stores, Inc*., No. 08-35653-KRH, 2022 WL 17722849, at \*7 (Bankr. E.D. Va. Dec. 15, 2022) (appeal pending in the Eastern District of Virginia, Docket

---

[3] *In re Mosaic Mgmt. Grp., Inc.,* No. 20-12547 (11th Cir.) (oral argument scheduled for Feb. 13, 2023 on the remedy issues); *In re John Q. Hammons Fall 2006, LLC*, No. 20-3203 (10th Cir.) (government's petition for rehearing en banc filed Oct. 31, 2022; court-requested response due by December 13, 2022); *USA Sales, Inc. v. Office of U.S. Trustee*, No. 21-55643 (9th Cir.) (opening brief currently due by Dec. 23, 2022); *In re Circuit City Stores, Inc.*, No. 19-3091 (Bankr. E.D. Va.) (hearing held Nov. 15, 2022).

[4] The debtor, Circuit City Stores, had been in Chapter 11 for a decade before the increase in the U.S. Trustee fees and had confirmed a plan with a liquidating trust. *Cir. City*, 2022 WL 17722849 at \*2.  For the period after the fee increase, the liquidating trust paid $632,500 in fees. *Id.* Had there been no increase, the fees during the period would have been only $56,400. *Id.* After paying the increase, the liquidating trust sued to recover the overpayment for being in violation of the uniformity aspect of the Bankruptcy Clause of the Constitution. *Id.* Bankruptcy Judge Huennekens held the increase to be unconstitutional. On a certified appeal, the Fourth Circuit reversed. *Siegel* then reversed the Fourth Circuit, sending the question of the appropriate remedy back to Judge Huennekens on remand. *Id.*

No. 3:23-cv-00001-MHL). Judge Huennekens held that there was "ample precedent" for ordering a refund, relying on *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and noting that the Second and Tenth Circuits had already done so in light of the Supreme Court's decision in *Siegel*. *Cir. City*, 2022 WL 17722849 at *4. Judge Huennekens also agreed with both appellate courts that they lacked jurisdiction to provide a remedy to the BA Districts. *Id.*

40.    Additionally, a class action suit comprised of Chapter 11 debtors who allegedly overpaid quarterly fees under 11 U.S.C. § 1930 is pending in the United States Court of Federal Claims. *Acadiana Mgmt. Grp., LLC v. United States*, 151 Fed. Cl. 121, 130 (2020), *vacated and remanded by Acadiana Mgmt. Grp., LLC v. United States*, No. 2021-1941, 2022 WL 4283108, at *1 (Fed. Cir. Sept. 16, 2022) (per curiam). The debtors claimed that the fee increase under 28 U.S.C. § 1930 violated the uniformity requirement of the Bankruptcy Clause and asserted a legal exaction claim predicated on that theory. Although the Court of Federal Claims found that it had subject matter jurisdiction over legal exaction claims in general under the Tucker Act, it dismissed the complaint for failure to state a claim after finding that the fee increase did not violate the uniformity requirement or the Due Process clause of the Fifth Amendment in reliance on the Fifth Circuit's reasoning in *Matter of Buffets, L.L.C.*, 979 F.3d 366 (5th Cir. 2020), *abrogated by Siegel v. Fitzgerald*, 213 L. Ed. 2d 39, 142 S. Ct. 1770 (2022). *Id.* at 131–32.

41.    On reconsideration, the Court of Federal Claims denied the debtors' attempt to further amend their complaint, finding that any subsequent amendment based on a violation of the uniformity requirement would be futile given that facial challenges to the constitutionality of the bankruptcy system were outside the court's Tucker Act jurisdiction. *Acadiana Mgmt. Grp., LLC v. United States*, No. 19-496C, 2021 WL 1811906 (Fed. Cl. May 6, 2021), *vacated and*

*remanded*, No. 2021-1941, 2022 WL 4283108 (Fed. Cir. Sept. 16, 2022). On appeal, after the Supreme Court had issued its *Siegel* decision, the U.S. Court of Appeals for the Federal Circuit vacated both orders and remanded the case for further proceedings consistent with *Siegel*. The parties have now cross-moved for summary judgment on the debtors' legal exaction claim before the Federal Court of Claims and have briefed the Remedy Question, but the court has not scheduled oral argument yet. *Acadiana Mgmt. Grp., LLC v. United States*, Case No. 19-496C.

## II.    ARGUMENTS

42.    The Debtors argue that they are entitled to an immediate release of the Escrow Funds. First, they argue they are entitled to release of the Escrow Funds because the Stay has expired by its terms under the Stay Order. Motion at 8–10. Upon expiration of the Stay, the Debtors argue that the purpose of the Escrow—to secure the U.S. Trustee from loss resulting from the Stay—ended. They posit that requiring continuance of the Escrow after expiration of the Stay would constitute and improper extension and enlargement of the terms of the Escrow. Second, they argue that continuing the Escrow would be improper where the Second Circuit's decision is fully dispositive of their appeal. They assert that the Second Circuit's Amended Decision and Judgment unquestionably disposes of the Constitutional Question and partially addresses the Remedy Question, thus nullifying any purpose for continuation of the Escrow. Although the U.S. Trustee may be seeking a rehearing from the Second Circuit, they argue that the Stay Order does not require a final decision from the Second Circuit and that continuing the Escrow until a final decision is rendered would also improperly enlarge and extend the Stay and Escrow. From the Debtor's perspective, there is no dispute that the Escrow Funds are the property of the Debtors and the release of those funds is appropriate now that the principal issue raised by the Debtors' appeal has purportedly concluded.

43.     The U.S. Trustee argues that the Court must deny the Debtor's request for release of the Escrow Funds because the Second Circuit has not yet issued its Mandate and, as the requested relief is premature, the Escrow Agreement has not expired. Response at 7–9. The U.S. Trustee points out that, under the Escrow Agreement, the release of the Escrow Funds is not automatic upon expiration of the Stay Order or upon issuance of an opinion by the Second Circuit because the Escrow Funds are only to be released upon the agreement of the Debtors and the U.S. Trustee or an order of this Court. Neither of those preconditions has been fulfilled. Further, the U.S. Trustee contends that analogizing the Escrow Agreement to the treatment of supersedeas bonds supports maintaining the Escrow until the Second Circuit has issued its Mandate. Consistent therewith, the U.S. Trustee additionally raises jurisdictional and prudential concerns about the Bankruptcy Court's authority while a live appeal is pending before the Circuit Court.

## III.   CONCLUSIONS OF LAW

44.     "The bankruptcy court [is] 'in the best position to interpret its own orders'" and "the bankruptcy court's interpretation of its own order here similarly warrants 'customary appellate deference.'" *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997) (first quoting *Texas N.W. Ry. Co. v. Atchison, Topeka and Santa Fe Ry. Co. (In re Chicago, Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988), then citing *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995)).

45.     Here, the clear and plain language of the Stay Order, the Escrow Order and the Escrow Agreement provide that *the Stay* would be in place "*for the lesser period of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals . . . .*" The Supreme Court issued its decision on the Constitutional Question on June 9,

2021 and the 18-month period under the Stay Order expired one month later on July 9, 2021. The Supreme Court's and the Second Circuit's decisions on the Constitutional Question are clearly dispositive of that issue on appeal.[5]

46.    The Remedy Question, however, is still pending without a full and final disposition in this appeal. The Debtor contends that the Second Circuit has already addressed the Remedy Question three times—in the Second Circuit Decision, the Amended Decision, and the Rehearing Order—but the arguments made by U.S. Trustee in its Rehearing Petition make clear that the issue of whether the Remedy Question has been dispositively addressed by a final decision remains open.

47.    Several other courts across the country continue to contemplate that question post-*Siegel* as well. *See Cir. City,* 2022 WL 17722849 at *3; *Acadiana*, 151 Fed. Cl. at 130. In Judge Huenneken's Circuit City decision, the U.S. Trustee advanced arguments in support of three different remedies as an alternative to a refund, all of which were rejected. *Cir. City*, 2022 WL 17722849 at *3. The court held that prospective relief only, which entails correcting the assessments of fees on a going-forward basis, provided no relief at all and would instead "cement the unconstitutional treatment." *Id.* The court also rejected the idea that the Treasury Department could impose a retroactive assessment by attempting to collect back fees from debtors in BA districts who underpaid their U.S. Trustee fees. *Id.* at *3–*4. Finally, the court also rejected the argument that the liquidating trustee could have declined to pay the overpayment of U.S. Trustee fees because the trustee, as a fiduciary to the debtor's bankruptcy estate, must act in the best interest of the estate and, therefore, was required to pay the overpaid fees because to refuse

---

[5] As the Supreme Court has definitively ruled on the Constitutional Question and directed the Second Circuit to abide by its ruling accordingly, logic and appellate rules leave no room for the Second Circuit's reconsideration of the Constitutional Question raised by the Debtors' appeal.

would risk dismissal or conversion of the debtor's bankruptcy case, either of which could have seriously jeopardized years of hard work by the parties. *Id.* at *5.

48.　　Although decisional law is still developing in the federal courts on the Remedy Question, the appropriate uniform approach to this issue has not yet been established in this Circuit.

49.　　Without a dispositive decision from the Second Circuit fully disposing of all issues in the Debtor's appeal, the Stay indisputably expired on July 9, 2021 at the end of the lesser 18-month period. As noted above, the U.S. Trustee has neither sought nor obtained an extension of the Stay. This Court likely does not have the power to continue the Stay, without a renewed motion, simply because the Amended Decision is subject to rehearing. *See Revlon, Inc. v. Carson Products Co.*, 647 F.Supp. 905, (S.D.N.Y. 1986) ("[P]laintiff assumes we have the power to maintain the bond simply because the appellate decision may be reversed. A court of appeals judgment, it must not be forgotten, 'is entitled to a presumption of validity.' Far be it from us to presume, as plaintiff would have us do, that the court of appeals erred; a district court must be ever vigilant of such hubris." (quoting *Graves v. Barnes*, 405 U.S. 1201, 1203 (1971)). The U.S. Trustee has not provided this Court with any persuasive, contrary authority.

50.　　Expiration of the Stay alone, however, does not mean that the Debtor is entitled to the requested relief. The Escrow Funds are to be released only upon the agreement of the Debtors and the United States Trustee or an order of this Court. Escrow Order at 8. Neither condition has been met and, therefore, the Escrow has not terminated or expired by its terms. Moreover, the Escrow Funds should not be released until the Mandate issues as this Court also conditioned its confirmation of the Debtors' Chapter 11 Plan on the establishment of the Escrow in the first place.

51.     Based on its interpretation of the Stay Order, this Court finds that maintaining the Escrow until the Mandate issues is not only appropriate but required. *See Tomlin*, 105 F.3d at 941. It was this Court's intention that only a final ruling on all issues in the Debtor's appeal would trigger the disbursement of the Escrow and, therefore, both in prudence and in deference to the deliberations and process of the Second Circuit, this Court must agree that the relief requested by the Debtors is premature. The Escrow must remain intact until the Second Circuit renders a dispositive decision on the Remedy Question and issues its Mandate. Although the Second Circuit has rendered an opinion on the Constitutional Question, its decision "is not final until issuance of the mandate"; only "at that time [do] the parties' obligations become fixed."[6] Fed. R. App. P. 41 advisory committee note to 1998 amendment. This Court will then be obliged to fulfill its directions upon issuance of the Mandate by the Second Circuit.

52.     The Court also questions whether its jurisdiction following the Debtor's appeal has been restored if no Mandate has issued. "As a general matter, '[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." *Id.* "The divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the

---

[6] "Final decision is a legal term of art traditionally used to distinguish appealable and nonappealable lower court decisions under 28 U.S.C. § 1291—the general provision governing appellate jurisdiction." *Perera v. Siegal Trading Co.*, 951 F.2d 780, 783 (7th Cir. 1992). Here, the term relates to the completion of appeals, rehearing requests, and the disposition of all issues. There can be no final decision here where there has not been a full disposition of *all* of the issues posed by the appeal.

same issues before two courts at the same time.'" *Id.* "Hence, its application is guided by concerns of efficiency and is not automatic."[7] *Id.*; *see also Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) (district court is not divested of jurisdiction to grant a permanent injunction after an appeal from the district court's order granting a preliminary injunction); *cf.* Fed. R. Bankr. P. 8007(e). Here, as a matter of prudence, judicial restraint and deference to the Second Circuit, this Court concludes that this jurisdictional concern requires that it defer its decision on the Motion.

53.     While the language of a supersedeas bond governs its terms, as well as its legal force and effect, such bonds typically remain in place until the appellate mandate issues.[8] *See Water Techs. Corp. v. Calco Ltd.*, 694 F. Supp. 1328, 1331 (N.D. Ill. 1988) ("[A]bsent unambiguous language in the supersedeas bond to the contrary, an appellant is liable under a bond only until the court of appeals has issued its mandate in a case or stayed its mandate pending application for certiorari.") (emphasis added); *Halliburton Energy Servs., Inc. v. NL Indus.*, 703 F. Supp. 2d 666, 669 (S.D. Tex. 2010) (same); *cf. Edwards v. Armstrong World Indus., Inc.*, 6 F.3d 312, 317 (5th Cir. 1993) ("[B]ecause the appeal has been completed and mandate issued, the claim [the losing appellant] may have once had on the supersedeas bond has thereby terminated.") (emphasis added), *rev'd on other grounds by Celotex Corp. v. Edwards*, 514 U.S. 300 (1995).

54.     A request to release the Escrow, which emulates a supersedeas bond, is simply premature prior to issuance of the appellate mandate. *See Doran v. Courtright (In re Advanced Elecs., Inc.),* 283 F. App'x 959, 966 (3d Cir. 2008) ("When Philip filed for bankruptcy on July 2,

---

[7] It is noteworthy that disputes as to the Escrow Agreement are expressly reserved for the Bankruptcy Court by paragraph 11 of that document.
[8] In *American Federal Group v. Rothenberg*, 1998 U.S. Dist. LEXIS 7832, [*4] (S.D.N.Y. May 27, 1998), cited by Debtors, *see* Motion at 26, for example, the Second Circuit's mandate from its decision in *American Fed. Group v. Rothenberg*, 136 F.3d 897 (2d Cir. 1998), had already issued, *see* Docket, *American Fed. Group v. Rothenberg*, Case No. 1:91-cv-07860, ECF No. 53, Mandate of the USCA for Case Nos. 96-7966 & 96-9124 (S.D.N.Y. Mar. 3, 1998).

the mandate had not yet issued, and the parties' obligations were therefore not yet fixed . . . . Any action by the Trustee at that point to execute against the shares [being held in lieu of a supersedeas bond] would have been premature."); *PHI, Inc. v. Apical Indus., Inc.*, No. 6:13-cv-00015, 2020 WL 1303965, at *1 (W.D. La. Mar. 17, 2020) ("Before the issuance of the Fifth Circuit's ruling as mandate, Apical filed a motion for discharge of supersedeas bond and release of surety . . ., which was denied as premature."); *cf. Langlais v. Pennmont Benefit Servs., Inc.*, No. 11-5275, 2013 WL 662070, at *3 (E.D. Pa. Dec. 19, 2013) (denying motion to release supersedeas bond because automatic stay applied from bankruptcy that was filed after the opinion but before the mandate issued from the court of appeals).

55.    While this Court has found that the Stay Order has terminated, the Escrow Agreement and Escrow Order remain in effect and will not terminate until after the Second Circuit resolves the U.S. Trustee's Rehearing Petition and issues the Mandate, so long as the Mandate is not further stayed. *See Water Techs. Corp*, 694 F. Supp. at 1331 (citing Fed. R. App. P. 41) ("*absent unambiguous language in the supersedeas bond to the contrary*, an appellant is liable under a bond only until the court of appeals has issued its mandate in a case or stayed its mandate pending application for certiorari." (emphasis added)).

56.    This Court acknowledges the long and winding road of the Debtors' appeal, but the journey is not yet over. The Debtors have not provided a compelling reason for this Court to release the Escrow Funds prematurely. While the Debtors' appeal still pends, the Second Circuit's Amended Decision and Judgment will not suffice to secure that release. Continued respect and deference by this Court to the Second Circuit's process and superseding appellate jurisdiction are appropriate and consistent with this Court's interpretation of its Escrow Order and the confirmation of the Debtor's Chapter 11 Plan.

## IV.    CONCLUSION

Accordingly, the Court ORDERS, ADJUDGES, and DECREES that the Escrow Funds shall continue to be maintained pending entry of final judgment of this Court in accord with a Mandate of the Second Circuit, without any further stay of that Mandate. The Debtors' Motion is denied without prejudice to further consideration by this Court following issuance of the Second Circuit's Mandate.

A separate order of this Court, consistent with this Memorandum of Decision, shall enter upon the docket.

Dated at Hartford, Connecticut this 10th day of February 2023.

_James J. Tancredi_
United States Bankruptcy Judge
District of Connecticut